**WOLF HALDENSTEIN ADLER**
    **FREEMAN & HERZ LLP**
FRANCIS M. GREGOREK (144785)
gregorek@whafh.com
BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. RICKERT (190634)
rickert@whafh.com
MARISA C. LIVESAY (223247)
livesay@whafh.com
750 B Street, Suite 2770
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599

**WOLF HALDENSTEIN ADLER**
    **FREEMAN & HERZ LLP**
JANINE L. POLLACK
pollack@whafh.com
DEMET BASAR
basar@whafh.com
KATE M. MCGUIRE
mcguire@whafh.com
270 Madison Avenue
New York, New York 10016
Telephone: 212/545-4600
Facsimile: 212/545-4653

**WESTERMAN LAW CORPORATION**
JEFF S. WESTERMAN (94559)
jwesterman@jswlegal.com
JORDANNA G. THIGPEN (232642)
jthigpen@jswlegal.com
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310/698-7880
Facsimile: 310/201-91060

**LEVI & KORSINKSY, LLP**
EDUARD KORSINSKY
ek@zlk.com
30 Broad Street, 24th Floor
New York, NY 10004
Telephone: 232/363-7500
Facsimile: 866/367-6510

Attorneys for Plaintiff Ben Z. Halberstam
[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

CV14-428 MMM (RZx)

BEN Z. HALBERSTAM, on Behalf of Himself and All Others Similarly Situated,

                        Plaintiff,

        v.

NJOY, INC.; and SOTTERA, INC.,

                        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.

**COMPLAINT FOR VIOLATIONS OF: (1.) CAL. CONSUMERS LEGAL REMEDIES ACT; (2.) CAL. UNFAIR COMPETITION LAW; AND (3.) BREACH OF EXPRESS WARRANTY**

**Class Action**

**DEMAND FOR JURY TRIAL**

FILED
CLERK, U.S. DISTRICT COURT
JAN 17 2014
CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

1   Plaintiff, Ben Z. Halberstam, by and through his undersigned attorneys,

2   brings this action on behalf of himself and all others similarly situated, based upon

3   personal knowledge as to himself and his activities, and on information and belief as

4   to all other matters, against defendants, NJOY, Inc. and Sottera, Inc. (collectively,

5   "NJOY"[1] or "Defendant"), and alleges as follows:

6   **JURISDICTION AND VENUE**

7   1. Diversity subject matter jurisdiction exists over this class action pursuant

8   to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005),

9   amending 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction

10  over class actions involving: (a) 100 or more members in the proposed class; (b)

11  where at least some members of the proposed class have different citizenship from

12  some defendants; and (c) where the claims of the proposed class members exceed

13  the sum or value of five million dollars ($5,000,000) in the aggregate.

14  28 U.S.C. §§ 1332(d)(2) and (6).

15  2. This Court has personal jurisdiction over Defendant because Defendant

16  has purposefully availed itself of the privilege of conducting business in the State of

17  California.

18  3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many

19  of the acts and transactions giving rise to this action occurred in this District and

20  because Defendant:

21      a.   has intentionally availed itself of the laws and markets within this

22           District through the promotion, marketing, distribution and sale of its

23           products in this District;

24      b.   does substantial business in this District; and

25      c.   is subject to personal jurisdiction in this District;

26  _____

27  [1]  Sottera, Inc. was formerly the parent company of NJOY, Inc. and was wholly merged into NJOY, Inc. in July 2012.

28

and because Plaintiff:

    a.    was exposed to Defendant's misleading practices and representations in this District; and

    b.    purchased NJOY E-Cigarettes in this District.

**NATURE OF THE ACTION**

4.    Defendant, the manufacturer of the NJOY brand of electronic cigarettes, has a uniform and long-standing pattern of employing unfair and deceptive practices with respect to the sale of its products through misrepresentations and omissions concerning the potential health risks thereof. During the relevant period, NJOY manufactured and sold, among others, NJOY, NJOY Kings, and OneJoy e-cigarettes. These, together with related paraphernalia such as NJOY replacement batteries, chargers, and cartridges, are collectively referenced herein as "NJOY E-Cigarettes." For example, one of Defendant's principal marketing slogans is that its NJOY E-Cigarettes provide "everything you like about smoking without the things you don't," and variations of that statement. This is deceptive, false and misleading because it is not true that NJOY E-Cigarettes are "without the things you don't" like about traditional tobacco cigarettes. Studies have shown that electronic cigarettes, including NJOY E-Cigarettes contain disease-causing substances that are dangerous to your health – which are among the most important "things you don't" like about traditional tobacco cigarettes. In fact, despite Defendant's marketing slogan that its NJOY E-Cigarettes are "without the things you don't" like about traditional tobacco cigarettes, which conveys the impression that NJOY E-Cigarettes carry no risk of and do not cause disease as traditional tobacco cigarettes do, Defendant fails to disclose not only what it should know about the contents of its own products, but that numerous studies have shown that electronic cigarettes, including NJOY E-Cigarettes, contain carcinogens, toxins and other impurities (including some of those also found in tobacco cigarettes) that

1  do carry the risk of and cause disease.  Studies also show that certain electronic

2  cigarettes, including NJOY E-Cigarettes, require that the user take deeper puffs to

3  produce vapor than the puffs required for a traditional tobacco cigarette, and that

4  this could be harmful to users' health.  Furthermore, there is widespread agreement

5  in the scientific community that further research is necessary before the full negative

6  effects of electronic cigarette use on users' health can be known.

7       5.    Defendant has employed numerous methods to convey to consumers

8  throughout the United States its deceptive, false and misleading message about its

9  E-Cigarettes, including its packaging, product inserts, and print advertisements, as

10  well as its website through which it sells its product directly to the public.  NJOY,

11  http://www.njoy.com/njoy-kings/njoy-king-3-pack.html (last visited Jan. 7, 2014).

12       6.    As a result of Defendant's deceptive, false and misleading claims in its

13  advertising, consumers – including Plaintiff and the other members of the proposed

14  Class – have purchased NJOY E-Cigarettes without being advised that they contain

15  a variety of toxins, impurities, and related potential health hazards as found by

16  various studies discussed in more detail below.  Had Defendant disclosed these

17  material facts, Plaintiff would not have purchased Defendant's NJOY E-Cigarettes.

18  Defendant was able to charge more than what its NJOY E-Cigarettes would have

19  been worth had it disclosed the truth about them.

20       7.    Plaintiff brings this lawsuit against Defendant, on behalf of himself and

21  the proposed Class, in order to (a) halt the dissemination of Defendant's deceptive

22  advertising message, (b) correct the false and misleading perception Defendant has

23  created in the minds of consumers through its representations and omissions, and (c)

24  secure redress for consumers who have purchased one or more NJOY E-Cigarettes.

25  Plaintiff, on behalf of himself and the proposed Class, alleges violations of the

26  California Business & Professions Code §§ 17200, *et seq.*, and the Consumers Legal

27

28

Remedies Act, California Civil Code §§ 1750, *et seq.*, as well as breach of express warranty in violation of Cal. Com. Code § 2313 and common law.

## PARTIES

*Plaintiff*

8.     Plaintiff Ben Z. Halberstam ("Halberstam" or "Plaintiff") is an individual whose home is in Los Angeles, California and who is a citizen of California.  During the relevant period, Plaintiff, while in the State of California, was exposed to and saw Defendant's material, deceptive marketing claims and packaging.  As a result of that misleading marketing and packaging and Defendant's omissions, he believed that NJOY's products did not carry dangers or risks like traditional cigarettes do.  While in the State of California, he purchased NJOY E-Cigarettes.  Had Defendant disclosed that NJOY E-Cigarettes contain a variety of toxins, impurities, and related potential health hazards which is, or should be known to Defendant, and as found by various studies discussed in more detail below, including some also found in tobacco cigarettes, Plaintiff would not have purchased Defendant's NJOY E-Cigarettes. Thus, as a result of Defendant's material deceptive claims and omissions, Plaintiff suffered injury in fact and lost money.

9.     Plaintiff Halberstam first purchased NJOY E-Cigarettes in September 2013, at Walgreens located at 8770 W. Pico Blvd., Los Angeles, California.  He purchased NJOY Kings disposable E-Cigarettes.   He thereafter intermittently purchased additional NJOY Kings.  In total, Plaintiff purchased approximately five NJOY E-Cigarettes for which he paid the retail market price for each, which he believes was $7.99.  On information and belief, the price was $7.99 for a single disposable NJOY Kings E-Cigarette at all relevant times.

*Defendant*

10.     Sottera, Inc. is a former corporation which was incorporated in the state of Nevada, and had its corporate headquarters at 15211 North Kierland Boulevard,

Suite 200, Scottsdale, AZ 85254.  Upon information and belief, it was parent to NJOY, Inc., and in July 2012, merged into NJOY, Inc.

11.    NJOY, Inc. is incorporated in Delaware, and has its corporate headquarters at 15211 North Kierland Boulevard, Suite 200, Scottsdale, AZ 85254. NJOY also has an address at 5455 N Greenway Hayden # 15, Scottsdale, AZ 85260. Upon information and belief, NJOY merged with its parent, Defendant Sottera, in July 2012.

12.    Plaintiff alleges, on information and belief, that at all times herein, Defendant's agents, employees, representatives, executives, directors, partners, and/or subsidiaries were acting within the course and scope of such agency, employment, and representation, on behalf of Defendant.

## FACTUAL ALLEGATIONS

### I.    ELECTRONIC CIGARETTES

13.    This action concerns the NJOY E-Cigarettes and related paraphernalia sold by Defendant, including but not limited to those marketed under the names NJOY, NJOY Kings, and OneJoy.

14.    An electronic cigarette, or e-cigarette, is a device that simulates tobacco smoking.  E-cigarettes are designed to deliver a smoking-like "hit" of vapor, usually containing nicotine, which is inhaled by the user.  They work through the use of a battery operated heating mechanism, which typically converts a cartridge containing glycerin, glycol, natural and artificial flavors and, in most electronic cigarettes, various proportions of nicotine, into vapor.  When a person inhales ("vapes") from an e-cigarette, this mimics the taking of a "drag" on a traditional tobacco cigarette. A heating device is activated, the solution is converted into vapor, and the consumer breathes it in.   Many electronic cigarettes, including those manufactured by Defendant, are designed to look like tobacco cigarettes.  The cylinder containing the components is the size and shape of a traditional cigarette; it is encased in a material

resembling white paper printed to look like a traditional cigarette wrapper, and glows red at the tip when the user inhales.

15.     According to a 2011 study by the Centers for Disease Control and Prevention ("CDC"), as of that year, more than one fifth of smokers in the United States had tried electronic cigarettes, and 6% of all adults had tried them.[2]

16.     According to a subsequent study by the CDC, nearly 1.8 million middle and high school students tried e-cigarettes in 2011 and 2012, including approximately 160,000 students who had never used conventional cigarettes.[3]   The study also found that the number of U.S. middle and high school student e-smokers doubled between 2011 and 2012.[4]

17.     According to analysts, sales of e-cigarettes in America in 2012 were between $300 million and $500 million.[5]   This was approximately double what they were in the preceding year, and sales have been projected to double again in 2013.[6]

18.     Defendant sells what is reportedly "America's top-selling brand of e-cigarettes."[7]   On Defendant's website, it states that it makes "America's #1 E-

---

[2]     Press Release, Centers for Disease Control and Prevention, *About one in five U.S. adult smokers have tried an electronic cigarette* (Feb. 28, 2013), http://www.cdc.gov/media/releases/2013/p0228_electronic_cigarettes.html   (last visited Jan. 7, 2014).

[3]     Morbidity and Mortality Weekly Report, Centers for Disease Control and Prevention, *Notes from the Field: Electronic Cigarette Use Among Middle and High School Students — United States, 2011–2012* (Sept. 6, 2013), http://www.cdc.gov/mmwr/preview/mmwrhtml/mm6235a6.htm (last visited Jan. 7, 2014).

[4]     *Id.*

[5]     *See E-cigarettes: Vape 'Em if You Got 'Em*, The Economist, Mar. 23, 2013.

[6]     *Id.*

[7]     *See* NJOY, http://www.njoy.com/how-it-works (last visited Jan. 7, 2014).

Cigarette," and claims, "Over 3 Million Sold."[8] NJOY controls about 40 percent of the U.S. electronic cigarette market, according to its CEO, Craig Weiss.[9]

19. NJOY E-Cigarettes (including related paraphernalia) sell for a range of prices. According to a press release by Defendant dated December 6, 2012, announcing the nationwide availability of NJOY Kings, the product was introduced with a retail price of $7.99. As of the filing of this Complaint, individual NJOY Kings can be purchased at stores including various stores in California, such as Walgreens in Los Angeles. On its website, Defendant offers these products at rates including a pack of two disposable OneJoy E-Cigarettes for $21.99, a pack of three disposable NJOY Kings for $26.97, a five pack of disposable NJOY Kings for $29.95, a ten pack of disposable NJOY Kings for $59.90 and a twenty pack of disposable NJOY Kings for $119.80. An NJOY starter kit for its rechargeable cigarette line, which includes one charger, one battery, and one refill cartridge, costs $21.99. Accessories for rechargeable NJOYs are also offered on NJOY's website, and include a pack of five cartridge refills for $21.99 and a universal charger for $15.99. On information and belief, in the early portion of the relevant period, Defendant offered a slightly different array of products – NJOY Kings, for example, were first marketed under that label in December 2012 – and certain products offered by Defendant in prior years, such as its chargers and batteries, were more expensive than those offered now.

20. NJOY's products are more expensive than those of certain of its competitors. For example, White Cloud, a competitor, offers individual disposables

---

[8] *Id.*

[9] Burritt, Chris, *E-Cigarette Maker NJOY Seen as Takeover Target Amid Innovation*, Bloomberg, Dec 5, 2012, http://www.bloomberg.com/news/2012-12-05/e-cigarette-maker-njoy-seen-as-takeover-target-amid-innovation.html (last visited Jan. 7, 2014).

for $5.99, and a five pack of rechargeables for $9.95.[10] Another competitor, Metro E-Cigs, offers individual disposables for $5.95.[11]   v2 Cigs, another leading electronic cigarette manufacturer, offers on its website a three pack of disposable e-cigarettes for $15.95, a sampler six pack for $29.95, a five pack for $29.95, and a ten pack for $54.95, as well as a five pack of rechargeables for $9.95.[12]   Yet another competitor, Mistic, sells one disposable electronic cigarette for $5.99, a starter kit for its rechargeable electronic cigarettes that includes two cartridges, one battery, and one USB charger, and refills for 3 five packs for $29.99 and 12 five packs for $129.99; and a five pack of cartridges for its rechargeable e-cigarettes for $14.99.[13]   Krave offers individual disposable Krave King e-cigarettes for $6.95 and a five pack of cartridges for its rechargeable e-cigarettes for $10.95.[14]   Bull Smoke offers individual disposable "Buckshot" e-cigarettes for $5.00 each, and a five pack of cartridges for its rechargeable e-cigarettes for $12.99.[15]

---

[10]     http://www.whitecloudelectroniccigarettes.com/disposable-ecigarettes/fling-originals (last visited Jan. 9, 2014); http://www.whitecloudelectroniccigarettes.com/ecigarette-cartridges/ (last visited Jan. 9. 2014).

[11]     http://www.metroecigs.com/prodcat/traditional-tobacco-flavor-disposable-electronic-cigarettes.asp (last visited Jan. 9, 2014).

[12]     http://www.v2cigs.com/categories/disposable-electronic-cigarettes      (last visited Jan. 9, 2014);   http://www.v2cigs.com/categories/electronic-cigarette-cartridges (last visited Jan. 9, 2014).

[13]     http://store.misticecigs.com/disposable-electronic-cigarettes/ (last visited Jan. 9, 2014);    http://store.misticecigs.com/mistic-traditional-5-pack-replacement-cartridges-2-4/ (last visited Jan. 9, 2014).

[14]     http://www.kraveit.com/disposable      (last      visited      Jan.      8,      2014); http://www.kraveit.com/cartridges (last visited Jan. 8, 2014).

[15]     http://www.bullsmoke.com/buckshot.asp      (last      visited      Jan.      8,      2014); http://www.bullsmoke.com/cartridges.asp (last visited Jan. 8, 2014).

21.   On information and belief, most members of the proposed Class have bought more than one of Defendant's NJOY products.

## II.   PUBLISHED STUDIES DEMONSTRATE THE DANGERS AND EXPOSURE TO HEALTH RISKS OF E-CIGARETTES

22.   Because of the rapid growth in the use of electronic cigarettes by consumers in recent years, an increasing number of government agencies and research facilities has begun to conduct studies concerning the potential health impact and risks of these devices.  These studies have found, *inter alia*, including with respect to NJOY E-Cigarettes: (a) measurable amounts of carcinogens, toxins and other contaminants in e-cigarettes that are, or potentially are, disease-causing, (b) harmful potential side effects of e-cigarettes, and (c) that more study is needed to determine the full range of health dangers of e-cigarettes.

23.   In 2009, the United States Food and Drug Administration ("FDA") conducted a study of two brands of cigarettes, one of which was NJOY.[16]  The FDA tested a number of NJOY products, including menthol and regular samples at a variety of nicotine strengths.

24.   The FDA issued a summary of the results of that study,[17] making, *inter alia*, the statements in the following block quotes (language in brackets added):

- [the] FDA's Center for Drug Evaluation, Office of Compliance purchased two samples of electronic cigarettes and components from two leading brands.  [These were: NJOY E-Cigarettes with various cartridges and Smoking Everywhere Electronic Cigarettes with

---

[16]   *See* FDA Evaluation of E-cigarettes, DPATR-FY-09-23, available at http://www.fda.gov/downloads/drugs/scienceresearch/ucm173250.pdf (last visited Jan. 13, 2014).

[17]   http://www.fda.gov/NewsEvents/PublicHealthFocus/ucm173146 (last visited Jan. 7, 2014).

various cartridges.[18]]  These samples included 18 of the various flavored, nicotine, and no-nicotine cartridges offered for use with these products.  These cartridges were obtained in order to test some of the ingredients contained in them and inhaled by users of electronic cigarettes.

- FDA's Center for Drug Evaluation, Division of Pharmaceutical Analysis (DPA) analyzed the cartridges [including NJOY cartridges] from these electronic cigarettes for nicotine content and for the presence of other tobacco constituents, some of which are known to be harmful to humans, including those that are potentially carcinogenic or mutagenic.

- DPA's analysis of the electronic cigarette samples [including those from NJOY] *showed that the product contained detectable levels of known carcinogens and toxic chemicals to which users could potentially be exposed*.  [Emphasis added.]

- DPA's testing also suggested that *quality control processes used to manufacture these products are inconsistent or non-existent*. [Emphasis added.]

- Specifically, DPA's analysis of the electronic cigarette cartridges from the two leading brands revealed the following:

  - *Certain tobacco-specific nitrosamines which are human carcinogens were detected in half of the samples tested [including NJOY samples]*.

---

[18]    For the applicability to NJOY of this and each of the below bullet points quoted regarding the FDA study, *see* FDA Evaluation of E-cigarettes, DPATR-FY-09-23, available at http://www.fda.gov/downloads/drugs/scienceresearch/ucm 173250.pdf (last visited Jan. 13, 2014).

- ***Tobacco-specific impurities suspected of being harmful to humans—anabasine, myosmine, and β-nicotyrine—were detected in a majority of the samples tested [including NJOY samples]***.

- Three different [NJOY] electronic cigarette cartridges with the same label ["Menthol high"] were tested and each cartridge emitted a markedly different amount of nicotine with each puff.  The nicotine levels per puff ranged from 26.8 to 43.2 mcg nicotine/100 mL puff.

*Id.*  (Emphasis added.)

25.    The FDA issued a contemporaneous consumer health brochure titled, "FDA Warns of Health Risks Posed by E-Cigarettes,"[19] in which Margaret A. Hamburg, M.D., commissioner of food and drugs, stated, "The FDA is concerned about the safety of these products and how they are marketed to the public."  The FDA also issued a safety alert[20] repeating the risks and noting that "[t]hese products do not contain any health warnings comparable to FDA-approved nicotine replacement products or conventional cigarettes."

26.    Indeed, in the FDA's 2009 study, all four of the major tobacco-specific nitrosamines, N-nitrosonicotine (NNN), N-nitrosoanabasine (NAB), N-nitrosoanatabine (NAT) and 4-(methylnitrosamino)-1-(3-pyridyl)-1-butanone (NNK), were found in NJOY cartridges.

27.    The health risks and unknowns concerning electronic cigarettes are compounded by the reality that e-cigarette users smoke differently than traditional

_____

[19]    Retrievable at http://www.fda.gov/ForConsumers/ConsumerUpdates/ucm173401.htm (last visited Jan. 7, 2014).

[20]    Retrievable at http://www.fda.gov/%20NewsEvents/Newsroom/PressAnnouncements/ucm173222.htm (last visited Jan. 7, 2014).

smokers.  For example, a study of eight traditional and four electronic cigarettes including certain NJOY products found, *inter alia*, that, for the NJOYs, they "required a stronger vacuum [inhalation strength] to smoke than conventional [tobacco] brands."  Trtchounian, A., *Conventional and Electronic cigarettes (e-cigarettes) have different smoking characteristics*, Nic. & Tob. Res., Vol. 12, No. 9 (Sept. 2010), at 911.[21]  (Emphasis added.)  The study states, "the effects of this on human health could be adverse." *Id.* at 905.  According to researchers, as a general matter, stronger puffing has the potential for "leading to cancer in the deeper lung regions." *Lung Deposition Analyses of Inhaled Toxic Aerosols in Conventional and Less Harmful Cigarette Smoke: A Review*, International Journal of Environmental Research and Public Health, September 23, 2013.[22]

28.    Since the FDA released the results of its 2009 study of NJOY and Smoking Everywhere Electronic Cigarettes and its concomitant warning concerning e-cigarettes generally, new studies have been emerging discussing the risks and dangers of e-cigarettes.   These studies have concerned a variety of brands and products, but, because e-cigarettes generally operate in a similar manner, and contain similar primary ingredients, even those studies which are not identified below as directly having reviewed NJOY products are relevant hereto.

29.    E-cigarettes are a subject of concern to major international entities.  According to a presentation given by the World Health Organization ("WHO") to the European Parliament at a Workshop on Electronic Cigarettes on May 7, 2013, "electronic cigarettes are a controversial issue for which additional studies and

---

[21]    Retrievable   at   http://edge.rit.edu/content/P12056/public/e%20cig%20vs%20conventional%20cig.pdf (last visited Jan. 14, 2014).

[22]    Retrievable at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3799535/ (last visited Jan. 14, 2014).

evidence are needed."   That presentation referenced recent findings from Turkey that:

> *indicate that propylene glycol and tobacco specific N-nitrosamines, a powerful carcinogen, were found in the majority of samples*.  Toxins from the e-cigarette averaged around 20% of those of a regular cigarette. It was also found that similarly labeled ENDS [Electronic Nicotine Delivery Systems] cartridges emit different amounts of nicotine, and a nicotine overdose may occur which can have serious side effects.  *There are currently no studies available on safety and efficacy of long-term e-cigarettes use*.

30.    As recently as July 2013, the WHO stated that "[m]ost ENDS [Electronic Nicotine Delivery Systems] contain large concentrations of propylene glycol, which is a known irritant when inhaled," that "[t]he testing of some of these products also suggests the presence of other toxic chemicals, aside from nicotine," and that the safety of these devices "has not been scientifically demonstrated."[23]

31.    Numerous other studies have been performed by universities and other research centers, and have reported similar concerns about the potential for health risks associated with electronic cigarettes.

32.    For example, a 2013 report titled *Electronic Cigarettes – an Overview*, by the German Cancer Research Center,[24] which was based on a comprehensive review of literature in the field, found in summary as to "Product characteristics" (the following bullet pointed paragraphs are block quoted text)**:**

- E-cigarettes cannot be rated as safe at the present time.

---

[23]    Retrievable at http://www.who.int/tobacco/communications/statements/ electronic_cigarettes/en/ (last visited Jan. 7, 2014).

[24]    Published in Red Series, Tobacco Prevention and Tobacco Control, Vol. 19: Electronic Cigarettes – An Overview (Heidelberg 2013), available at http:www.dkfz.de/en/presse/download/RS-Vol. 19-E-Cigarettes-EN/pdf.

- Consumers do not have reliable information on product quality.
- Electronic cigarettes have various technical flaws (leaking cartridges, accidental intake of nicotine when replacing cartridges, possibility of unintended overdose.)
- Some manufacturers provide insufficient and partly wrong information about their liquids.

As to "Health Effects," the summary stated (the following bullet pointed paragraphs are block quoted text):

- The liquids contain ingredients that on short-term use irritate airways and may lead to allergic reactions and which may be harmful to health when inhaled repeatedly over a prolonged period of time.
- The aerosol of some liquids contains harmful substances (formaldehyde, acetaldehyde, acrolein, diethylene glycol, nickel, chromium, lead).
- The functionality of electronic cigarettes can vary considerably (aerosol production, nicotine delivery into aerosols).
- Adverse health effects for third parties exposed cannot be excluded because the use of electronic cigarettes leads to emission of fine and ultrafine inhalable liquid particles, nicotine and cancer-causing substances into indoor air.

*Id.* at viii.

33.    Among the more specific risks identified in the studies reviewed in that report by the German Cancer Research Center are that, *inter alia* (the following bullet pointed paragraphs are block quoted text, the language in brackets has been added, and all internal citations are omitted):

- Electronic cigarettes do not extinguish naturally after about ten puffs like conventional cigarettes, but can be used for hundreds of

puffs without a break.  When using them as intended, consumers may therefore get a dangerous amount of nicotine by taking too many puffs, which may even result in serious symptoms of nicotine poisoning.  *Id.* at 4-5.

- Not even nicotine-free liquids are necessarily harmless.  Their main ingredients (propylene glycol [which is an ingredient in NJOY], glycerine [another ingredient in NJOY], flavours) have been approved for use in food, but this does not necessarily mean that they are also safe when they are repeatedly inhaled over a prolonged period of time – as they are when used in electronic cigarettes.  There are currently no studies available on the effects of long-term use of e-cigarettes. *Id.* at 7.

- To date, only [a] few studies have been conducted on potential health risks associated with inhaling propylene glycol [an ingredient in NJOY] – as one does when using electronic cigarettes as intended.  According to these studies, inhaling propylene glycol may affect airways.  Short-term exposure to propylene glycol in indoor air (309 mg/m3 for one minute) already causes irritations in the eyes, throat and airways.  Long-term exposure to propylene glycol in indoor air may raise children's risk of developing asthma.  People who have frequently been exposed to theatrical fogs containing propylene glycol are more likely to suffer from respiratory, throat and nose irritations than do unexposed people.  We may therefore assume that the use of e-cigarettes, which involves inhaling propylene glycol vapours several times daily, may cause respiratory irritations.  This applies, in particular, to individuals with impaired airways and to smokers who switch to e-

cigarettes or use them additionally, because smokers usually already have impaired airways. *Id.*

- Glycerine [an ingredient in NJOY] is considered generally safe for oral intake and is used in food production as a humectant and as a solution carrier in flavours.  However, this does not necessarily mean that it is also safe for inhalation – as in e-cigarettes if used as intended.  These concerns are not unfounded.  The specialist journal Chest reports about a case study of a patient with lipoid pneumonia caused by glycerine-based oils from the aerosol of electronic cigarettes.  The link appears to be clear, since symptoms disappeared when the patient stopped using electronic cigarettes. *Id.* at 7-8.

- Individual liquids [including NJOY, per the FDA study noted above and cited in the instant article] were found to contain small amounts of nitrosamines.  In addition, formaldehyde, acetaldehyde and acrolein were measured in the aerosol of various e-cigarettes, although considerably less than in cigarette smoke.  Formaldehyde and acrolein were only found in glycerine-containing liquids [NJOY contains glycerine]; they probably form upon heating of glycerine.  Acrolein is absorbed by the user: A decomposition product of acrolein was detected in the urine of e-cigarettes users, although considerably less than after smoking conventional cigarettes.  In addition, nickel and chromium were detected in the aerosol, with higher levels of nickel measured than it is known to be present in cigarette smoke.  The aforementioned substances have been classified by the German Research Foundation (Deutsche Forschungsge- meinschaft, DFG) and the International Agency for

Research on Cancer (IARC) as carcinogenic.  Since there is no safe threshold value for these substances, it cannot be excluded that using electronic cigarettes increases cancer risk, even though these substances may be present in very small amounts.  *Id.*

- Data on the impact of e-cigarette use on pulmonary function are not conclusive.  A study involving 30 participants reports adverse effects on pulmonary function after using an electronic cigarette for five minutes; however, the long-term pulmonary effects of e-cigarette use are unknown at the present time.  *Id.*

- There are currently no studies available on the effects of long-term use of e-cigarettes.  *Id.* at 7.

34.    Certain of the many studies considered in the above referenced Red Series review are among those discussed in more detail in the individual study references below.  One such study was *Short-term Pulmonary Effects of Using an Electronic Cigarette*, published in June 2012 in Chest, the journal of the American College of Chest Physicians.   That study expressly found both that electronic cigarettes had adverse health effects and the need for further research:

> ***E-cigarettes assessed in the context of this study were found to have immediate adverse physiologic effects after short-term use that are similar to some of the effects seen with tobacco smoking***; however, the long-term health effects of e-cigarette use are unknown but potentially adverse and worthy of further investigation.  [Emphasis added.]

35.    A French article published in the consumer publication *60 millions de consommatuers* on August 26, 2013, reported that e-cigarettes are potentially carcinogenic.  It based its findings upon testing 10 different models of e-cigarettes.[25]

---

[25]    Quotes in this paragraph are derived from B. McPartland, "Report: e-cigarettes are 'potentially carcinogenic'" an article published in *The Local*, a source

(continued…)

It found "carcinogenic molecules in a significant amount" in the vapour produced in the products.  It further determined that "[i]n three cases out of 10, for products with or without nicotine, the content of formaldehyde was as much as the levels found in some conventional cigarettes."  It found acrolein, a toxic molecule emitted in quantities "that exceeded the amount found in the smoke of some cigarettes." "Potentially toxic" trace metals were also discovered in some of the models.

36.    A study by scientists at the University of California Riverside, published on March 20, 2013 in the journal PLoS One, found that:

> one [unidentified] brand of e-cigarettes generates aerosols containing
> micron particles comprised of tin, silver, iron, nickel, aluminum and
> silicate, as well as nanoparticles containing tin, chromium and nickel,
> which are elements that cause respiratory distress and disease.  Those
> metals come from the wires inside the cartridge, while silicate particles
> may originate from the fiber glass [*sic*] wicks.

Williams, M., *et al.*, *Metal and Silicate Particles Including Nanoparticles Are Present in Electronic Cigarette Cartomizer Fluid and Aerosol,* PLoS ONE 8(3): e57987 (2013).

37.    Also, according to that study by the University of California at Riverside:

> A total of 22 elements were identified in EC [electronic cigarette]
> aerosol, and three of these elements (lead, nickel, and chromium)
> appear on the FDA's ''harmful and potentially harmful chemicals'' list.
> Lead and chromium concentrations in EC aerosols were within the
> range of conventional cigarettes, while nickel was about 2–100 times
> higher in concentration in EC aerosol than in Marlboro brand cigarettes

_____

(…continued)
for "France's News in English," on August 26, 2013, describing this study.

- 19 -

(Table 1).   Adverse health effects in the respiratory and nervous systems can be produced by many of the elements in Table 1, and many of the respiratory and ocular symptoms caused by these elements have been reported by EC users in the Health and Safety Forum on the Electronic Cigarette Forum website (http://www.e-cigarette-forum.com/forum/health-safety-e-smoking/).   Although [a table reflecting this research] was constructed to emphasize the effects of the elements found in aerosol on the respiratory system, other systems, such as the cardiovascular and reproductive systems, can be affected by most of the elements in EC aerosol.  ***EC consumers should be aware of the metal and silicate particles in EC aerosol and the potential health risks associated with their inhalation***.

*Id.* at 5 (emphasis added).

38.    A study published on September 23, 2013 in the International Journal of Environmental Research and Public Health titled, *Lung Deposition Analyses of Inhaled Toxic Aerosols in Conventional and Less Harmful Cigarette Smoke: A Review*, found that there were potential risks associated with e-cigarettes that were not a factor in traditional cigarettes, including "compensatory smoking (*i.e.*, stronger puffing) leading to cancer in the deeper lung regions," and that "[u]nknown reactions between some components in newly designed filters (or other new additives) may lead to the production of carcinogens or other toxicants."

39.    Most NJOY E-Cigarettes contain nicotine.  On December 15, 2013, the American Society for Cell Biology issued a press release concerning the findings of researchers at Brown University, who determined that, "Nicotine, the major addictive substance in cigarette smoke, contributes to smokers' higher risk of developing atherosclerosis, the primary cause of heart attacks," and that, as such, e-

cigarettes, which contain nicotine, as most NJOY E-Cigarettes do, "may not significantly reduce risk for heart disease."[26]

### III. DEFENDANT'S ADVERTISEMENTS FOR ITS NJOY E-CIGARETTES ARE MATERIALLY DECEPTIVE, FALSE AND MISLEADING

40.     Defendant has carried out a consistent and widespread campaign of deceptively promoting its NJOY E-Cigarettes.  Its core marketing statement that its products provide "***everything you like about smoking without the things you don't***" (emphasis added), or similar variations, is false and misleading given the studies discussed above that have found carcinogens, toxins, and other potentially harmful impurities, including certain of those found in traditional tobacco cigarettes, in electronic cigarettes, including NJOY E-Cigarettes.  It is also false and misleading given the content of the NJOY products because there is still insufficient research for NJOY to assert or convey that NJOY products do not pose long term health dangers as smoking traditional cigarettes does.   Defendant's statements and omissions have occurred in at least four forms, all of which constitute "advertising." These include: its packaging; inserts to its packaging and shipping materials; its print advertisements; and its website through which it directly sells its NJOY E-Cigarettes and related products to the public.  Defendant's pervasive advertising message conveys the impression that, unlike traditional tobacco cigarettes, which contain carcinogens, toxins and other impurities and cause disease (i.e., "the things you don't" like about cigarettes), NJOY E-Cigarettes are "without" those things and

---

[26]     American Society for Cell Biology, "Nicotine drives cell invasion that contributes to plaque formation in coronary arteries, Research indicates e-cigarettes may not significantly reduce risk for heart disease," Dec. 15, 2013, available at http://www.eurekalert.org/pub_releases/2013-12/asfc-ndc112613.php (last accessed Jan. 7, 2014).

do not carry that same risk of disease.  As demonstrated above in Section II, however, this is materially deceptive, false and misleading given the information revealed by studies that not only are e-cigarettes such as NJOY E-Cigarettes potentially dangerous to your health but that they also may carry many of the same risks of disease as traditional tobacco cigarettes, including as a result of the tobacco specific nitrosamines they contain that are powerful carcinogens, which is not disclosed by Defendant.

41.     Beginning in 2007, as shown below, NJOY packaging bore the slogan "ALL THE PLEASURES OF SMOKING WITHOUT ALL THE PROBLEMS"[27]:



42.     NJOY's pattern of deceptive marketing continues today, including through use of its "everything you like about smoking without the things you don't"

---

[27]     http://tobaccoproducts.org/index.php/NJoy_Electronic_Cigarette (last visited 12/14/13) (showing picture of packaging with tagline, dated 2007, and stating that each product was introduced in 2007).

slogan (or the like) in its advertisements, and other false, misleading and deceptive statements, as discussed below.

43.     The packages for NJOY's current main product, NJOY Kings, introduced to the market in December 2012, are designed to look like they contain traditional cigarettes, and the NJOY Kings smoking devices mirror traditional cigarettes and, as such, are intended to capitalize on consumers' desire to smoke but yet avoid the health dangers of traditional tobacco cigarettes.   For example, as described more fully below, one of NJOY's commonly used taglines includes the statements: "Finally, smokers have a real alternative," and "Cigarettes, you've met your match."

44.     NJOY's current packaging, depicted below, through warnings that are fraught with material omissions, conveys the impression that the product contains no meaningful health risks other than possibly those that are a direct result of nicotine:[28]



---

[28]     Photographs taken November 21, 2013 of products purchased on that date.

1

2      45.    The small print on the back of the package is significant not only

3  because its font is so small as to be difficult for many people to read, but also for its

4  failure to list the ingredients of the product.  While Defendant does describe what it

5  claims are its ingredients on its website (which description is itself false and

6  misleading as described below), by omitting the ingredients from the label,

7  Defendant denies consumers at the point of sale the opportunity to decide for

8  themselves whether the chemicals used are substances they are willing to risk

9  inhaling.  For example, by omitting the ingredients, Defendant hides the fact that

10  NJOY E-Cigarettes contain propylene glycol, a product found to cause throat

11  irritation and induce coughing,[29] and thus no longer used by certain of NJOY's

12  competitors in their e-cigarettes.  Moreover, as discussed below, omitting the

13  ingredients on the package conceals the dangers associated with the chemicals in its

14  NJOY E-Cigarettes, which are described in the studies referenced above.

15      46.    The text on the back of the NJOY King package reads, in its entirety:

16      WARNING: NJOY products are not smoking cessation products and

17      have not been tested as such.  The U.S. FDA has not approved NJOY

18

---

19  [29]     *Electronic Cigarettes – An Overview*, published in the Red Series Tobacco
20  Prevention and Tobacco Control, Vol. 19 (Heidelberg 2013), referenced in ¶¶ 32-33
    above, citing Wieslander G., *Experimental exposure to propylene glycol mist in*
21  *aviation emergency training: acute ocular and respiratory effects*, Occup Environ
    Med 58: 649-655, Choi H, (2010), *Common household chemicals and the allergy*
22  *risks in pre-school age children,* PLoS One 5: e13423, and Moline JM, *Health*
    *effects evaluation of theatrical smoke, haze and pyrotechnics* (2000).  *See also* New
23  Hampshire Department of Environmental Services, *Ethylene Glycol and Propylene*
24  *Glycol:    Health    Information    Summary*,    Environmental    Fact    Sheet,
    http://des.nh.gov/organization/commissioner/pip/factsheets/ard/documents/ard-ehp-
25  12.pdf (last visited Jan. 7, 2014) (stating  that "Human volunteers exposed to high
26  levels of propylene glycol mist for a short time had increased levels of eye and
27  throat irritation, and cough.").

28

products for any use and they are not intended to diagnose, cure, mitigate, treat, or prevent any disorder, disease, or physical or mental condition.  NJOY products contain nicotine, a chemical known to the State of California to cause birth defects or other reproductive harm. Nicotine is addictive and habit forming, and it is very toxic by inhalation, in contact with the skin, or if swallowed.  Ingestion of the non-vaporized concentrated ingredients in the cartridges can be poisonous.  Physical effects of nicotine may include accelerated heart rate and increased blood pressure.  If the cartridge is swallowed, seek medical assistance immediately.  NJOY products are intended for use by adults of legal smoking age (18 or older in California), and not by children, women who are pregnant or breastfeeding, or persons with or at risk of heart disease, high blood pressure, diabetes, or taking medicine for depression or asthma.  NJOY products may not be sold to minors.  Identification of all persons under 26 will be required before purchase.  Keep out of reach of children.

47.     By warning of risks relating to nicotine, and the risks that may arise if the concentrated contents of the cartridge are swallowed without being vaporized, this packaging implies that those are the only health-related risks that relate to NJOY E-Cigarettes.   This is deceptive and misleading, as the package omits reference to the other carcinogens, toxins and impurities, including carcinogenic tobacco-specific nitrosamines found in NJOY E-Cigarettes as discussed above in Section II.  It also does not reference the difference in inhalation behavior between vaping and traditional smoking (described herein) that may cause additional problems for persons who use e-cigarettes, including NJOY E-Cigarettes.

48.     As demonstrated below, Defendant's pervasive advertisements representing that NJOY E-Cigarettes offer all of the positive aspects of smoking/

cigarettes without the negative ones are materially deceptive, false and misleading given the studies discussed above in Section II and fail to disclose that such research and studies have raised significant concerns about the health risks of NJOY E-Cigarettes, including but not limited to:

- the presence of nitrosamines, toxins, and other impurities, including certain of those found in tobacco cigarettes, that are dangerous to the user's health and cause disease;
- the harmful impact to lung capacity as a result of the chemicals, including propylene glycol, contained therein that are present in NJOY E-Cigarettes;
- that NJOY E-Cigarettes require that the user take significantly stronger puffs than the puffs required for a traditional tobacco cigarette, and that this could be harmful to health;
- and other potentially dangerous but unknown health effects caused by the long term use of e-cigarettes, including NJOY E-Cigarettes.

49.     For example, one package insert for NJOY E-Cigarettes is as follows:

50.    The statements in the insert above, including that "The NJOY King provides everything you like about smoking without the things you don't," are deceptive, false and misleading for the reasons stated in ¶ 48, *supra*.

51.    Another insert found in NJOY's packaging in 2013 instructs readers, "Be sure to tell your friends and family about the positive impact that NJOY products are having on your life," and states that "the NJOY King gives you everything you love about the smoking experience":



52.    For the reasons noted above in ¶ 48, these representations are deceptive, false and misleading.

53.    As shown in the picture below, in one 2013 ad, NJOY states, under the lead line, "The most amazing thing about this cigarette?  It isn't one," that with the NJOY King, "You get to keep all the things you like about smoking while losing the things you don't."

//

//

///



54.   Another ad shown below, under the lead line, "Try something new in bed.   Finally smokers have a real alternative," asserts "It's the first electronic cigarette where you get to keep the things you like about smoking, while losing the things you don't.  What's not to love?  Cigarettes, you've met your match."

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22



23  55.  Another ad, shown below, contains the same text, but under the lead

24  line, "Start a new relationship," says, "you get to keep the things you like about

25  cigarettes while losing the things you don't.  What's not to love?"

26

27  ///

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24



25      56.     The statements in the advertisements in ¶¶ 53-55 above, including that

26  with NJOY E-Cigarettes, "You get to keep all the things you like about smoking

27
28

while losing the things you don't," are deceptive, false and misleading for the reasons stated in ¶ 48, *supra*.

57.    In addition, advertising like the one shown below gives the impression that NJOY E-Cigarettes are a smoking cessation device:



58.    The phrase "Resolution Solution" clearly refers to smokers' New Years resolutions to quit smoking.  This conveys the impression that NJOY E-Cigarettes are, in fact, a smoking cessation aid.  Yet, in multiple places, including as referred to in ¶ 46, *supra* (but omitted in this particular advertisement), Defendant states that NJOY E-Cigarettes are not a smoking cessation device.  Thus, this advertisement is deceptive, false and misleading.  This misrepresentation is particularly significant

because the reason that NJOY states elsewhere that it is not a smoking cessation device is to avoid regulation under the Food, Drug and Cosmetic Act ("FDCA") which has been found, in a lawsuit to which NJOY was a party, to grant the FDA the power to regulate smoking cessation devices. *See Smoking Everywhere, Inc. v. United States FDA*, 680 F. Supp. 2d 62 (D.D.C. 2010), and, upholding that decision, *Sottera, Inc. v. FDA*, 627 F.3d 891 (D.C. Cir. 2010).

59.   In addition, NJOY's promotion of its NJOY E-Cigarettes as a "real alternative" for smokers in its various ads continues to convey the deceptive, false and misleading impression discussed above that its NJOY E-Cigarettes are "without" the things you don't like about traditional tobacco cigarettes and therefore carry no risk of and do not cause disease as traditional tobacco cigarettes do, which is false in light of the material information discussed in the studies *supra*, in Section II, which are not disclosed by Defendant.

60.   Each example of NJOY's packaging, inserts and advertising contains an address for NJOY's website, which as described below, is also misleading in its representations and omissions about NJOY's products.

61.   The following product description, stating, "It provides everything you like about smoking without the things you don't," was taken from Defendant's website:[30]

## Product Description

**What Is An NJOY King?**

It's a premium electronic cigarette with the look, feel and flavor of the real thing, but without the tobacco smoke. Instead it emits a flavorful but odorless vapor. It provides everything you like about smoking without the things you don't. No tobacco smoke or cigarette smell.

---

[30]   NJOY, http://www.njoy.com/njoy-kings/njoy-king-3-pack.html (last visited Jan. 10, 2013).

62.    As described above, the statement, "It provides everything you like about smoking without the things you don't," is deceptive, false and misleading for the reasons stated in ¶ 48, *supra*.

63.    Beginning in approximately early January 2014, Defendant added a new slogan to its marketing (pictured below): "Friends Don't Let Friends Smoke."



64.    A reasonable consumer viewing this advertisement would believe it to mean that "friends don't let friends smoke" because traditional tobacco cigarettes contain carcinogens and toxins and smoking carries the risk of disease, but that friends should encourage friends to use NJOY because NJOY E-Cigarettes do not contain carcinogens or toxins as tobacco cigarettes do and do not therefore carry the same or similar risk of disease.  This is another deceptive, false and misleading advertisement for the reasons stated in ¶ 48, *supra*.

65.    On its website, Defendant has a Frequently Asked Questions page.[31]  In one of the sections, Defendant states that "[t]he primary ingredients [of NJOY E-

_____

[31]    NJOY, http://www.njoy.com/faqs (last visited Jan. 7, 2014).

Cigarettes] are glycerin and propylene glycol, and the secondary ingredients are nicotine and flavors to replicate the taste of traditional smoking," and goes on to provide deceptive, false and misleading statements about those ingredients.[32]  With respect to propylene glycol and glycerin, Defendant's FAQ page on its website states:

- Propylene Glycol - The Food and Drug Administration (FDA) has determined propylene glycol to be "***generally recognized as safe***" for use in food, and propylene glycol is used in cosmetics and medicines. [Emphasis added.]  It is used in food coloring and flavoring, as an additive to keep food, medicines and cosmetics moist, and in machines that simulate smoke, although usage in simulating smoking devices is not currently included in the list of uses recognized by the FDA.  In NJOY, propylene glycol functions to provide the vapor mist that looks like smoke and to suspend flavor.  [Emphasis added.]

- Glycerin - The FDA has determined glycerin to be "***generally recognized as safe***" for use in food, and glycerin is commonly used in foods, beverages, medical and pharmaceutical applications, such as cough drops, although usage in simulating smoking devices is not currently included in the list of uses recognized by the FDA.  [Emphasis added.]

66.   By stating that the FDA considers these substances "generally recognized as safe" for consumption in food, Defendant creates the false and misleading impression that these substances carry no risk and are safe as used for inhalation in NJOY E-Cigarettes, as discussed above.  However, the gastrointestinal

---

[32]      *Id.*

system processes foreign matter differently than the respiratory system, and ingredients that may be safe when digested may not be safe when inhaled, especially with long term use.  The additional statement that "usage in simulating smoking devices is not currently included in the list of uses recognized by the FDA," is itself misleading in the absence of reference to the studies finding that these ingredients may not be safe when inhaled, including, but not limited to, the studies referenced in the review of the literature, *Electronic Cigarettes – An Overview*, published in the Red Series Tobacco Prevention and Tobacco Control, Vol. 19 (Heidelberg 2013), referenced in ¶¶ 32-33 above.  For example, that paper stated: "Glycerine is considered generally safe for oral intake and is used in food production as a humectant and as a solution carrier in flavours.  However, this does not necessarily mean that it is also safe for inhalation – as in e-cigarettes if used as intended." *Id.* at 7 - 8.

67.    As to the other ingredients it describes on the FAQ page of the NJOY website, Defendant states, with respect to nicotine that:

- Nicotine - is an alkaloid found in ***certain plants, predominately tobacco, and in lower quantities, tomatoes, potatoes, eggplants, cauliflower, bell-peppers, and some teas***.

68.    To draw a parallel between nicotine in e-cigarettes and tomatoes, potatoes, eggplants, cauliflower, bell-peppers and teas is deceptive and misleading, as demonstrated by the studies cited *supra* in Section II.

69.    Finally, Defendant lists the other ingredients of NJOY as unspecified "Natural and Artificial flavors," as to which it says:

- Natural and Artificial Flavors - ***determined to be safe for use in food products***.

70.     This is deceptive and misleading because the website does not disclose what those "flavors" are, nor does it acknowledge that safety for use in food products does not denote safety for use in inhaled products, as described above.

71.     An additional deception by NJOY is that it states on its website:

Regulatory Compliance: NJOY is the only e-cigarette company to have had its marketing practices reviewed by Federal District and Appellate Courts and found to have not made or implied health claims.  The FDA is prohibited from restricting NJOY product imports as a drug or drug delivery device.  Other electronic cigarettes may continue to have importation risks.

72.     This is a misstatement of the District's and Appellate Courts' rulings in the cases at issue.  The only Federal District and Appellate Court decisions concerning NJOY's marketing do not hold that NJOY's marketing practices do not make or imply health claims.  Rather, these cases hold that NJOY has not marketed its products as "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals" or "articles … intended to affect the structure or any function of the body of man or other animals," such that NJOY would be subject to the "drug/device" provisions of the Food, Drug, and Cosmetic Act ("FDCA").  *See Smoking Everywhere, Inc. v. United States FDA*, 680 F. Supp. 2d 62 (D.D.C. 2010), and, upholding that decision, *Sottera, Inc. v. FDA*, 627 F.3d 891 (D.C. Cir. 2010).  Notably, these rulings were issued before NJOY began to market its NJOY E-Cigarettes as the "Resolution Solution," an obvious reference to tobacco smokers' resolutions to quit smoking in the new year.  To the extent that the statement implies that the FDA or courts have approved NJOY's past advertising or changes to its advertising after the opinions, it is further misleading.

1

## CLASS DEFINITION AND ALLEGATIONS

2

73.     Plaintiff brings this action as a class action pursuant to Rule 23(a) and

3

(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure ("Rule") for the purpose

4

of asserting the claims alleged in this Complaint on a common basis.   Plaintiff

5

brings this action on behalf of himself and all members of the following class

6

comprised of:

7

    **All persons, exclusive of Defendant and its employees, who**

8

    **purchased in or from California, one or more NJOY E-Cigarettes,**

9

    **including components thereof, or cartridges or accessories**

10

    **therefore, sold by Defendant (the "Class").**

11

74.     Plaintiff reserves the right to modify or amend the definitions of the

12

Class after he has had an opportunity to conduct discovery.

13

75.     ***Numerosity.   Rule 23(a)(1).***   The members of the Class are so

14

numerous that their individual joinder is impracticable.   Plaintiff is informed and

15

believes that the proposed Class contains at least thousands of purchasers of the

16

NJOY E-Cigarettes who have been damaged by Defendant's conduct as alleged

17

herein.   The number of Class members is unknown to Plaintiff but could be

18

discerned from the records maintained by Defendant.

19

76.     ***Existence of Common Questions of Law and Fact.   Rule 23(a)(2).***

20

This action involves common questions of law and fact, which include, but are not

21

limited to, the following:

22

77.     Whether the statements made by Defendant as part of its advertising for

23

NJOY E-Cigarettes discussed herein are true, or are reasonably likely to deceive,

24

given the omissions of material fact described above:

25

    a.     Whether Defendant's conduct described herein constitutes a deceptive

26

         act or practice in violation of the CLRA;

27

28

b.      Whether Defendant's conduct described herein constitutes an unlawful, unfair, and/or fraudulent business practice in violation of the UCL;

c.      Whether Defendant's conduct described herein constitutes unfair, deceptive, untrue or misleading advertising in violation of the UCL;

d.      Whether Defendant's conduct constitutes a breach of express warranty;

e.      Whether Plaintiff and the other members of Class are entitled to damages; and

f.      Whether Plaintiff and the Class are entitled to injunctive relief, restitution or other equitable relief and/or other relief as may be proper.

78.      ***Typicality. Rule 23(a)(3).***  All members of the Class have been subject to and affected by the same conduct and omissions by Defendant.  The claims alleged herein are based on the same violations by Defendant that harmed Plaintiff and members of the Class.  By purchasing NJOY E-Cigarettes during the relevant time period, all members of the Class were subjected to the same wrongful conduct. Plaintiff's claims are typical of the Class' claims and do not conflict with the interests of any other members of the Class.  Defendant's unlawful, unfair, deceptive, and/or fraudulent actions and breaches of warranty concern the same business practices described herein irrespective of where they occurred or were experienced.

79.      ***Adequacy. Rule 23(a)(4).***  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Class.

80.      ***Injunctive and Declaratory Relief.  Rule 23(b)(2).***  Defendant's actions regarding the deceptions and omissions regarding NJOY E-Cigarettes are uniform as to members of the Class.  Defendant has acted or refused to act on

- 38 -

1  grounds that apply generally to the Class, so that final injunctive relief as requested

2  herein is appropriate respecting the Class as a whole.

3      81.   ***Predominance and Superiority of Class Action.   Rule 23(b)(3).***

4  Questions of law or fact common to the Class predominate over any questions

5  affecting only individual members and a class action is superior to other methods for

6  the fast and efficient adjudication of this controversy, for at least the following

7  reasons:

8      a.   Absent a class action, members of the Class as a practical matter will

9           be unable to obtain redress, Defendant's violations of their legal

10          obligations will continue without remedy, additional consumers will be

11          harmed, and Defendant will continue to retain its ill-gotten gains;

12     b.   It would be a substantial hardship for most individual members of the

13          Class if they were forced to prosecute individual actions;

14     c.   When the liability of Defendant has been adjudicated, the Court will be

15          able to determine the claims of all members of the Class;

16     d.   A class action will permit an orderly and expeditious administration of

17          each Class member's claims and foster economies of time, effort, and

18          expense;

19     e.   A class action regarding the issues in this case does not create any

20          problems of manageability; and

21     f.   Defendant has acted on grounds generally applicable to the members of

22          the Class, making class-wide monetary relief appropriate.

23     82.   Plaintiff does not contemplate class notice if the Class is certified under

24  Rule 23(b)(2), which does not require notice, and notice to the putative Class may

25  be accomplished through publication, signs or placards at the point-of-sale, or other

26  forms of distribution, if necessary, if the Class is certified under Rule 23(b)(3) or if

27  the Court otherwise determines class notice is required.  Plaintiff will, if notice is so

28

1   required, confer with Defendant and seek to present the Court with a stipulation and

2   proposed order on the details of a class notice program.

3                                   <u>COUNT I</u>

4   **Injunctive Relief for Violations of the Consumers Legal Remedies Act**

5                         **(Cal. Civil Code §§ 1750 *et seq.*)**

6   **(On Behalf of Plaintiff and the Class and Against Defendant)**

7        83.   Plaintiff repeats and realleges the allegations contained in the

8   paragraphs above, as if fully set forth herein.

9        84.   This cause of action is brought pursuant to the Consumers Legal

10  Remedies Act, California Civil Code §§ 1750, *et seq.* ("CLRA" or the "Act"), which

11  provides that enumerated listed "unfair methods of competition and unfair or

12  deceptive acts or practices [including those listed below in ¶ 91] undertaken by any

13  person in a transaction intended to result or which results in the sale or lease of

14  goods or services to any consumer are unlawful," CLRA § 1770, and that "[a]ny

15  consumer who suffers any damage as a result of the use or employment by any

16  person of a method, act, or practice declared to be unlawful by Section 1770 may

17  bring an action against such person to recover or obtain," various forms of relief,

18  including injunction and damages.  Cal. Civ. Code § 1780.  This cause of action is

19  limited solely to injunctive relief on behalf of the Class at this time.

20       85.   On January 16, 2014, prior to the filing of this Complaint, Plaintiff sent

21  Defendant a CLRA notice letter providing the notice required by California Civil

22  Code § 1782(a).  Plaintiff sent the letter via certified mail, return receipt requested,

23  to the location in Los Angeles where Plaintiff purchased NJOY E-Cigarettes, as well

24  as to Defendant's principal place of business in Arizona, and to the Secretary of

25  State of Nevada, advising Defendant that it is in violation of the CLRA and must

26  correct, replace or otherwise rectify the goods and/or services alleged to be in

27  violation of § 1770.  Defendant was further advised that in the event the relief

28

1   requested has not been provided within thirty (30) days, Plaintiff will amend his

2   Complaint to include a request for monetary damages pursuant to the CLRA.  A true

3   and correct copy of Plaintiff's letter is attached hereto as Exhibit A.

4       86.    Plaintiff was deceived by Defendant's unlawful practices as described

5   more fully above, which included carrying out an advertising campaign, directed at

6   Plaintiff and the Class, conveying the message that NJOY E-Cigarettes provide

7   "everything you like about smoking without the things you don't,"[33] and variations

8   of that statement, which were deceptive, false and misleading given the ingredients

9   and characteristics of NJOY products which are known or should be known to

10  Defendant, and the studies that have found carcinogens, toxins, and other potentially

11  harmful impurities in NJOY E-Cigarettes and electronic cigarettes generally,

12  including certain of those found in traditional tobacco cigarettes, and that NJOY E-

13  Cigarettes require that the user take significantly stronger puffs than the puffs

14  required for a traditional cigarette, and that this could be harmful to health which

15  was not disclosed.  Also undisclosed was the lack of research required to assess the

16  potential danger of electronic cigarettes, especially in long term users.

17      87.    Defendant's actions, representations and conduct have violated, and

18  continue to violate the CLRA, because they extend to transactions that are intended

19  to result, or which have resulted, in the sale of goods to consumers.

20      88.    Defendant marketed, sold and distributed NJOY E-Cigarettes in

21  California and throughout the United States during the relevant period.

22      89.    Plaintiff and members of the Class are "consumers" as that term is

23  defined by the CLRA in Cal. Civ. Code § 1761(d).

24      90.    Defendant's NJOY E-Cigarettes were and are "good[s]" within the

25  meaning of Cal. Civ. Code §§ 1761(a) & (b).

26  _____
[33]     NJOY, http://www.njoy.com/njoy-kings/njoy-king-3-pack.html (last visited
27  Jan. 7, 2014).

28

91.   Defendant violated the CLRA by engaging in the at least following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of NJOY E-Cigarettes:

(5)   Representing that [NJOY E-Cigarettes have] . . . approval, characteristics . . . uses [or] benefits . . . which [they do] not have . . . .

\*\*\*

(7) Representing that [NJOY E-Cigarettes are] of a particular standard, quality or grade . . . if [they are] of another.

\*\*\*

(9) Advertising goods . . . with intent not to sell them as advertised.

92.   As such, Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices because it does not sell, and because it intends not to sell, the NJOY E-Cigarettes as advertised and instead misrepresents the particulars by, in its marketing, representing NJOY E-Cigarettes as described above when it knew, or should have known, that the representations and advertisements were deceptive, false and misleading in light of the omissions of material facts as described above.

93.   The omitted information would have been material to a reasonable customer in his or her decision as to whether to purchase the NJOY E-Cigarettes and/or purchase the NJOY E-Cigarettes at the price at which they were offered.

94.   Defendant had a duty to disclose this information to Plaintiff and the members of the Class for several reasons.  First, Defendant repeatedly made the representation that its products offer "everything you like about cigarettes and nothing you don't," or closely analogous representations, as detailed above. Disclosure of the omitted information, including information in the studies referred to *supra* in Section II, was necessary to avoid the false impression of safety

provided by that tagline.  Second, Defendant was in a position to know, both from its own product knowledge and creation decisions and the studies of the presence of carcinogens, toxins, and other impurities in its NJOY E-Cigarettes, especially as described in the FDA's 2009 study of NJOY and Smoking Everywhere Products referenced *supra* at ¶¶ 23-26, while consumers were not reasonably in a position to be aware of Defendant's internal product information or such studies.  Third, Defendant actively omitted to disclose, or actively concealed, these material facts as to Plaintiff and the Class.  Finally, while Defendant made representations about the risks associated with its NJOY E-Cigarettes, stating that they contain nicotine and bear risks related thereto, those representations were misleading half-truths because they implied that those are all of the risks relating to the product, when, in fact, they are not.

95.    Defendant provided Plaintiff and the other Class members with e-cigarettes that did not match the quality portrayed by their marketing.

96.    As a result, Plaintiff and members of the Class have suffered irreparable harm.   Plaintiff's and the other Class members' injuries were proximately caused by Defendant's conduct as alleged herein.    Plaintiff, individually and on behalf of all other Class members, seeks entry of an order enjoining Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code section 1780(a)(2), ordering the payment of costs and attorneys' fees, and such other relief as deemed appropriate and proper by the Court under California Civil Code section 1780(a)(2). If Defendant is not restrained from engaging in these practices in the future, Plaintiff and the Class will continue to suffer harm.

97.    Pursuant to section 1780(d) of the CLRA, attached hereto as Exhibit B is an affidavit showing that this action has been commenced in the proper forum.

# COUNT II

**Injunctive and Equitable Relief for Violations of Unfair Competition Law**

**(Business & Professions Code §§ 17200, *et seq.*)**

**(On Behalf of Plaintiff and the Class and Against Defendant)**

98.    Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

99.    The Unfair Competition Law, Cal. Business & Professions Code § 17200, *et seq.* ("UCL"), prohibits any "unlawful," "unfair," or fraudulent, business act or practice and any false or misleading advertising.

100.   In the course of conducting business, Defendant committed unlawful business practices by, *inter alia*, making the representations (which also constitute advertising within the meaning of § 17200) and omissions of material facts, as set forth more fully herein, and violating Cal. Civil Code §§ 1750, *et seq*, and the common law.

101.   Plaintiff, individually and on behalf of other Class members, reserves the right to allege other violations of law which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

102.   Defendant's actions constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Defendant engages in deceptive and false advertising, and misrepresents and omits material facts regarding its electronic cigarettes and related paraphernalia, and thereby offends an established public policy, and engages in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.  This conduct constitutes violations of the unfair prong of Business & Professions Code §§ 17200, *et seq*.

103.   Business & Professions Code §§ 17200, *et seq.*, also prohibits any "fraudulent business act or practice."

///

104. Defendant's actions, claims, nondisclosures, and misleading statements, as alleged in this Complaint, also constitute "fraudulent" business practices in violation of the UCL because, among other things, they are false, misleading, and/or likely to deceive reasonable consumers within the meaning of Business & Professions Code §§ 17200, *et seq.*

105. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

106. As a result of Defendants' pervasive false marketing, including deceptive and misleading acts and omissions as detailed in this Complaint, Plaintiff and other members of the Class have in fact been harmed as described above. If Defendant had disclosed the information discussed above about the NJOY E-Cigarettes and otherwise been truthful about their safety, Plaintiff would not have purchased Defendant's products. Defendant was also able to charge more than what its NJOY E-Cigarettes would have been worth had it disclosed the truth about them.

107. As a result of Defendant's unlawful, unfair, and fraudulent practices, Plaintiff and the other Class members have suffered injury in fact and lost money.

108. As a result of its deception, Defendant has been able to reap unjust revenue and profit in violation of the UCL.

109. Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate for Plaintiff and the Class.

110. As a result of Defendant's conduct in violation of the UCL, Plaintiff and members of the Class have been injured as alleged herein in amounts to be proven at trial because they purchased NJOY E-Cigarettes without full disclosure of the material facts discussed above.

111. As a result, Plaintiff individually, and on behalf of the Class, and the general public, seeks restitution and disgorgement of all money obtained from

1   Plaintiff and the members of the Class collected by Defendant as a result of

2   unlawful, unfair, and/or fraudulent conduct, and seeks injunctive relief, and all other

3   relief this Court deems appropriate, consistent with Business & Professions Code §

4   17203.

## COUNT III

### Damages for Breach of Express Warranty

### (On Behalf of Plaintiff and the Class and Against Defendant)

8   112.   Plaintiff repeats and realleges the allegations contained in the

9   paragraphs above, as if fully set forth herein.

10   113.   Plaintiff brings this claim individually and on behalf of the Class.

11   114.   Plaintiff, and each member of the Class, formed a contract with

12   Defendant at the time Plaintiff and the other members of the Class purchased NJOY

13   E-Cigarettes or related paraphernalia.   The terms of that contract include the

14   promises and affirmations of fact made by Defendant on its NJOY E-Cigarettes

15   packaging and inserts and through the NJOY marketing campaign, as described

16   above.   This product packaging and advertising constitutes express warranties,

17   became part of the basis of the bargain, and is part of a standardized contract between

18   Plaintiff and the members of the Class on the one hand, and Defendant on the other.

19   115.   Plaintiff and the Class members performed their obligations under the

20   contract.

21   116.   Defendant breached the terms of this contract, including the express

22   warranties, with Plaintiff and the Class by not providing NJOY E-Cigarettes that

23   offered "everything you like about smoking without the things you don't," (or similar

24   variations) and otherwise omitted material information about potential health risks

25   associated with the product.   Such express warranties breached by Defendant include

26   the NJOY E-Cigarette representations set forth above in Section III.

27   ///

28

1    117.   As a result of Defendant's breach of its contract, Plaintiff and the Class

2    have been damaged in the amount of the purchase price of the NJOY E-Cigarettes

3    and related paraphernalia they purchased.

4                              **PRAYER FOR RELIEF**

5    Wherefore, Plaintiff prays for a judgment:

6    a.    Certifying the Class as requested herein, appointing Plaintiff as the

7          class representative for the Class and his undersigned counsel as class

8          counsel;

9    b.    Requiring Defendant to disgorge or return all monies, revenues and

10         profits obtained by means of any wrongful act or practice to Plaintiff

11         and the members of the Class under each cause of action where such

12         relief is permitted;

13   c.    Enjoining Defendant from continuing the unlawful practices as set forth

14         herein, including marketing or selling NJOY E-Cigarettes without

15         disclosing the potential health risks relating thereto, and directing

16         Defendant to engage in corrective action, or providing other injunctive

17         or equitable relief;

18   d.    Awarding damages for breach of express warranty;

19   e.    Awarding all equitable remedies available pursuant to Cal. Civ. Code §

20         1780 and other applicable law;

21   f.    Awarding attorneys' fees and costs;

22   g.    Awarding pre-judgment and post-judgment interest at the legal rate;

23         and

24   h.    Providing such further relief as may be just and proper.

25   DATED: January 17, 2014          **WOLF HALDENSTEIN ADLER**
                                      **FREEMAN & HERZ LLP**
26

27                                   By: _Rachele R. Rickert_

28                                   RACHELE R. RICKERT

FRANCIS M. GREGOREK
BETSY C. MANIFOLD
RACHELE R. RICKERT
MARISA C. LIVESAY
750 B Street, Suite 2770
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:   619/234-4599
gregorek@whafh.com
manifold@whafh.com
rickert@whafh.com
livesay@whafh.com

**WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ LLP**
JANINE L. POLLACK
DEMET BASAR
KATE M. MCGUIRE
270 Madison Avenue
New York, New York 10016
Telephone:  212/545-4600
Facsimile:   212/545-4653
pollack@whafh.com
basar@whafh.com
mcguire@whafh.com

**WESTERMAN LAW CORPORATION**
JEFF S. WESTERMAN
JORDANNA G. THIGPEN
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  310/698-7880
Facsimile:   310/201-9160
jwesterman@jswlegal.com
jthigpen@jswlegal.com

**LEVI KORSINSKY LLP**
EDUARD KORSINSKY
30 Broad Street, 24th Floor
New York, New York 10004
Telephone:  212/363-7500
Facsimile:   866/367-6510
ek@zlk.com

**THE WILNER FIRM, P.A.**
RICHARD J. LANTINBERG
444 E. Duval Street
Jacksonville, FL 32202
Telephone:  904/446-9817
Facsimile:  904/446-9825
rlantinberg@wilnerfirm.com

Attorneys for Plaintiff Ben Z. Halberstam

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: January 17, 2014

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**

By: _Rachele R. Rickert_

RACHELE R. RICKERT

FRANCIS M. GREGOREK
BETSY C. MANIFOLD
RACHELE R. RICKERT
MARISA C. LIVESAY
750 B Street, Suite 2770
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599
gregorek@whafh.com
manifold@whafh.com
rickert@whafh.com
livesay@whafh.com

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
JANINE L. POLLACK
DEMET BASAR
KATE M. MCGUIRE
270 Madison Avenue
New York, New York 10016
Telephone: 212/545-4600
Facsimile: 212/545-4653
pollack@whafh.com
basar@whafh.com
mcguire@whafh.com

**WESTERMAN LAW CORPORATION**
JEFF S. WESTERMAN
JORDANNA G. THIGPEN
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310/698-7880
Facsimile: 310/201-9160
jwesterman@jswlegal.com
jthigpen@jswlegal.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LEVI KORSINSKY LLP**
EDUARD KORSINSKY
30 Broad Street, 24th Floor
New York, New York 10004
Telephone:  212/363-7500
Facsimile:   866/367-6510
ek@zlk.com

**THE WILNER FIRM, P.A.**
RICHARD J. LANTINBERG
444 E. Duval Street
Jacksonville, FL 32202
Telephone:  904/446-9817
Facsimile:  904/446-9825
rlantinberg@wilnerfirm.com

Attorneys for Plaintiff Ben Z. Halberstam

NJOY:20460v7.complaint

# EXHIBIT A

WOLF  HALDENSTEIN  ADLER  FREEMAN  &  HERZ  LLP

FOUNDED 1888

SYMPHONY TOWERS
750 B STREET, SUITE 2770
SAN DIEGO, CA 92101
619-239-4599

RACHELE R. RICKERT
rickert@whafh.com

270 MADISON AVENUE
NEW YORK, NY 10016

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC
55 WEST MONROE STREET, SUITE 1111
CHICAGO, IL 60603
312-984-0000

January 16, 2014

VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED

NJOY, Inc.
15211 North Kierland Boulevard
Suite 200
Scottsdale, AZ 85254

NJOY, Inc.
Sottera, Inc.
c/o Walgreens
8770 W Pico Blvd.
Los Angeles, CA 90035

Sottera, Inc.
Secretary of State
202 N. Carson St.
Carson City, NV  89701

Sottera, Inc.
c/o NJOY, Inc.
15211 North Kierland Boulevard
Suite 200
Scottsdale, AZ 85254

Re:  *Halberstam v. NJOY, Inc., et al.*
     Notice of Violation of the California Consumers Legal Remedies Act and Breach
     of Express Warranty

Dear Sir or Madam:

We send this letter on behalf of our client, Ben Z. Halberstam, currently a resident of California, as well as on behalf of a proposed class of all persons who purchased in or from California one or more electronic cigarettes, or components thereof, or cartridges therefore (the "NJOY E-Cigarettes") manufactured, sold or distributed by NJOY, Inc. and/or Sottera, Inc. (collectively "Defendants") to advise you that Defendants have violated and continue to violate the Consumers Legal Remedies Act ("CLRA"), California Civil Code section 1750, *et seq.*  We hereby ask that Defendants remedy such violations within thirty (30) days.

Defendants are engaging in unfair competition and unfair or deceptive acts or practices with regard to the manner in which Defendants advertise and market to California consumers the electronic cigarettes and related paraphernalia that they manufacture.  Specifically, NJOY makes, and during the relevant period, Sottera has made, representations about the safety of their products, including but not limited to that NJOY E-Cigarettes contain "everything you like about smoking without the things you don't," and similar variations on that theme, which is deceptive, false and misleading in light of numerous studies that show that electronic cigarettes, including

NJOY E-Cigarettes, contain carcinogens, toxins and other impurities, some of which are those found in tobacco cigarettes, that, like tobacco cigarettes, can cause disease, which is not disclosed.  Also undisclosed is the fact that there is widespread agreement in the scientific community that further research is necessary before the full adverse effects of electronic cigarette use on users' health can be known.

These activities violate California Civil Code section 1770(a), in particular by:

- Representing that [the] goods have ... approval, characteristics, . . . uses [or] benefits which they do not have;
- Representing that [the] goods ... are of a particular standard, quality or grade ... if they are of another; and
- Advertising goods ... with intent not to sell them as advertised.

Our client will shortly file a complaint for, *inter alia*, injunctive relief under the CLRA, and will amend such complaint to seek monetary relief under the CLRA unless, within thirty (30) days, Defendants correct, repair, or otherwise rectify the violations specified above

If Defendants fail to comply with this request within thirty (30) days, Defendants may be liable for the following monetary amounts under the CLRA:

- Actual damages suffered;
- Punitive damages;
- Costs and attorney's fees related to suit; and
- Penalties of up to $5,000.00 for each incident where senior citizens have suffered substantial physical, emotional or economic damage resulting from Defendants' conduct.

As will be set forth in the Class Action Complaint, Defendants' practices also violate the California Business & Professions Code § 17200 *et seq.*, and constitute breach of express warranty.

With respect to the claim for breach of express warranty, this letter constitutes statutory notice pursuant to California Uniform Commercial Code § 2-607(3)(A) (as well as under applicable laws of all other states) of Defendants' breach of express warranty.  Defendants breached their warranties with class members by providing them with NJOY E-Cigarettes that were not of the quality that Defendants represented.

We hereby demand on behalf of Mr. Halberstam and all others similarly situated that Defendants immediately correct and rectify their violations by ceasing the deceptive and misleading marketing and advertising described above of NJOY products, including that NJOY E-Cigarettes provide "everything you like about smoking without the things you don't," and variations of that statement, and making other claims about the health benefits of using NJOY, as described above.  We further demand that Defendants initiate a corrective marketing and advertising campaign.  In addition, Defendants must offer to refund consumers for their purchases of NJOY E-Cigarettes and provide reimbursement for interest.

It is our hope that Defendants will choose to correct these unlawful practices promptly. A failure to act within thirty (30) days will be considered a denial of this claim and our client

January 16, 2014         WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
Page 3

will act accordingly.  If you would like to discuss the matter, please do not hesitate to call us at 619-239-4599.  Otherwise, we look forward to Defendants immediately changing their practices and compensating Mr. Halberstam and the other members of the proposed class identified above.

Sincerely,

Rachele R. Rickert

Rachele R. Rickert

20471

**EXHIBIT B**

1  FRANCIS M. GREGOREK (144785)
   gregorek@whafh.com
2  BETSY C. MANIFOLD (182450)
   manifold@whafh.com
3  RACHELE R. RICKERT (190634)
   rickert@whafh.com
4  MARISA C. LIVESAY (223247)
   livesay@whafh.com
5  WOLF HALDENSTEIN ADLER
     FREEMAN & HERZ LLP
6  750 B Street, Suite 2770
   San Diego, CA 92101
7  Telephone:  619/239-4599
   Facsimile:  619/234-4599
8

9  WOLF HALDENSTEIN ADLER          LEVI KORSINSKY LLP
     FREEMAN & HERZ LLP            EDUARD KORSINSKY
10 JANINE L. POLLACK               ek@zlk.com
   pollack@whafh.com               SHANNON L. HOPKINS
11 DEMET BASAR                     shopkins@zlk.com
   basar@whafh.com                 30 Broad Street
12 KATE MCGUIRE                    New York, New York 10004
   mcguire@whafh.com               Telephone:  212/363-7500
13 270 Madison Avenue              Facsimile:  866/367-6510
   New York, New York 10016
14 Telephone:  212/545-4600        THE WILNER FIRM, P.A.
   Facsimile:  212/545-4653        RICHARD J. LANTINBERG
15                                 444 E. Duval Street
                                   Jacksonville, FL 32202
16                                 Telephone: (904) 446-9817
                                   Facsimile: (904) 446-9825
17                                 rlantinberg@wilnerfirm.com

18 Attorneys for Plaintiff Ben Z. Halberstam

19             **UNITED STATES DISTRICT COURT**
20            **SOUTHERN DISTRICT OF CALIFORNIA**

21 BEN Z. HALBERSTAM, California      ) Case No.  CV
   Resident, on Behalf of Himself and All )
22 Others Similarly Situated,         ) **AFFIDAVIT OF PLAINTIFF BEN**
                                      ) **Z. HALBERSTAM PURSUANT**
23                                    ) **TO CAL. CIV. CODE § 1780(d)**
                Plaintiff,            )
24                                    )
25    -against-                       )
                                      )
26                                    )
   NJOY, INC. and SOTTERA, INC.       )
27                                    )
                Defendants.           )
28

1    I, BEN Z. HALBERSTAM, hereby declare that:

2    1.    I have personal knowledge of the facts stated herein and could
3    competently testify thereto if called upon to do so.

4    2.    I am currently a resident of Los Angeles County and a Plaintiff in the
5    above-entitled action.

6    3.    My Complaint filed in this matter contains causes of action for
7    violations of California's Consumers Legal Remedies Act and Unfair Competition
8    Law, as well breach of express warranty, against NJOY, Inc., a company doing
9    business nationwide, including in Los Angeles County, and Sottera, Inc., a company
10   formerly doing business nationwide, including in Los Angeles County, which has
11   merged into NJOY, Inc. (collectively "Defendants").  These causes of action arise
12   out of Defendants' marketing, selling and distributing of their electronic cigarettes
13   and related paraphernalia through the use of false, deceptive and misleading
14   statements, including, but not limited to, that NJOY Electronic Cigarettes contain
15   "everything you like about smoking without the things you don't," and similar
16   variations on that theme, without disclosing to California consumers that numerous
17   studies have indicated that electronic cigarettes contain carcinogens, toxins and
18   other impurities that, like tobacco cigarettes, can cause disease, and that there is
19   widespread agreement in the scientific community that further research is necessary
20   before the full effects of electronic cigarette use on users' health can be known.

21   I declare under penalty of perjury under the laws of the State of California
22   that the foregoing Declaration is true and correct, and was executed by me in the
23   City of Los Angeles, Los Angeles, California on December __, 2013.

24
25   _____
     BEN Z. HALBERSTAM
26
                    SEE ATTACHED NOTARY
27
28

- 1 -

## ACKNOWLEDGMENT

State of California
County of _LOS   ANGELES_        )

On _12-20-2013_ _____ before me, _JEFF  B  PAK   A  NOTARY PUBLIC_

(insert name and title of the officer)

personally appeared _BEN   Z,   HALBERSTAM_ ,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____        (Seal)

JEFF B. PAK
Commission No. 2019088
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires APRIL 11, 2017

US   DISTRICT   COURT   SOUTHERN   DISTRICT OF
CALIFORNIA