**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
FRANCIS M. GREGOREK (144785)
gregorek@whafh.com
BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. RICKERT (190634)
rickert@whafh.com
MARISA C. LIVESAY (223247)
livesay@whafh.com
750 B Street, Suite 2770
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599

**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
JANINE L. POLLACK
pollack@whafh.com
DEMET BASAR
basar@whafh.com
KATE M. MCGUIRE
mcguire@whafh.com
270 Madison Avenue
New York, New York 10016
Telephone: 212/545-4600
Facsimile: 212/545-4653

**WESTERMAN LAW CORPORATION**
JEFF S. WESTERMAN (94559)
jwesterman@jswlegal.com
1900 Avenue of the Stars, 11th Floor
Los Angeles, CA 90067
Telephone: 310/698-7880
Facsimile: 310/775-9777

**LEVI & KORSINKSY LLP**
EDUARD KORSINSKY
ek@zlk.com
SHANNON L. HOPKINS
shopkins@zlk.com
NANCY A. KULESA (*pro hac vice*)
nkulesa@zlk.com
STEPHANIE A. BARTONE (*pro hac vice*)
sbartone@zlk.com
30 Broad Street, 24th Floor
New York, NY 10004
Telephone: 212/363-7500
Facsimile: 866/367-6510

Interim Co-Lead Class Counsel
[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

|  |  |
|---|---|
| IN RE NJOY, INC. CONSUMER CLASS ACTION LITIGATION | ) Case No. CV 14-00428-MMM (RZx) <br> ) <br> ) **SECOND CONSOLIDATED** <br> ) **AMENDED COMPLAINT FOR** <br> ) **VIOLATIONS OF: (1) CAL.** <br> ) **CONSUMERS LEGAL** <br> ) **REMEDIES ACT; (2) CAL.** <br> ) **UNFAIR COMPETITION LAW;** <br> ) **(3) FLORIDA DECEPTIVE AND** <br> ) **UNFAIR TRADE PRACTICES** |

)   **ACT; (4) N.Y. GEN. BUS. LAW;**
)   **AND (5) BREACH OF EXPRESS**
    **WARRANTY**

**<u>Class Action</u>**

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs Ben Z. Halberstam ("Plaintiff Halberstam") and Eric McGovern ("Plaintiff McGovern") (collectively with Halberstam, "California Plaintiffs"), Kathryn Thomas ("Plaintiff Thomas" or "Florida Plaintiff"), and Paula Kolano ("Plaintiff "Kolano" or "New York Plaintiff"), (collectively, all plaintiffs are hereinafter "Plaintiffs"), by and through their undersigned attorneys, bring this action on behalf of themselves and all others similarly situated, based upon personal knowledge as to themselves and their activities, and on information and belief as to all other matters, against defendants, NJOY, Inc. and Sottera, Inc. (collectively, "NJOY"[1] or "Defendant"), and allege as follows:

**<u>JURISDICTION AND VENUE</u>**

1.  Diversity subject matter jurisdiction exists over this class action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005), amending 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions involving: (a) 100 or more members in the proposed class; (b) where at least some members of the proposed class have different citizenship from some defendants; and (c) where the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in the aggregate. 28 U.S.C. §§ 1332(d)(2) and (6).

2.  While the exact number of members in the proposed classes is unknown at this time, Plaintiffs have reason to believe that thousands of consumers purchased Defendant's electronic cigarettes (or "e-cigarettes") throughout California, Florida

---

[1]   Sottera, Inc. was formerly the parent company of NJOY, Inc. and was wholly merged into NJOY, Inc. in July 2012.

and New York during the relevant period.[2]  The number of members in the proposed California, Florida and New York classes (defined below) can be discerned from the records maintained by Defendant.

3. Diversity of citizenship exists between Plaintiffs and Defendant.  Plaintiffs Halberstam and McGovern are citizens of California, and Plaintiff Halberstam resides in Los Angeles, California, and Plaintiff McGovern resides in Orange County, California. Plaintiff Thomas is a citizen of Florida and resides in Jacksonville, Florida.  Plaintiff Kolano is a citizen of New York and resides in West Babylon, New York. NJOY is incorporated in Delaware with its corporate headquarters located at 15211 North Kierland Boulevard, Suite 200, Scottsdale, Arizona 85254.  Sottera was formerly incorporated in the state of Nevada and was headquartered at 15211 North Kierland Boulevard, Suite 200, Scottsdale, Arizona 85254.  Therefore, diversity of citizenship exists.

4. While the exact damages to Plaintiffs and the Classes are unknown at this time, Plaintiffs reasonably believe that their claims exceed five million dollars ($5,000,000) in the aggregate.

---

[2] The relevant period for each claim in this Complaint is set forth in the Counts, *infra*.

5.    Jurisdiction over the Florida and New York Plaintiffs is proper pursuant to Section 28 U.S.C. § 1367, which provides, in relevant part, that: (a) "in any action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution … includ[ing] claims that involve the joinder … of additional parties."

6. This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the privilege of conducting business in the State of California.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District and because Defendant:

    a.    has intentionally availed itself of the laws and markets within this District through the promotion, marketing, distribution and sale of its products in this District;

    b.    does substantial business in this District; and

    c.    is subject to personal jurisdiction in this District;

and because Plaintiffs Halberstam and McGovern:

    a.    were exposed to Defendant's misleading practices and representations in this District; and

    b.    purchased NJOY E-Cigarettes (as defined below) in this District.

8. Venue is proper in this Court as to the Florida and New York Plaintiffs and Claims under the doctrine of pendent venue.

## NATURE OF THE ACTION

9.    Defendant, the manufacturer of the NJOY brand of electronic cigarettes, has a uniform and long-standing pattern of employing unfair and

deceptive practices with respect to the sale of its products through misrepresentations and omissions concerning the potential health risks thereof. During the relevant period, NJOY manufactured and sold, among others, NJOY, NJOY Kings, and OneJoy e-cigarettes. These, together with related paraphernalia such as NJOY replacement batteries, chargers, and cartridges, are collectively referenced herein as "NJOY E-Cigarettes." For example, one of Defendant's principal marketing slogans has been that its NJOY E-Cigarettes provide "everything you like about smoking without the things you don't," and variations of that statement.  This is deceptive, false and misleading because it is not true that NJOY E-Cigarettes are "without the things you don't" like about traditional tobacco cigarettes.   Studies have shown that electronic cigarettes, including NJOY E-Cigarettes, contain disease-causing substances that are dangerous to your health – which are among the most important "things you don't" like about traditional tobacco cigarettes.  In fact, despite Defendant's marketing slogan that its NJOY E-Cigarettes are "without the things you don't" like about traditional tobacco cigarettes, which conveys the impression that NJOY E-Cigarettes carry no risk of and do not cause disease as traditional tobacco cigarettes do, Defendant fails to disclose not only what it should know about the contents of its own products, but that numerous studies have shown that electronic cigarettes, including NJOY E-Cigarettes, contain carcinogens, toxins and other impurities (including some of those also found in tobacco cigarettes) that do carry the risk of and cause disease.  Studies also show that certain electronic cigarettes, including NJOY E-Cigarettes, require that the user take deeper puffs to produce vapor than the puffs required for a traditional tobacco cigarette, and that this could be harmful to users' health. Furthermore, there is widespread agreement in the scientific community that further research is necessary before the full negative effects of electronic cigarette use on users' health can be known.

10.     Defendant has employed numerous methods to convey to consumers throughout the United States its deceptive, false and misleading message about its E-Cigarettes, including its packaging, product inserts, and print advertisements, as well as its website through which it sells its product directly to the public.  NJOY, http://www.njoy.com/njoy-kings/njoy-king-3-pack.html (last visited Jan. 7, 2014).

11.     As a result of Defendant's deceptive, false and misleading claims in its advertising, consumers – including Plaintiffs and the other members of the proposed Classes – have purchased NJOY E-Cigarettes without being advised that they contain a variety of toxins, impurities, and related potential health hazards as found by various studies discussed in more detail below.  Had Defendant disclosed these material facts, Plaintiffs would not have purchased Defendant's NJOY E-Cigarettes. Defendant was able to charge more than what its NJOY E-Cigarettes would have been worth had it disclosed the truth about them.

12.     Plaintiffs bring this lawsuit against Defendant, on behalf of themselves and the proposed Classes, in order to: (a) halt the dissemination of Defendant's deceptive advertising messages; (b) correct the false and misleading perception Defendant has created in the minds of consumers through its representations and omissions; and (c) secure redress for consumers who have purchased one or more NJOY E-Cigarettes.  The California Plaintiffs, on behalf of themselves and the proposed California Class, allege violations of the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* ("CLRA"), the California Business & Professions Code §§ 17200, *et seq.* ("UCL"), and breach of express warranty in violation of Cal. Com. Code § 2313 and common law.  The Florida Plaintiff, on behalf of herself and the proposed Florida Class, alleges violations of the Florida Deceptive and Unfair Trade Practices Act, Florida Statute §501.201, *et seq.* ("FDUPTA"), and breach of express warranty in violation of Florida Statute §672.313 and common law.  The New York Plaintiff, on behalf of herself and the

proposed New York Class, alleges violations of the New York General Business Law § 349 ("GBL") and breach of express warranty in violation of N.Y. U.C.C. Law § 2-313 and common law.

**<u>PARTIES</u>**

*Plaintiffs*

13.    Plaintiff Halberstam is an individual who resides in Los Angeles, California and is a citizen of California.

14.    Plaintiff McGovern is an individual who resides in Orange County and is a citizen of California.

15.    Plaintiff Thomas is an individual who resides in Jacksonville, Florida and is a citizen of Florida.

16.    Plaintiff Kolano is an individual who resides in West Babylon, New York and is a citizen of New York.

17.    During the relevant period, Plaintiffs, while in the states of California, Florida and New York, were exposed to and saw Defendant's material, deceptive marketing claims and packaging.  As a result of that misleading marketing and packaging and Defendant's omissions, Plaintiffs believed that NJOY's products did not carry dangers or risks like traditional cigarettes do.  While in the states of California, Florida and New York, Plaintiffs purchased NJOY E-Cigarettes.  Had Defendant disclosed that NJOY E-Cigarettes contain a variety of toxins, impurities, and related potential health hazards which are or should be known to Defendant, and as found by various studies discussed in more detail below, including some also found in tobacco cigarettes, Plaintiffs would not have purchased Defendant's NJOY E-Cigarettes. Thus, as a result of Defendant's material deceptive claims and omissions, Plaintiffs suffered injury in fact and lost money.

18.    Plaintiff Halberstam first purchased NJOY E-Cigarettes in September 2013, at Walgreens located at 8770 W. Pico Blvd., Los Angeles, California.  He

1   purchased NJOY Kings disposable E-Cigarettes.   He thereafter intermittently

2   purchased additional NJOY Kings.   In total, Plaintiff Halberstam purchased

3   approximately five NJOY E-Cigarettes for which he paid the retail market price for

4   each, which he believes was $7.99.  On information and belief, during the relevant

5   period the price was first $7.99 and later changed to $8.99 for a single disposable

6   NJOY Kings E-Cigarette.

7        19.   Plaintiff McGovern purchased NJOY E-Cigarettes in Orange County,

8   California in or around December 2013.  He purchased NJOY King, Menthol Gold

9   at the 7-Eleven store on 2244 Fairview Road, Costa Mesa, California; the 7-Eleven

10   store at 2150 Placentia Ave., Costa Mesa, California 92627; and the 7-Eleven store

11   at 9502 Hamilton Ave, Huntington Beach, California 92646.   He thereafter

12   intermittently purchased additional NJOY E-Cigarettes until January 2014.  Plaintiff

13   McGovern paid the retail market price for each NJOY E-Cigarette, which he

14   believes was approximately $7.99. On information and belief, during the relevant

15   period the price was first $7.99 and later changed to $8.99 for a single disposable

16   NJOY Kings E-Cigarette.

17        20.   Plaintiff Kolano first purchased NJOY E-Cigarettes in or around

18   January 2012 at 7-Eleven located at 915 Straight Path, in West Babylon, New York,

19   and also purchased them at 7-Eleven located at Route 109, in West Babylon, New

20   York.   She purchased NJOY Kings E-Cigarettes.   She thereafter intermittently

21   purchased additional NJOY Kings. In total, Plaintiff Kolano purchased between 20

22   and 30 single packs of NJOY Kings for which she paid the retail market price for

23   each, which she believes was $8.99.

24        21.   Plaintiff Thomas first purchased NJOY E-Cigarettes in the summer of

25   2012, at a Kangaroo Express store located at 3051 Monument Road, Jacksonville,

26   Florida.  Plaintiff Thomas purchased approximately one NJOY OneJoy for which

27

28

1  she paid the retail market price, which she believes was $10.99.  On information and

2  belief, the price was $10.99 for a single OneJoy E-Cigarette at all relevant times.

3  ***Defendant***

4       22.    Sottera, Inc. is or was a corporation incorporated in the state of Nevada,

5  and had its corporate headquarters at 15211 North Kierland Boulevard, Suite 200,

6  Scottsdale, Arizona 85254.  Upon information and belief, it was parent to NJOY,

7  Inc., and in July 2012, merged into NJOY, Inc.

8       23.    NJOY, Inc. is incorporated in Delaware, and has its corporate

9  headquarters at 15211 North Kierland Boulevard, Suite 200, Scottsdale,

10  Arizona 85254.  NJOY also has an address at 5455 N Greenway Hayden # 15,

11  Scottsdale, Arizona 85260.  Upon information and belief, NJOY merged with its

12  parent, Defendant Sottera, in July 2012.

13       24.    Plaintiffs allege, on information and belief, that at all times herein,

14  Defendant's agents, employees, representatives, executives, directors, partners,

15  and/or subsidiaries were acting within the course and scope of such agency,

16  employment, and representation, on behalf of Defendant.

17                        **FACTUAL ALLEGATIONS**

18  **I.**    **ELECTRONIC CIGARETTES**

19       25.    This action concerns NJOY E-Cigarettes and related paraphernalia sold

20  by Defendant, including but not limited to those marketed under the names NJOY,

21  NJOY Kings, and OneJoy.

22       26.    An electronic cigarette, or e-cigarette, is a device that simulates tobacco

23  smoking.  E-cigarettes are designed to deliver a smoking-like "hit" of vapor, usually

24  containing nicotine, which is inhaled by the user.  They work through the use of a

25  battery operated heating mechanism, which typically converts a cartridge containing

26  glycerin, glycol, natural and artificial flavors and, in most electronic cigarettes,

27  various proportions of nicotine, into vapor.  When a person inhales ("vapes") from

28

an e-cigarette, this mimics the taking of a "drag" on a traditional tobacco cigarette. A heating device is activated, the solution is converted into vapor, and the consumer breathes it in.   Many electronic cigarettes, including those manufactured by Defendant, are designed to look like tobacco cigarettes.   The cylinder containing the components is the size and shape of a traditional cigarette; it is encased in a material resembling white paper printed to look like a traditional cigarette wrapper, and glows red at the tip when the user inhales.

27.   According to a 2011 study by the Centers for Disease Control and Prevention ("CDC"), as of that year, more than one fifth of smokers in the United States had tried electronic cigarettes, and 6% of all adults had tried them.[3]

28.   According to a subsequent study by the CDC, nearly 1.8 million middle and high school students tried e-cigarettes in 2011 and 2012, including approximately 160,000 students who had never used conventional cigarettes.[4]   The study also found that the number of U.S. middle and high school student e-smokers doubled between 2011 and 2012.[5]

29.   According to analysts, sales of e-cigarettes in America in 2012 were between $300 million and $500 million.[6]   This was approximately double what they

---

[3]     Press Release, Centers for Disease Control and Prevention, *About one in five U.S. adult smokers have tried an electronic cigarette* (Feb. 28, 2013), http://www.cdc.gov/media/releases/2013/p0228_electronic_cigarettes.html     (last visited Jan. 7, 2014).

[4]     Morbidity and Mortality Weekly Report, Centers for Disease Control and Prevention, *Notes from the Field: Electronic Cigarette Use Among Middle and High School Students — United States, 2011–2012* (Sept. 6, 2013), http://www.cdc.gov/mmwr/preview/mmwrhtml/mm6235a6.htm (last visited Jan. 7, 2014).

[5]     *Id.*

[6]     *See E-cigarettes: Vape 'Em if You Got 'Em*, The Economist, Mar. 23, 2013.

1  were in the preceding year,[7] and sales have more than doubled to $1.5 billion in

2  2013.[8]

3      30.    Defendant sells what is reportedly "America's top-selling brand of e-

4  cigarettes."[9]   On Defendant's website, it stated that it makes "America's #1 E-

5  Cigarette," and claimed, "Over 3 Million Sold." [10]   NJOY controls about 40 percent

6  of the U.S. electronic cigarette market, according to its Chief Executive Officer

7  ("CEO"), Craig Weiss.[11]

8      31.    NJOY E-Cigarettes (including related paraphernalia) sell for a range of

9  prices.   According to a press release by Defendant dated December 6, 2012,

10 announcing the nationwide availability of NJOY Kings, the product was introduced

11 with a retail price of $7.99.  Individual NJOY Kings are now being sold on NJOY's

12 website for $8.99.  As of the filing of this Complaint, individual NJOY Kings can

13 also be purchased at stores including various stores in California, Florida and New

14 York, such as Walgreens in Los Angeles, California, 7-Eleven in Costa Mesa,

15 California, 7-Eleven in Huntington Beach, California, Kangaroo Express in

16 Jacksonville, Florida and 7-Eleven in West Babylon, New York.  On its website,

17 Defendant offers additional NJOY products at various rates including a pack of two

18 disposable OneJoy E-Cigarettes for $21.99, a five pack of disposable NJOY Kings

19 for $29.95 and a twenty pack of disposable NJOY Kings for $104.99.  Replacement

20 cartridges for rechargeable NJOYs are also offered on NJOY's website, with a pack

21 _____

[7]      *Id.*

22
23 [8]      Horizon Investments, *E-Cigarettes: Proposed Regulations Could Prove To Be A Game Changer*, Seeking Alpha, May 25, 2014.

24 [9]      *See* NJOY, http://www.njoy.com/how-it-works (last visited Jan. 7, 2014).

25 [10]     *Id.*

26 [11]     Burritt, Chris, *E-Cigarette Maker NJOY Seen as Takeover Target Amid Innovation*, Bloomberg, Dec 5, 2012, http://www.bloomberg.com/news/2012-12-05/e-cigarette-maker-njoy-seen-as-takeover-target-amid-innovation.html (last visited Jan. 7, 2014).

28

1   of five cartridge refills being sold for $21.99.  On information and belief, in the
2   early portion of the relevant period, Defendant offered a slightly different array of
3   products – NJOY Kings, for example, were first marketed under that label in
4   December 2012 – and certain products offered by Defendant in prior years, such as
5   starter kits, chargers and batteries for its rechargeable product line, were more
6   expensive than many of the NJOY products offered now.

7        32.    NJOY's products are more expensive than those of certain of its
8   competitors.  For example, White Cloud, a competitor, offers individual disposables
9   for $5.95, and a five pack of rechargeables for $9.95.  Another competitor, Metro
10  Kings E-Cigs, offers individual disposables for $5.99.  v2 Cigs, another leading
11  electronic cigarette manufacturer, offers on its website a three pack of disposable e-
12  cigarettes for $15.95, a five pack for $29.95, and a ten pack for $54.95, as well as a
13  five pack of rechargeables for $9.95.  Yet another competitor, Mistic, sells one
14  disposable electronic cigarette for $5.99, a starter kit for its rechargeable electronic
15  cigarettes that includes two cartridges, one battery, and one USB charger, and refills
16  for 3 five packs for $29.99 and 12 five packs for $129.99; and a five pack of
17  cartridges for its rechargeable e-cigarettes for $14.99.  Krave offers individual
18  disposable Krave King e-cigarettes for $6.95 and a five pack of cartridges for its
19  rechargeable e-cigarettes for $10.95.  Bull Smoke offers individual disposable
20  "Buckshot" e-cigarettes for $5.00 each, and a five pack of cartridges for its
21  rechargeable e-cigarettes for $12.99.

22       33.    On information and belief, most members of the proposed Classes have
23  bought more than one of Defendant's NJOY products.

24  **II.    PUBLISHED STUDIES DEMONSTRATE THE DANGERS AND**
25  **        EXPOSURE TO HEALTH RISKS OF E-CIGARETTES**

26       34.    Because of the rapid growth in the use of electronic cigarettes by
27  consumers in recent years, an increasing number of government agencies and

28

research facilities have begun to conduct studies concerning the potential health impact and risks of these devices.  These studies have found, *inter alia*, including with respect to NJOY E-Cigarettes: (a) measurable amounts of carcinogens, toxins and other contaminants in e-cigarettes that are, or potentially are, disease-causing, (b) harmful potential side effects of e-cigarettes, and (c) that more study is needed to determine the full range of health dangers of e-cigarettes.

35.    In 2009, the United States Food and Drug Administration ("FDA") conducted a study of two brands of cigarettes, one of which was NJOY.[12]  The FDA tested a number of NJOY products, including menthol and regular samples at a variety of nicotine strengths.

36.    The FDA issued a summary of the results of that study,[13] making, *inter alia*, the statements in the following block quotes (language in brackets added):

- [the] FDA's Center for Drug Evaluation, Office of Compliance purchased two samples of electronic cigarettes and components from two leading brands.  [These were: NJOY E-Cigarettes with various cartridges and Smoking Everywhere Electronic Cigarettes with various cartridges.[14]]  These samples included 18 of the various flavored, nicotine, and no-nicotine cartridges offered for use with these products.  These cartridges were obtained in order to test some of the ingredients contained in them and inhaled by users of electronic

[12]    *See* FDA Evaluation of E-cigarettes, DPATR-FY-09-23, available at http://www.fda.gov/downloads/drugs/scienceresearch/ucm173250.pdf (last visited Jan. 13, 2014).

[13]    http://www.fda.gov/NewsEvents/PublicHealthFocus/ucm173146 (last visited Jan. 7, 2014).

[14]    For the applicability to NJOY of this and each of the below bullet points quoted regarding the FDA study, *see* FDA Evaluation of E-cigarettes, DPATR-FY-09-23, available at http://www.fda.gov/downloads/drugs/scienceresearch/ucm 173250.pdf (last visited Jan. 13, 2014).

cigarettes.

- FDA's Center for Drug Evaluation, Division of Pharmaceutical Analysis (DPA) analyzed the cartridges [including NJOY cartridges] from these electronic cigarettes for nicotine content and for the presence of other tobacco constituents, some of which are known to be harmful to humans, including those that are potentially carcinogenic or mutagenic.

- DPA's analysis of the electronic cigarette samples [including those from NJOY] *showed that the product contained detectable levels of known carcinogens and toxic chemicals to which users could potentially be exposed*.  [Emphasis added.]

- DPA's testing also suggested that *quality control processes used to manufacture these products are inconsistent or non-existent*. [Emphasis added.]

- Specifically, DPA's analysis of the electronic cigarette cartridges from the two leading brands revealed the following:

  - *Certain tobacco-specific nitrosamines which are human carcinogens were detected in half of the samples tested [including NJOY samples]*.

  - *Tobacco-specific impurities suspected of being harmful to humans—anabasine, myosmine, and β-nicotyrine—were detected in a majority of the samples tested [including NJOY samples]*.

  - Three different [NJOY] electronic cigarette cartridges with the same label ["Menthol high"] were tested and each cartridge emitted a markedly different amount of nicotine with each puff.  The nicotine levels per puff ranged from

26.8 to 43.2 mcg nicotine/100 mL puff.

*Id.*  (Emphasis added.)

37.     The FDA issued a contemporaneous consumer health brochure titled, "FDA Warns of Health Risks Posed by E-Cigarettes,"[15] in which Margaret A. Hamburg, M.D., commissioner of food and drugs, stated, "The FDA is concerned about the safety of these products and how they are marketed to the public."  The FDA also issued a safety alert[16] repeating the risks and noting that "[t]hese products do not contain any health warnings comparable to FDA-approved nicotine replacement products or conventional cigarettes."

38.     Indeed, in the FDA's 2009 study, all four of the major tobacco-specific nitrosamines, N-nitrosonicotine (NNN), N-nitrosoanabasine (NAB), N-nitrosoanatabine (NAT) and 4-(methylnitrosamino)-1-(3-pyridyl)-1-butanone (NNK), were found in NJOY cartridges.

39.     The health risks and unknowns concerning electronic cigarettes are compounded by the reality that e-cigarette users smoke differently than traditional smokers.  For example, a study of eight traditional and four electronic cigarettes including certain NJOY products found, *inter alia*, that, for the NJOYs, they "required a stronger vacuum [inhalation strength] to smoke than conventional [tobacco] brands."  Trtchounian, A., *Conventional and Electronic cigarettes (e-cigarettes) have different smoking characteristics*, Nic. & Tob. Res., Vol. 12, No. 9 (Sept. 2010), at 911.[17]  (Emphasis added.)  The study states, "the effects of this on human health could be adverse."  *Id.* at 905.  According to researchers, as a general

---

[15]     Retrievable at http://www.fda.gov/ForConsumers/ConsumerUpdates/ucm173401.htm (last visited Jan. 7, 2014).

[16]     Retrievable at http://www.fda.gov/%20NewsEvents/Newsroom/PressAnnouncements/ucm173222.htm (last visited Jan. 7, 2014).

[17]     Retrievable   at   http://edge.rit.edu/content/P12056/public/e%20cig%20vs%20conventional%20cig.pdf (last visited Jan. 14, 2014).

matter, stronger puffing has the potential for "leading to cancer in the deeper lung regions." *Lung Deposition Analyses of Inhaled Toxic Aerosols in Conventional and Less Harmful Cigarette Smoke: A Review*, International Journal of Environmental Research and Public Health, September 23, 2013.[18]

40.   Since the FDA released the results of its 2009 study of NJOY and Smoking Everywhere Electronic Cigarettes and its concomitant warning concerning e-cigarettes generally, new studies have been emerging discussing the risks and dangers of e-cigarettes.   These studies have concerned a variety of brands and products, but, because e-cigarettes generally operate in a similar manner, and contain similar primary ingredients, even those studies which are not identified below as directly having reviewed NJOY products are relevant hereto.

41.   E-cigarettes are a subject of concern to major international entities. According to a presentation given by the World Health Organization ("WHO") to the European Parliament at a Workshop on Electronic Cigarettes on May 7, 2013, "electronic cigarettes are a controversial issue for which additional studies and evidence are needed."   That presentation referenced recent findings from Turkey that:

> *indicate that propylene glycol and tobacco specific N-nitrosamines, a powerful carcinogen, were found in the majority of samples*.   Toxins from the e-cigarette averaged around 20% of those of a regular cigarette. It was also found that similarly labeled ENDS [Electronic Nicotine Delivery Systems] cartridges emit different amounts of nicotine, and a nicotine overdose may occur which can have serious side effects.   *There are currently no studies available on safety and efficacy of long-term e-cigarettes use*.

---

[18]   Retrievable at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3799535/ (last visited Jan. 14, 2014).

42.     As recently as July 2013, the WHO stated that "[m]ost ENDS [Electronic Nicotine Delivery Systems] contain large concentrations of propylene glycol, which is a known irritant when inhaled," that "[t]he testing of some of these products also suggests the presence of other toxic chemicals, aside from nicotine," and that the safety of these devices "has not been scientifically demonstrated."[19]

43.     Numerous other studies have been performed by universities and other research centers, and have reported similar concerns about the potential for health risks associated with electronic cigarettes.

44.     For example, a 2013 report titled *Electronic Cigarettes – an Overview*, by the German Cancer Research Center,[20] which was based on a comprehensive review of literature in the field, found in summary as to "Product characteristics" (the following bullet pointed paragraphs are block quoted text)**:**

- E-cigarettes cannot be rated as safe at the present time.
- Consumers do not have reliable information on product quality.
- Electronic cigarettes have various technical flaws (leaking cartridges, accidental intake of nicotine when replacing cartridges, possibility of unintended overdose.)
- Some manufacturers provide insufficient and partly wrong information about their liquids.

As to "Health Effects," the summary stated (the following bullet pointed paragraphs are block quoted text):

- The liquids contain ingredients that on short-term use irritate airways and may lead to allergic reactions and which may be harmful

---

[19]     Retrievable at http://www.who.int/tobacco/communications/statements/electronic_cigarettes/en/ (last visited Jan. 7, 2014).

[20]     Published in Red Series, Tobacco Prevention and Tobacco Control, Vol. 19: Electronic Cigarettes – An Overview (Heidelberg 2013), available at http:www.dkfz.de/en/presse/download/RS-Vol. 19-E-Cigarettes-EN/pdf.

to health when inhaled repeatedly over a prolonged period of time.

- The aerosol of some liquids contains harmful substances (formaldehyde, acetaldehyde, acrolein, diethylene glycol, nickel, chromium, lead).

- The functionality of electronic cigarettes can vary considerably (aerosol production, nicotine delivery into aerosols).

- Adverse health effects for third parties exposed cannot be excluded because the use of electronic cigarettes leads to emission of fine and ultrafine inhalable liquid particles, nicotine and cancer-causing substances into indoor air.

*Id.* at viii.

45.    Among the more specific risks identified in the studies reviewed in that report by the German Cancer Research Center are that, *inter alia* (the following bullet pointed paragraphs are block quoted text, the language in brackets has been added, and all internal citations are omitted):

- Electronic cigarettes do not extinguish naturally after about ten puffs like conventional cigarettes, but can be used for hundreds of puffs without a break.  When using them as intended, consumers may therefore get a dangerous amount of nicotine by taking too many puffs, which may even result in serious symptoms of nicotine poisoning.  *Id.* at 4-5.

- Not even nicotine-free liquids are necessarily harmless.  Their main ingredients (propylene glycol [which is an ingredient in NJOY], glycerine [another ingredient in NJOY], flavours) have been approved for use in food, but this does not necessarily mean that they are also safe when they are repeatedly inhaled over a prolonged period of time – as they are when used in electronic cigarettes.

There are currently no studies available on the effects of long-term use of e-cigarettes. *Id.* at 7.

- To date, only [a] few studies have been conducted on potential health risks associated with inhaling propylene glycol [an ingredient in NJOY] – as one does when using electronic cigarettes as intended.  According to these studies, inhaling propylene glycol may affect airways.  Short-term exposure to propylene glycol in indoor air (309 mg/m3 for one minute) already causes irritations in the eyes, throat and airways.  Long-term exposure to propylene glycol in indoor air may raise children's risk of developing asthma. People who have frequently been exposed to theatrical fogs containing propylene glycol are more likely to suffer from respiratory, throat and nose irritations than do unexposed people. We may therefore assume that the use of e-cigarettes, which involves inhaling propylene glycol vapours several times daily, may cause respiratory irritations.  This applies, in particular, to individuals with impaired airways and to smokers who switch to e-cigarettes or use them additionally, because smokers usually already have impaired airways. *Id.*

- Glycerine [an ingredient in NJOY] is considered generally safe for oral intake and is used in food production as a humectant and as a solution carrier in flavours.  However, this does not necessarily mean that it is also safe for inhalation – as in e-cigarettes if used as intended.  These concerns are not unfounded.  The specialist journal Chest reports about a case study of a patient with lipoid pneumonia caused by glycerine-based oils from the aerosol of electronic cigarettes.  The link appears to be clear, since symptoms

disappeared when the patient stopped using electronic cigarettes. *Id.* at 7-8.

- Individual liquids [including NJOY, per the FDA study noted above and cited in the instant article] were found to contain small amounts of nitrosamines.   In addition, formaldehyde, acetaldehyde and acrolein were measured in the aerosol of various e-cigarettes, although considerably less than in cigarette smoke.  Formaldehyde and acrolein were only found in glycerine-containing liquids [NJOY contains glycerine]; they probably form upon heating of glycerine. Acrolein is absorbed by the user: A decomposition product of acrolein was detected in the urine of e-cigarettes users, although considerably less than after smoking conventional cigarettes.   In addition, nickel and chromium were detected in the aerosol, with higher levels of nickel measured than it is known to be present in cigarette smoke.   The aforementioned substances have been classified by the German Research Foundation (Deutsche Forschungsge- meinschaft, DFG) and the International Agency for Research on Cancer (IARC) as carcinogenic.  Since there is no safe threshold value for these substances, it cannot be excluded that using electronic cigarettes increases cancer risk, even though these substances may be present in very small amounts.  *Id.*

- Data on the impact of e-cigarette use on pulmonary function are not conclusive.   A study involving 30 participants reports adverse effects on pulmonary function after using an electronic cigarette for five minutes; however, the long-term pulmonary effects of e-cigarette use are unknown at the present time.  *Id.*

- There are currently no studies available on the effects of long-term

1  use of e-cigarettes.  *Id.* at 7.

2  46.  Certain of the many studies considered in the above referenced Red

3  Series review are among those discussed in more detail in the individual study

4  references below.  One such study was *Short-term Pulmonary Effects of Using an*

5  *Electronic Cigarette*, published in June 2012 in Chest, the journal of the American

6  College of Chest Physicians.  That study expressly found both that electronic

7  cigarettes had adverse health effects and the need for further research:

8  **E-cigarettes assessed in the context of this study were found to have**

9  **immediate adverse physiologic effects after short-term use that are**

10  **similar to some of the effects seen with tobacco smoking**; however, the

11  long-term health effects of e-cigarette use are unknown but potentially

12  adverse and worthy of further investigation.  [Emphasis added.]

13  47.  A French article published in the consumer publication *60 millions de*

14  *consommatuers* on August 26, 2013, reported that e-cigarettes are potentially

15  carcinogenic.  It based its findings upon testing 10 different models of e-cigarettes.[21]

16  It found "carcinogenic molecules in a significant amount" in the vapour produced in

17  the products.  It further determined that "[i]n three cases out of 10, for products with

18  or without nicotine, the content of formaldehyde was as much as the levels found in

19  some conventional cigarettes."  It found acrolein, a toxic molecule emitted in

20  quantities "that exceeded the amount found in the smoke of some cigarettes."

21  "Potentially toxic" trace metals were also discovered in some of the models.

22  48.  A study by scientists at the University of California Riverside,

23  published on March 20, 2013 in the journal PLoS One, found that:

24  one [unidentified] brand of e-cigarettes generates aerosols containing

25  _____

26  [21]  Quotes in this paragraph are derived from B. McPartland, "Report: e-

cigarettes are 'potentially carcinogenic'" an article published in *The Local*, a source

27  for "France's News in English," on August 26, 2013, describing this study.

28

micron particles comprised of tin, silver, iron, nickel, aluminum and silicate, as well as nanoparticles containing tin, chromium and nickel, which are elements that cause respiratory distress and disease.  Those metals come from the wires inside the cartridge, while silicate particles may originate from the fiber glass [*sic*] wicks.

Williams, M., *et al.*, *Metal and Silicate Particles Including Nanoparticles Are Present in Electronic Cigarette Cartomizer Fluid and Aerosol,* PLoS ONE 8(3): e57987 (2013).

49.    Also, according to that study by the University of California at Riverside:

A total of 22 elements were identified in EC [electronic cigarette] aerosol, and three of these elements (lead, nickel, and chromium) appear on the FDA's ''harmful and potentially harmful chemicals'' list. Lead and chromium concentrations in EC aerosols were within the range of conventional cigarettes, while nickel was about 2–100 times higher in concentration in EC aerosol than in Marlboro brand cigarettes (Table 1).   Adverse health effects in the respiratory and nervous systems can be produced by many of the elements in Table 1, and many of the respiratory and ocular symptoms caused by these elements have been reported by EC users in the Health and Safety Forum on the Electronic   Cigarette   Forum   website   (http://www.e-cigarette-forum.com/forum/health-safety-e-smoking/).    Although [a table reflecting this research] was constructed to emphasize the effects of the elements found in aerosol on the respiratory system, other systems, such as the cardiovascular and reproductive systems, can be affected by most of the elements in EC aerosol. ***EC consumers should be aware of the metal and silicate particles in EC aerosol and the potential***

1    *health risks associated with their inhalation*.

2    *Id.* at 5 (emphasis added).

3    50.    A study published on September 23, 2013 in the International Journal

4    of Environmental Research and Public Health titled, *Lung Deposition Analyses of*

5    *Inhaled Toxic Aerosols in Conventional and Less Harmful Cigarette Smoke: A*

6    *Review*, found that there were potential risks associated with e-cigarettes that were

7    not a factor in traditional cigarettes, including "compensatory smoking (*i.e.*, stronger

8    puffing) leading to cancer in the deeper lung regions," and that "[u]nknown

9    reactions between some components in newly designed filters (or other new

10   additives) may lead to the production of carcinogens or other toxicants."

11   51.    Most NJOY E-Cigarettes contain nicotine.  On December 15, 2013, the

12   American Society for Cell Biology issued a press release concerning the findings of

13   researchers at Brown University, who determined that, "Nicotine, the major

14   addictive substance in cigarette smoke, contributes to smokers' higher risk of

15   developing atherosclerosis, the primary cause of heart attacks," and that, as such, e-

16   cigarettes, which contain nicotine, as most NJOY E-Cigarettes do, "may not

17   significantly reduce risk for heart disease."[22]

18   **III.    DEFENDANT'S ADVERTISEMENTS FOR ITS NJOY**

19   **E-CIGARETTES ARE MATERIALLY DECEPTIVE, FALSE**

20   **AND MISLEADING**

21   52.    Defendant has carried out a consistent and widespread campaign of

22   deceptively promoting its NJOY E-Cigarettes.  The core marketing message that

23

---

24   [22]    American Society for Cell Biology, "Nicotine drives cell invasion that

25   contributes to plaque formation in coronary arteries, Research indicates e-cigarettes

26   may not significantly reduce risk for heart disease," Dec. 15, 2013, available at

27   http://www.eurekalert.org/pub_releases/2013-12/asfc-ndc112613.php (last accessed

     Jan. 7, 2014).

28

Defendant has used, that its products provide "***everything you like about smoking without the things you don't***" (emphasis added), and other statements that also convey the message that the use of NJOY E-Cigarettes is known to be safer than smoking traditional cigarettes, or known to be generally safe, are false and misleading given the studies discussed above that have found carcinogens, toxins, and other potentially harmful impurities, including certain of those found in traditional tobacco cigarettes, in electronic cigarettes, including NJOY E-Cigarettes. It is also false and misleading given the content of the NJOY products because there is still insufficient research for NJOY to assert or convey that NJOY products do not pose long term health dangers as smoking traditional cigarettes does.  Defendant's statements and omissions have occurred in at least four forms, all of which constitute "advertising."  These include: its packaging; inserts to its packaging and shipping materials; its print advertisements; and its website through which it directly sells its NJOY E-Cigarettes and related products to the public.  Defendant's pervasive advertising message conveys the impression that, unlike traditional tobacco cigarettes, which contain carcinogens, toxins and other impurities and cause disease (i.e., "the things you don't" like about cigarettes), NJOY E-Cigarettes are "without" those things and do not carry that same risk of disease.  As demonstrated above in Section II, however, this is materially deceptive, false and misleading given the information revealed by studies that not only are e-cigarettes such as NJOY E-Cigarettes potentially dangerous to your health but that they also may carry many of the same risks of disease as traditional tobacco cigarettes, including as a result of the tobacco specific nitrosamines they contain that are powerful carcinogens, which is not disclosed by Defendant.

     53.    Beginning in 2007, as shown below, NJOY packaging bore the slogan "ALL THE PLEASURES OF SMOKING WITHOUT ALL THE PROBLEMS"[23]:

---

[23]    http://tobaccoproducts.org/index.php/NJoy_Electronic_Cigarette (last visited (continued…)



54.   NJOY's pattern of deceptive marketing is pervasive, including the use of its "everything you like about smoking without the things you don't" slogan (or the like) in its advertisements, and other false, misleading and deceptive statements, as discussed herein.

55.   The packages for NJOY's current main product, NJOY Kings, introduced to the market in December 2012, are designed to look like they contain traditional cigarettes, and the NJOY Kings smoking devices mirror traditional cigarettes and, as such, are intended to capitalize on consumers' desire to smoke but yet avoid the health dangers of traditional tobacco cigarettes.  For example, as described more fully below, one of NJOY's commonly used taglines includes the statements: "Finally, smokers have a real alternative," and "Cigarettes, you've met your match."

_____
(...continued)
12/14/13) (showing picture of packaging with tagline, dated 2007, and stating that each product was introduced in 2007).

56.   The packaging for NJOY products, through warnings that are fraught with material omissions, conveys the impression that the product contains no meaningful health risks other than possibly those that are a direct result of nicotine. For example, the packaging on NJOY Kings warns:[24]

 

On information and belief, OneJoys contain the same or substantively similar warnings.

57.   The small print on the back of the packaging is significant not only because its font is so small as to be difficult for many people to read, but also for its failure to list the ingredients of the product.  While Defendant does describe what it claims are its ingredients on its website (which description is itself false and misleading as described below), by omitting the ingredients from the labels, Defendant denies consumers at the point of sale the opportunity to decide for themselves whether the chemicals used are substances they are willing to risk

[24]   Photographs taken November 21, 2013 of product purchased on that date.

inhaling.  For example, by omitting the ingredients, Defendant hides the fact that NJOY E-Cigarettes contain propylene glycol, a product found to cause throat irritation and induce coughing,[25] and thus no longer used by certain of NJOY's competitors in their e-cigarettes.  Moreover, as discussed below, omitting the ingredients on the package conceals the dangers associated with the chemicals in its NJOY E-Cigarettes, which are described in the studies referenced above.

58.    The text on the back of the NJOY King and OneJoy packages reads:

WARNING: NJOY products are not smoking cessation products and have not been tested as such.  The U.S. FDA has not approved NJOY products for any use and they are not intended to diagnose, cure, mitigate, treat, or prevent any disorder, disease, or physical or mental condition.  NJOY products contain nicotine, a chemical known to the State of California to cause birth defects or other reproductive harm.  Nicotine is addictive and habit forming, and it is very toxic by inhalation, in contact with the skin, or if swallowed.  Ingestion of the non-vaporized concentrated ingredients in the cartridges can be poisonous.  Physical effects of nicotine may include accelerated heart

---

[25]    *Electronic Cigarettes – An Overview*, published in the Red Series Tobacco Prevention and Tobacco Control, Vol. 19 (Heidelberg 2013), referenced in ¶¶ 44-45 above, citing Wieslander G., *Experimental exposure to propylene glycol mist in aviation emergency training: acute ocular and respiratory effects*, Occup Environ Med 58: 649-655, Choi H, (2010), *Common household chemicals and the allergy risks in pre-school age children,* PLoS One 5: e13423, and Moline JM, *Health effects evaluation of theatrical smoke, haze and pyrotechnics* (2000).  *See also* New Hampshire Department of Environmental Services, *Ethylene Glycol and Propylene Glycol: Health Information Summary*, Environmental Fact Sheet, http://des.nh.gov/organization/commissioner/pip/factsheets/ard/documents/ard-ehp-12.pdf (last visited Jan. 7, 2014) (stating  that "Human volunteers exposed to high levels of propylene glycol mist for a short time had increased levels of eye and throat irritation, and cough.").

rate and increased blood pressure.  If the cartridge is swallowed, seek medical assistance immediately.  NJOY products are intended for use by adults of legal smoking age (18 or older in California), and not by children, women who are pregnant or breastfeeding, or persons with or at risk of heart disease, high blood pressure, diabetes, or taking medicine for depression or asthma.  NJOY products may not be sold to minors.  Identification of all persons under 26 will be required before purchase.  Keep out of reach of children.

59.     By warning of risks relating to nicotine, and the risks that may arise if the concentrated contents of the cartridge are swallowed without being vaporized, this packaging implies that those are the only health-related risks that relate to NJOY E-Cigarettes.   This is deceptive and misleading, as the package omits reference to the other carcinogens, toxins and impurities, including carcinogenic tobacco-specific nitrosamines found in NJOY E-Cigarettes as discussed above in Section II.  It also does not reference the difference in inhalation behavior between vaping and traditional smoking (described herein) that may cause additional problems for persons who use e-cigarettes, including NJOY E-Cigarettes. Moreover, by listing health risks related to nicotine, but not cancer, the packaging is further misleading by omission.

60.     As demonstrated below, Defendant's pervasive advertisements representing that NJOY E-Cigarettes offer all of the positive aspects of smoking/ cigarettes without the negative ones, and otherwise implying that NJOY E-Cigarettes are without various health risks, are materially deceptive, false and misleading given the studies discussed above in Section II and fail to disclose that such research and studies have raised significant concerns about the health risks of NJOY E-Cigarettes, including but not limited to:

- the presence of nitrosamines, toxins, and other impurities, including certain of those found in tobacco cigarettes, that are dangerous to the user's health and cause disease;

- the harmful impact to lung capacity as a result of the chemicals, including propylene glycol, contained therein that are present in NJOY E-Cigarettes;

- that NJOY E-Cigarettes require that the user take significantly stronger puffs than the puffs required for a traditional tobacco cigarette, and that this could be harmful to health;

- and other potentially dangerous but unknown health effects caused by the long term use of e-cigarettes, including NJOY E-Cigarettes.

61.    For example, one package insert for NJOY E-Cigarettes is as follows:



62.    The statements in the insert above, including that "The NJOY King provides everything you like about smoking without the things you don't," are deceptive, false and misleading for the reasons stated in ¶ 60, *supra*.

63.     Another insert found in NJOY's packaging in 2013 instructs readers, "Be sure to tell your friends and family about the positive impact that NJOY products are having on your life," and states that "the NJOY King gives you everything you love about the smoking experience":



64.     For the reasons noted above in ¶ 60, these representations are deceptive, false and misleading.

65.     As shown in the picture below, in one 2013 ad, NJOY states, under the lead line, "The most amazing thing about this cigarette?  It isn't one," that with the NJOY King, "You get to keep all the things you like about smoking while losing the things you don't."[26]

---

[26] Published in, at least, Out Magazine, February 2013.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23



24       66.   Another ad shown below, under the lead line, "Try something new in
25   bed.   Finally smokers have a real alternative," asserts "It's the first electronic
26
27
28

cigarette where you get to keep the things you like about smoking, while losing the things you don't.  What's not to love?  Cigarettes, you've met your match."[27]



_____

[27] Published in, at least, Out Magazine, June 2013.

67.   Another ad, shown below, contains the same text, but under the lead line, "Start a new relationship," says, "you get to keep the things you like about cigarettes while losing the things you don't.  What's not to love?"[28]



[28] Publis

1

2

3

4          68.    The statements in the advertisements in ¶¶ 65-67 above, including that

5   with NJOY E-Cigarettes, "You get to keep all the things you like about smoking

6   while losing the things you don't," are deceptive, false and misleading for the

7   reasons stated in ¶ 60, *supra*.

8          69.    In addition, advertising like the one shown below[29] gives the

9   impression that NJOY E-Cigarettes are a smoking cessation device:

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26



27   [29] Published in, at least, Rolling Stone, January 17, 2013.

28

1

2      70.    The phrase "Resolution Solution" clearly refers to smokers' New Years

3  resolutions to quit smoking.  This conveys the impression that NJOY E-Cigarettes

4  are, in fact, a smoking cessation aid.  Yet, in multiple places, including as referred to

5  in ¶ 58, *supra* (but omitted in this particular advertisement), Defendant states that

6  NJOY E-Cigarettes are not a smoking cessation device.  Thus, this advertisement is

7  deceptive, false and misleading.  This misrepresentation is particularly significant

8  because the reason that NJOY states elsewhere that it is not a smoking cessation

9  device is to avoid regulation under the Food, Drug and Cosmetic Act ("FDCA")

10  which has been found, in a lawsuit to which NJOY was a party, to grant the FDA

11  the power to regulate smoking cessation devices.  *See Smoking Everywhere, Inc. v.*

12  *United States FDA*, 680 F. Supp. 2d 62 (D.D.C. 2010), and, upholding that decision,

13  *Sottera, Inc. v. FDA*, 627 F.3d 891 (D.C. Cir. 2010).

14      71.    In addition, NJOY's promotion of its NJOY E-Cigarettes as a "real

15  alternative" for smokers in its various ads continues to convey the deceptive, false

16  and misleading impression discussed above that its NJOY E-Cigarettes are

17  "without" the things you don't like about traditional tobacco cigarettes and therefore

18  carry no risk of and do not cause disease as traditional tobacco cigarettes do, which

19  is false in light of the material information discussed in the studies *supra*, in Section

20  II, which are not disclosed by Defendant.

21      72.    Each example of NJOY's packaging, inserts and advertising contains

22  an address for NJOY's website, which as described herein, also contains

23  misrepresentations and omissions about NJOY's products.

24      73.    The following product description, stating, "It provides everything you

25  like about smoking without the things you don't," was taken from Defendant's

26  website:[30]

27  _____

[30]     NJOY,   http://www.njoy.com/njoy-kings/njoy-king-3-pack.html   (last   visited

28  (continued…)

1
2
3
4

## Product Description

**What Is An NJOY King?**

It's a premium electronic cigarette with the look, feel and flavor of the real thing, but without the tobacco smoke. Instead it emits a flavorful but odorless vapor. It provides everything you like about smoking without the things you don't. No tobacco smoke or cigarette smell.

5
6
7

74.     As described above, the statement, "It provides everything you like about smoking without the things you don't," is deceptive, false and misleading for the reasons stated in ¶ 60, *supra*.

8
9

75.     Beginning in approximately early January 2014, Defendant added a new slogan to its marketing (pictured below): "Friends Don't Let Friends Smoke."[31]

10
11
12
13
14
15
16
17
18
19
20
21



22

_____

23

(…continued)
Jan. 10, 2013).

24
25
26
27

[31]     According to and AdvertisingAge Article published January 2, 2014, this ad "will appear through the winter and spring on cable networks including discovery, ESPN and Viacom, as well as on the radio, in digital media and in "out-of-home" ads.  http://adage.com/article/media/njoy-e-cig-tv-spot-insists-friends-friends-smoke/290886/ (last visited June 25, 2014).  The ad also appeared during the 2014 Super Bowl.

28

76.    A reasonable consumer viewing this advertisement would believe it to mean that "friends don't let friends smoke" because traditional tobacco cigarettes contain carcinogens and toxins and smoking carries the risk of disease, but that friends should encourage friends to use NJOY because NJOY E-Cigarettes do not contain carcinogens or toxins as tobacco cigarettes do and do not therefore carry the same or similar risk of disease.  According to a January 2, 2014 article published in Advertising Age, "[a]sked whether the ad winks at the audience about health claims, a spokeswoman for NJOY said yes."[32]   This is another deceptive, false and misleading advertisement for the reasons stated in ¶ 60, *supra*.

77.    On its website, Defendant has a Frequently Asked Questions page.[33]  In one of the sections, Defendant stated that "[t]he primary ingredients [of NJOY E-Cigarettes] are glycerin and propylene glycol, and the secondary ingredients are nicotine and flavors to replicate the taste of traditional smoking," and went on to provide deceptive, false and misleading statements about those ingredients.[34]  With respect to propylene glycol and glycerin, Defendant's FAQ page on its website stated:

- Propylene Glycol - The Food and Drug Administration (FDA) has determined propylene glycol to be "***generally recognized as safe***" for use in food, and propylene glycol is used in cosmetics and medicines. [Emphasis added.]  It is used in food coloring and flavoring, as an additive to keep food, medicines and cosmetics moist, and in machines that simulate smoke, although usage in simulating smoking devices is not currently included in the list of uses recognized by the FDA.  In NJOY, propylene glycol

---

[32]   *Id.*

[33]   NJOY, http://www.njoy.com/faqs (last visited Jan. 7, 2014).

[34]   *Id.*

1  functions to provide the vapor mist that looks like smoke and to

2  suspend flavor.  [Emphasis added.]

3  •  Glycerin - The FDA has determined glycerin to be "***generally***

4  ***recognized as safe***" for use in food, and glycerin is commonly

5  used in foods, beverages, medical and pharmaceutical

6  applications, such as cough drops, although usage in simulating

7  smoking devices is not currently included in the list of uses

8  recognized by the FDA.  [Emphasis added.]

9  78.  By stating that the FDA considers these substances "generally

10 recognized as safe" for consumption in food, Defendant created the false and

11 misleading impression that these substances carry no risk and are safe as used for

12 inhalation in NJOY E-Cigarettes, as discussed above.  However, the gastrointestinal

13 system processes foreign matter differently than the respiratory system, and

14 ingredients that may be safe when digested may not be safe when inhaled, especially

15 with long term use.  The additional statement that "usage in simulating smoking

16 devices is not currently included in the list of uses recognized by the FDA," is itself

17 misleading in the absence of reference to the studies finding that these ingredients

18 may not be safe when inhaled, including, but not limited to, the studies referenced in

19 the review of the literature, *Electronic Cigarettes – An Overview*, published in the

20 Red Series Tobacco Prevention and Tobacco Control, Vol. 19 (Heidelberg 2013),

21 referenced in ¶¶ 44-45 above.  For example, that paper stated: "Glycerine is

22 considered generally safe for oral intake and is used in food production as a

23 humectant and as a solution carrier in flavours.  However, this does not necessarily

24 mean that it is also safe for inhalation – as in e-cigarettes if used as intended."  *Id.* at

25 7 - 8.

26 79.  As to the other ingredients it described on the FAQ page of the NJOY

27 website, Defendant stated, with respect to nicotine that:

28

- Nicotine - is an alkaloid found in *certain plants, predominately tobacco, and in lower quantities, tomatoes, potatoes, eggplants, cauliflower, bell-peppers, and some teas*.

80.   To draw a parallel between nicotine in e-cigarettes and tomatoes, potatoes, eggplants, cauliflower, bell-peppers and teas is deceptive and misleading, as demonstrated by the studies cited *supra* in Section II.

81.   Finally, Defendant listed the other ingredients of NJOY as unspecified "Natural and Artificial flavors," as to which it said:

- Natural and Artificial Flavors - *determined to be safe for use in food products*.

82.   This is deceptive and misleading because the website did not disclose what those "flavors" are, nor did it acknowledge that safety for use in food products does not denote safety for use in inhaled products, as described above.

83.   An additional deception by NJOY is that it stated on its website:

Regulatory Compliance: NJOY is the only e-cigarette company to have had its marketing practices reviewed by Federal District and Appellate Courts and found to have not made or implied health claims.   The FDA is prohibited from restricting NJOY product imports as a drug or drug delivery device.   Other electronic cigarettes may continue to have importation risks.

84.   This was a misstatement of the District's and Appellate Courts' rulings in the cases at issue.   The only Federal District and Appellate Court decisions concerning NJOY's marketing do not hold that NJOY's marketing practices do not make or imply health claims.   Rather, these cases hold that NJOY has not marketed its products as "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals" or "articles … intended to affect the structure or any function of the body of man or other animals," such that NJOY

1   would be subject to the "drug/device" provisions of the Food, Drug, and Cosmetic

2   Act ("FDCA").  *See Smoking Everywhere, Inc. v. United States FDA*, 680 F. Supp.

3   2d 62 (D.D.C. 2010), and, upholding that decision, *Sottera, Inc. v. FDA*, 627 F.3d

4   891 (D.C. Cir. 2010).  Notably, these rulings were issued before NJOY began to

5   market its NJOY E-Cigarettes as the "Resolution Solution," an obvious reference to

6   tobacco smokers' resolutions to quit smoking in the new year.  To the extent that the

7   statement implies that the FDA or courts have approved NJOY's past advertising or

8   changes to its advertising after the opinions, it is further misleading.

9                    **CLASS DEFINITIONS AND ALLEGATIONS**

10           85.    Plaintiffs bring this action as a class action pursuant to Rule 23(a) and

11   (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure ("Rule") for the purpose

12   of asserting the claims alleged in this Complaint on a common basis.  Plaintiffs

13   bring this action on behalf of themselves and all members of the following three

14   classes (the "Classes") comprised of:

15           **a. All persons, exclusive of Defendant and its employees, who**

16           **purchased in or from California one or more NJOY E-**

17           **Cigarettes, including components thereof, or cartridges or**

18           **accessories therefor, sold by Defendant during the relevant**

19           **period (the "California Class").**

20           **b. All persons, exclusive of Defendant and its employees, who**

21           **purchased in or from Florida one or more NJOY E-**

22           **Cigarettes, including components thereof, or cartridges or**

23           **accessories therefor, sold by Defendant during the relevant**

24           **period (the "Florida Class").**

25           **c. All persons, exclusive of Defendant and its employees, who**

26           **purchased in or from New York one or more NJOY E-**

27           **Cigarettes, including components thereof, or cartridges or**

28

accessories therefor, sold by Defendant during the relevant period (the "New York Class").

86.    Plaintiffs reserve the right to modify or amend the definitions of the Classes after they have had an opportunity to conduct discovery.

87.    ***Numerosity.   Rule 23(a)(1).***   The members of the Classes are so numerous that their individual joinder is impracticable.  Plaintiffs are informed and believe that the proposed Classes contain at least thousands of purchasers of the NJOY E-Cigarettes who have been damaged by Defendant's conduct as alleged herein.  The number of the Classes' members is unknown to Plaintiffs but can be discerned from the records maintained by Defendant.

88.    ***Existence of Common Questions of Law and Fact.   Rule 23(a)(2).*** This action involves common questions of law and fact, which include, but are not limited to, the following:

a.    Whether the statements made by Defendant as part of its advertising for NJOY E-Cigarettes discussed herein are true, or are reasonably likely to deceive, given the omissions of material fact described above;

b.    Whether Defendant's conduct described herein constitutes a deceptive act or practice in violation of the CLRA (California Class);

c.    Whether Defendant's conduct described herein constitutes an unlawful, unfair, and/or fraudulent business practice in violation of the UCL (California Class);

d.    Whether Defendant's conduct described herein constitutes unfair, deceptive, untrue or misleading advertising in violation of the UCL;

e.    Whether Defendant's conduct constitutes a breach of express warranty;

f.    Whether Defendant's conduct described herein constitutes an unconscionable, deceptive, or unfair act or practice in violation of FDUTPA (Florida Class);

g.      Whether Defendant's conduct described herein constitutes a deceptive act or practice in violation of the GBL (New York Class);

h.      Whether Plaintiffs and the other members of the Classes are entitled to damages; and

i.      Whether Plaintiffs and the Classes are entitled to injunctive relief, restitution or other equitable relief and/or other relief as may be proper.

89.    ***Typicality.  Rule 23(a)(3).***   All members of the Classes have been subject to and affected by the same conduct and omissions by Defendant.   The claims alleged herein are based on the same violations by Defendant that harmed Plaintiffs and members of the Classes.   By purchasing NJOY E-Cigarettes during the relevant time period, all members of the Classes were subjected to the same wrongful conduct.   Plaintiffs' claims are typical of the Classes' claims and do not conflict with the interests of any other members of the Classes.   Defendant's unlawful, unfair, deceptive, and/or fraudulent actions and breaches of warranty concern the same business practices described herein irrespective of where they occurred or were experienced.

90.    ***Adequacy.  Rule 23(a)(4).***   Plaintiffs will fairly and adequately protect the interests of the members of the Classes.   Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.   Plaintiffs have no adverse or antagonistic interests to those of the Classes.

91.    ***Injunctive and Declaratory Relief.   Rule 23(b)(2).***   Defendant's actions regarding the deceptions and omissions regarding NJOY E-Cigarettes are uniform as to members of the Classes.   Defendant has acted or refused to act on grounds that apply generally to the Classes, so that final injunctive relief as requested herein is appropriate respecting the Classes as a whole.

92. ***Predominance and Superiority of Class Action.   Rule 23(b)(3).*** Questions of law or fact common to the Classes predominate over any questions affecting only individual members and a class action is superior to other methods for the fast and efficient adjudication of this controversy, for at least the following reasons:

a. Absent a class action, members of the Classes as a practical matter will be unable to obtain redress, Defendant's violations of its legal obligations will continue without remedy, additional consumers will be harmed, and Defendant will continue to retain its ill-gotten gains;

b. It would be a substantial hardship for most individual members of the Classes if they were forced to prosecute individual actions;

c. When the liability of Defendant has been adjudicated, the Court will be able to determine the claims of all members of the Classes;

d. A class action will permit an orderly and expeditious administration of each Class members' claims and foster economies of time, effort, and expense;

e. A class action regarding the issues in this case does not create any problems of manageability; and

f. Defendant has acted on grounds generally applicable to the members of the Classes, making class-wide monetary relief appropriate.

93. Plaintiffs do not contemplate class notice if the Classes are certified under Rule 23(b)(2), which does not require notice, and notice to the putative Classes may be accomplished through publication, signs or placards at the point-of-sale, or other forms of distribution, if necessary, if the Classes are certified under Rule 23(b)(3) or if the Court otherwise determines class notice is required. Plaintiffs will, if notice is so required, confer with Defendant and seek to present the Court with a stipulation and proposed order on the details of a class notice program.

## COUNT I

**Injunctive Relief and Damages for Violations of the Consumers Legal Remedies Act
(Cal. Civil Code §§ 1750 *et seq.*)
(On Behalf of the California Plaintiffs and the California Class and Against Defendant)**

94.    The California Plaintiffs repeat and reallege the allegations contained in the paragraphs above, as if fully set forth herein.

95.    The relevant period for this Count is January 17, 2011 until judgment is entered.

96.    This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* ("CLRA" or the "Act"), which provides that enumerated listed "unfair methods of competition and unfair or deceptive acts or practices [including those listed below in ¶ 105] undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful," CLRA § 1770, and that "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against such person to recover or obtain," various forms of relief, including injunction and damages.  Cal. Civ. Code § 1780.  This cause of action seeks both injunctive relief and damages on behalf of the California Class.

97.    On January 16, 2014, prior to the filing of this Complaint, Plaintiff Halberstam sent Defendant a CLRA notice letter providing the notice required by California Civil Code § 1782(a).  Plaintiff Halberstam sent the letter via certified mail, return receipt requested, to the location in Los Angeles where Plaintiff Halberstam purchased NJOY E-Cigarettes, as well as to Defendant's principal place of business in Arizona, and to the Secretary of State of Nevada, advising Defendant that it is in violation of the CLRA and must correct, replace or otherwise rectify the goods and/or services alleged to be in violation of § 1770.  Defendant was further

1   advised that in the event the relief requested has not been provided within thirty (30)

2   days, Plaintiff Halberstam will amend his Complaint to include a request for

3   monetary damages pursuant to the CLRA.  A true and correct copy of Plaintiff

4   Halberstam's letter is attached hereto as Exhibit A.

5       98.   On February 14, 2014, prior to the filing of Plaintiff McGovern's

6   complaint,[35] and prior to the consolidation with this Complaint, Plaintiff McGovern

7   sent Defendant a CLRA notice letter providing the notice required by California

8   Civil Code § 1782(a).  Plaintiff McGovern sent the letter via certified mail, return

9   receipt requested, to the California Secretary of State, as well as to Defendant's

10  principal place of business in Arizona and Defendant's place of incorporation.  The

11  letter advised Defendant that it is in violation of the CLRA and must correct, replace

12  or otherwise rectify the goods and/or services alleged to be in violation of § 1770,

13  and that in the event the relief requested has not been provided within thirty (30)

14  days, Plaintiff McGovern will amend his complaint to include a request for

15  monetary damages pursuant to the CLRA.  A true and correct copy of Plaintiff

16  McGovern's letter is attached hereto as Exhibit B.

17      99.   Defendant did not correct, replace, or otherwise rectify the goods

18  and/or services alleged in either Plaintiff's letter.  Therefore, the California Plaintiffs

19  seek monetary damages pursuant to the CLRA.

20      100.  The California Plaintiffs were deceived by Defendant's unlawful

21  practices as described more fully above, which included carrying out an advertising

22  campaign, directed at California Plaintiffs and the California Class, conveying the

23  message that NJOY E-Cigarettes provide "everything you like about smoking

24

25  [35]    On February 11, 2014, Plaintiff McGovern filed a complaint against

26  Defendant in the Superior Court of the State of California in and for the County of
    Orange, Case No.: 30-21014-00705711-CU-FR-CXC.  On April 29, 2014, this

27  Court consolidated Plaintiff McGovern's action with this present action.

28

1  without the things you don't"[36] and variations of that statement, and other

2  statements that also convey the message that the use of NJOY E-Cigarettes is known

3  to be safer than smoking traditional cigarettes, or known to be generally safe, which

4  were deceptive, false and misleading given the ingredients and characteristics of

5  NJOY products which were or should be known to Defendant, and the studies that

6  have found carcinogens, toxins, and other potentially harmful impurities in NJOY

7  E-Cigarettes and electronic cigarettes generally, including certain of those found in

8  traditional tobacco cigarettes, and that NJOY E-Cigarettes require that the user take

9  significantly stronger puffs than the puffs required for a traditional cigarette, and

10  that this could be harmful to health which was not disclosed.  Also undisclosed was

11  the lack of research required to assess the potential danger of electronic cigarettes,

12  especially in long term users.

13  101.   Defendant's actions, representations and conduct have violated, and

14  continue to violate the CLRA, because they extend to transactions that are intended

15  to result, or which have resulted, in the sale of goods to consumers.

16  102.   Defendant marketed, sold and distributed NJOY E-Cigarettes in

17  California and throughout the United States during the relevant period.

18  103.   The California Plaintiffs and members of the Class are "consumers" as

19  that term is defined by the CLRA in Cal. Civ. Code § 1761(d).

20  104.   Defendant's NJOY E-Cigarettes were and are "good[s]" within the

21  meaning of Cal. Civ. Code §§ 1761(a) & (b).

22  105.   Defendant violated the CLRA by engaging in at least the following

23  practices proscribed by California Civil Code § 1770(a) in transactions with the

24  California Plaintiffs and the California Class which were intended to result, and did

25  result, in the sale of NJOY E-Cigarettes:

26  ———————————————

27  [36]   NJOY, http://www.njoy.com/njoy-kings/njoy-king-3-pack.html (last visited Jan. 7, 2014).

28

(5) Representing that [NJOY E-Cigarettes have] . . . approval, characteristics . . . uses [or] benefits . . . which [they do] not have . . . .

\*\*\*

(7) Representing that [NJOY E-Cigarettes are] of a particular standard, quality or grade . . . if [they are] of another.

\*\*\*

(9) Advertising goods . . . with intent not to sell them as advertised.

106. As such, Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices because it does not sell, and because it intends not to sell, the NJOY E-Cigarettes as Defendant advertised and instead misrepresents the particulars by, in its marketing, representing NJOY E-Cigarettes as described above when it knew, or should have known, that the representations and advertisements were deceptive, false and misleading in light of the omissions of material facts as described above.

107. The omitted information would have been material to a reasonable consumer in his or her decision as to whether to purchase the NJOY E-Cigarettes and/or purchase the NJOY E-Cigarettes at the price at which they were offered.

108. Defendant had a duty to disclose this information to the California Plaintiffs and the members of the California Class for several reasons.  First, Defendant repeatedly made the representation that its products offer "everything you like about smoking without the things you don't," and used other statements that also convey the message that the use of NJOY E-Cigarettes is known to be safer than smoking traditional cigarettes, or known to be generally safe, as detailed above. Disclosure of the omitted information, including information in the studies referred to *supra* in Section II, was necessary to avoid the false impression of safety provided by such marketing.  Second, Defendant was in a position to know, from its own product knowledge and creation decisions and the studies, of the presence of

1   carcinogens, toxins, and other impurities in its NJOY E-Cigarettes, especially as

2   described in the FDA's 2009 study of NJOY and Smoking Everywhere Products

3   referenced *supra* at ¶¶ 35-38, while consumers were not reasonably in a position to

4   be aware of Defendant's internal product information or such studies.   Third,

5   Defendant actively omitted to disclose, or actively concealed, these material facts as

6   to the California Plaintiffs and the California Class.  Finally, while Defendant made

7   certain specific representations about the risks associated with its NJOY E-

8   Cigarettes, limited to only that they contain nicotine and bear risks related thereto,

9   those representations were misleading half-truths because they implied that those are

10   all of the risks relating to the product, when, in fact, they are not.

    109.  Defendant provided the California Plaintiffs and the other California

12   Class members with NJOY E-Cigarettes that did not match the quality portrayed by

13   its marketing.

    110.  As a result, the California Plaintiffs and members of the California

15   Class have suffered irreparable harm.  The California Plaintiffs' and the other

16   California Class members' injuries were proximately caused by Defendant's

17   conduct as alleged herein.   Plaintiffs Halberstam and McGovern, individually and

18   on behalf of all other California Class members, seek entry of an order enjoining

19   Defendant from continuing to employ the unlawful methods, acts and practices

20   alleged herein pursuant to California Civil Code section 1780(a)(2), awarding

21   exemplary and punitive damages against Defendant pursuant to California Civil

22   Code sections 1780(a)(1) and (a)(4), and ordering the payment of costs and

23   attorneys' fees, and such other relief as deemed appropriate and proper by the Court

24   under California Civil Code section 1780(a)(2).  If Defendant is not restrained from

25   engaging in these practices in the future, the California Plaintiffs and the California

26   Class will continue to suffer harm.

27   111.  Pursuant to section 1780(d) of the CLRA, attached hereto as Exhibits C

28

and D are affidavits showing that this action has been commenced in the proper forum.

## COUNT II
**Injunctive and Equitable Relief for Violations of Unfair Competition Law**
**(Cal. Business & Professions Code §§ 17200,** *et seq.***)**
**(On Behalf of the California Plaintiffs and the California Class and Against Defendant)**

112.   The California Plaintiffs repeat and reallege the allegations contained in the paragraphs above, as if fully set forth herein.

113.   The relevant period for this Count is January 17, 2010 until judgment is entered.

114.   The Unfair Competition Law, Cal. Business & Professions Code § 17200, *et seq.* ("UCL"), prohibits any "unlawful," "unfair," or fraudulent business act or practice and any false or misleading advertising.

115.   In the course of conducting business, Defendant committed unlawful business practices by, *inter alia*, making the representations (which also constitute advertising within the meaning of § 17200) and omissions of material facts, as set forth more fully herein, and violating Cal. Civil Code §§ 1750, *et seq*, and the common law.

116.   The California Plaintiffs, individually and on behalf of the other California Class members, reserve the right to allege other violations of law which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

117.   Defendant's actions constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Defendant engages in deceptive and false advertising, and misrepresents and omits material facts regarding its electronic cigarettes and related paraphernalia, and thereby offends an established public policy, and engages in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.  This conduct constitutes violations of

the unfair prong of Business & Professions Code §§ 17200, *et seq*.

118.   Business & Professions Code §§ 17200, *et seq.*, also prohibits any "fraudulent business act or practice."

119.   Defendant's actions, claims, nondisclosures, and misleading statements, as alleged herein, also constitute "fraudulent" business practices in violation of the UCL because, among other things, they are false, misleading, and/or likely to deceive reasonable consumers within the meaning of Business & Professions Code §§ 17200, *et seq*.

120.   There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

121.   As a result of Defendants' pervasive false marketing, including deceptive and misleading acts and omissions as detailed herein, the California Plaintiffs and other members of the California Class have in fact been harmed as described above.  If Defendant had disclosed the information discussed above about the NJOY E-Cigarettes and otherwise been truthful about their safety, the California Plaintiffs would not have purchased Defendant's products.  Defendant was also able to charge more than what its NJOY E-Cigarettes would have been worth had it disclosed the truth about them.

122.   As a result of Defendant's unlawful, unfair, and fraudulent practices, the California Plaintiffs and the other California Class members have suffered injury in fact and lost money.

123.   As a result of its deception, Defendant has been able to reap unjust revenue and profit in violation of the UCL.

124.   Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct.  Accordingly, injunctive relief is appropriate for the California Plaintiffs and the California Class.

125.   As a result of Defendant's conduct in violation of the UCL, the

California Plaintiffs and members of the California Class have been injured as alleged herein in amounts to be proven at trial because they purchased NJOY E-Cigarettes without full disclosure of the material facts discussed above.

126.   As a result, the California Plaintiffs, individually, and on behalf of the California Class, and the general public, seek restitution and disgorgement of all money obtained from the California Plaintiffs and the members of the California Class collected by Defendant as a result of unlawful, unfair, and/or fraudulent conduct, and seek injunctive relief, and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

## <u>COUNT III</u>

**Injunctive Relief and Damages for Breach of the Florida Deceptive and Unfair Trade Practices Act**
**(Fla. Stat. § 501.201, *et seq.*)**
**(On Behalf of the Florida Plaintiff and the Florida Class and Against Defendant)**

127.   Plaintiff Thomas repeats and realleges the allegations contained in ¶¶ 1-93 above, as if fully set forth herein.

128.   The relevant period for this Count is July 9, 2010 until judgment is entered.

129.   This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201 et seq. ("FDUTPA"), whose purpose is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. §501.202(2).

130. This cause of action is for damages pursuant to Fla. Stat. § 501.211(2). Pursuant to the Act, "a person who has suffered a loss as a result of a violation of this part may recover actual damages, plus attorney's fees and Court costs." Fla. Stat §501.211(2).

131. Plaintiff Thomas is a consumer as defined by Fla. Stat. §501.203. Plaintiff Thomas and each member of the Florida Class purchased NJOY E-Cigarettes during the relevant period of Defendant's pervasive false advertising.

132. Defendant is engaged in trade or commerce within the meaning of the Act.

133. Fla. Stat. §501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ."

134. Defendant has violated the Act by engaging in the unfair and deceptive acts and practices as described herein, which included carrying out an advertising campaign, directed at Plaintiff Thomas and the Florida Class, conveying the

1    message that NJOY E-Cigarettes provide "everything you like about smoking
2    without the things you don't,"[37] and used other statements that also convey the
3    message that the use of NJOY E-Cigarettes is known to be safer than smoking
4    traditional cigarettes, or known to be generally safe, which were deceptive, false and
5    misleading given the studies that have found carcinogens, toxins, and other
6    potentially harmful impurities in NJOY E-Cigarettes and electronic cigarettes
7    generally, including certain of those found in traditional tobacco cigarettes, and that
8    NJOY E-Cigarettes require that the user take significantly stronger puffs than the
9    puffs required for a traditional cigarette, and that this could be harmful to health
10   which was not disclosed.  Also undisclosed was the lack of additional research
11   which such studies have determined is required to assess the potential danger of
12   electronic cigarettes, especially in long term users,  which offend public policies and
13   are immoral, unethical,  unscrupulous and substantially injurious to consumers.

14        135. Plaintiff Thomas and the Florida Class have been aggrieved by
15   Defendant's unfair and deceptive acts and practices in that they purchased NJOY E-
16   Cigarettes.  As a result of Defendant's unfair and deceptive acts and practices, and
17   unlawful conduct, Plaintiff Thomas and other members of the Florida Class have in
18   fact been harmed.  If Defendant had disclosed the information discussed above
19   about the NJOY E-Cigarettes and otherwise been truthful about their safety, Plaintiff
20   Thomas would not have purchased Defendant's products.  In fact, Defendant was
21   able to charge more than what its NJOY E-Cigarettes would have been worth had it
22   disclosed the truth about them.

23        136. The damages suffered by Plaintiff Thomas and the Florida Class were
24   directly and proximately caused by the unfair and deceptive acts and practices of
25   Defendant, as more fully described herein.

---

27   [37] NJOY, http://www.njoy.com/njoy-kings/njoy-king-3-pack.html (last visited Jan. 7, 2014).

137. Pursuant to Fla. Stat. § 501.211(1), Plaintiff Thomas and the Florida Class seek a declaratory judgment and a court order enjoining the above-described wrongful acts and practices of Defendant.

138. Additionally, pursuant to Fla. Stat. § 501.211(2) and pursuant to Fla. Stat. § 501.2015, Plaintiff Thomas and the Florida Class make claims for damages attorneys' fees and costs.

## COUNT IV
### Injunctive Relief and Damages for Violation of New York General Business Law
### (N.Y. GBL Law § 349)
### (On Behalf of the New York Plaintiff and the New York Class and Against Defendant)

139. Plaintiff Kolano repeats and realleges the allegations contained in ¶¶ 1-93 above, as if fully set forth herein.

140. The relevant period for this Count is July 9, 2011 until judgment is entered.

141. This cause of action is brought pursuant to New York General Business Law §349 ("GBL § 349"), which prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in New York State.

142. The conduct of Defendant alleged herein violates GBL § 349 in that Defendant engaged in the unfair acts and deceptive practices as described herein, which included carrying out an advertising campaign directed at Plaintiff Kolano and the New York Class, conveying the message that NJOY E-Cigarettes provide "everything you like about smoking without the things you don't"[38] and used other statements that also convey the message that the use of NJOY E-Cigarettes is known to be safer than smoking traditional cigarettes, or known to be generally safe, which

---

[38] NJOY, http://www.njoy.com/njoy-kings/njoy-king-3-pack.html (last visited Jan. 7, 2014).

were deceptive, false and misleading given the studies that have found carcinogens, toxins, and other potentially harmful impurities in NJOY E-Cigarettes and electronic cigarettes generally, including certain of those found in traditional tobacco cigarettes, and that NJOY E-Cigarettes require that the user take significantly stronger puffs than the puffs required for a traditional cigarette, and that this could be harmful to the health of the user which was not disclosed.  Also undisclosed was the lack of additional research which such studies have determined is required to assess the potential danger of electronic cigarettes, especially in long term users, which offend public policies and are immoral, unethical,  unscrupulous and substantially injurious to consumers. Such conduct is inherently and materially deceptive and misleading in a material respect which was known, or by the exercise of reasonable care, should have been known, to be untrue, deceptive or misleading by Defendant.

143. The materially misleading conduct of Defendant alleged herein was directed at the public at large.

144. Defendant's acts and practices described above are likely to mislead a reasonable consumer acting reasonably under the circumstances.

145. Defendant has willfully and knowingly violated GBL §349 because, in order to increase its own profits, Defendant intentionally engaged in deceptive and false advertising, and misrepresentations and the omission of material facts regarding its NJOY E-Cigarettes as discussed above.

146. As a result of Defendant's deceptive and misleading acts, Plaintiff Kolano and the members of the New York Class have been injured because they purchased NJOY E-Cigarettes without full disclosure of the material facts discussed above.

147. As a result of Defendant's conduct in violation of GBL § 349, Plaintiff Kolano and the members of the New York Class have been injured as alleged herein

in amounts to be proven at trial because if Defendant had disclosed the information discussed above about the NJOY E-Cigarettes and otherwise been truthful about their safety, Plaintiff Kolano would not have purchased Defendant's products. Defendant was also able to charge more than what its NJOY E-Cigarettes would have been worth had it disclosed the truth about them.

148. As a result, pursuant to GBL § 349, Plaintiff Kolano and the New York Class are entitled to make claims against Defendant for actual or statutory damages to be determined at trial, but not less than fifty (50) dollars per Class member, such damages to be trebled.

149. Additionally, pursuant to GBL § 349, Plaintiff Kolano and the New York Class make claims for  attorneys' fees, costs, and injunctive relief requiring Defendant to adequately disclose the omitted information described above.

## COUNT V
### Damages for Breach of Express Warranty
### (On Behalf of Plaintiffs and the Classes and Against Defendant)

150.   Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-93 above, as if fully set forth herein.

151.   The relevant period for this Count is as follows: (i) for the California Class: from January 17, 2010 until judgment is entered; (ii) for the Florida Class: from July 9, 2009 until judgment is entered; and (iii) for the New York Class: from July 9, 2010 until judgment is entered.

152.   The California Plaintiffs bring this claim individually and on behalf of the California Class.

153.   Plaintiff Thomas brings this claim individually and on behalf of the Florida Class.

154.   Plaintiff Kolano brings this claim individually and on behalf of the New York Class.

155.   Plaintiffs, and each member of the Classes, formed a contract with

1   Defendant at the time Plaintiffs and the other members of the Classes purchased

2   NJOY E-Cigarettes or related paraphernalia.  The terms of that contract include the

3   promises and affirmations of fact made by Defendant on its NJOY E-Cigarettes

4   packaging and inserts and through the NJOY marketing campaign, as described

5   above.  This product packaging and advertising constitute express warranties, became

6   part of the basis of the bargain, and are part of a standardized contract between

7   Plaintiffs and the members of the Classes on the one hand, and Defendant on the

8   other.

9   156.  Plaintiffs and the members of the Classes performed their obligations

10  under the contract.

11  157.  Defendant breached the terms of this contract, including the express

12  warranties, with Plaintiffs and the Classes by not providing NJOY E-Cigarettes that

13  offered "everything you like about smoking without the things you don't" and used

14  other statements that also convey the message that the use of NJOY E-Cigarettes is

15  known to be safer than smoking traditional cigarettes, or known to be generally safe,

16  and otherwise omitted material information about potential health risks associated

17  with the product.  Such express warranties breached by Defendant include the NJOY

18  E-Cigarette representations set forth above in Section III.

19  158.  As a result of Defendant's breach of its contract, Plaintiffs and the

20  Classes have been damaged in the amount of the purchase price of the NJOY E-

21  Cigarettes and related paraphernalia they purchased.

## **PRAYER FOR RELIEF**

23  Wherefore, Plaintiffs pray for a judgment:

24  a.   Certifying the Classes as requested herein, appointing Plaintiffs

25      Halberstam and McGovern as class representatives for the California

26      Class, appointing Plaintiff Thomas as class representative for the

27      Florida Class and appointing Plaintiff Kolano as class representative for

28

the New York Class and appointing court appointed interim co-lead counsel, Wolf Haldenstein Adler Freeman & Herz LLP, Westerman Law Corporation, and Levi & Korsinsky LLP, as counsel for the Classes;

b.   Requiring Defendant to disgorge or return all monies, revenues and profits obtained by means of any wrongful act or practice to Plaintiffs and the members of the Classes under Cal. Bus. & Prof. Code §§ 17200 et seq, and each other cause of action where such relief is permitted;

c.   Enjoining Defendant from continuing the unlawful practices as set forth herein, including marketing or selling NJOY E-Cigarettes without disclosing the potential health risks relating thereto, and directing Defendant to engage in corrective action, or providing other injunctive or equitable relief;

d.   Pursuant to Fla. Stat. §§ 501.211 and 501.2015, awarding damages to each member of the Florida Class;

e.   Pursuant to GBL § 349, awarding actual damages, or fifty (50 dollars, whichever is greater, to each member of the New York Class, and trebling damages because Defendant's violations were willful or knowing;

f.   Awarding damages pursuant to Cal. Civ. Code § 1780, including exemplary and punitive damages to prevent and deter Defendant from future unlawful conduct;

g.   Awarding damages for breach of express warranty to each member of the Classes;

h.   Awarding all equitable remedies available pursuant to Cal. Civ. Code § 1780 and other applicable law;

i.   Awarding attorneys' fees and costs;

1      j.      Awarding pre-judgment and post-judgment interest at the legal rate;

2      and

3      k.      Providing such further relief as may be just and proper.

DATED: July 9, 2014           **WOLF HALDENSTEIN ADLER**
                         **FREEMAN & HERZ LLP**

            By:   */s/ Janine L. Pollack*
                 JANINE L. POLLACK (*pro hac vice*)
                 pollack@whafh.com
                 DEMET BASAR (*pro hac vice*)
                 basar@whafh.com
                 KATE M. MCGUIRE (*pro hac vice*)
                 mcguire@whafh.com
                 270 Madison Avenue
                 New York, New York 10016
                 Telephone:  212/545-4600
                 Facsimile:  212/545-4653

                 **WOLF HALDENSTEIN ADLER**
                   **FREEMAN & HERZ LLP**
                 FRANCIS M. GREGOREK (144785)
                 gregorek@whafh.com
                 BETSY C. MANIFOLD (182450)
                 manifold@whafh.com
                 RACHELE R. RICKERT (190634)
                 rickert@whafh.com
                 MARISA C. LIVESAY (223247)
                 livesay@whafh.com
                 750 B Street, Suite 2770
                 San Diego, CA 92101
                 Telephone:  619/239-4599
                 Facsimile:  619/234-4599

                 **WESTERMAN LAW CORPORATION**
                 JEFF S. WESTERMAN (94559)
                 jwesterman@jswlegal.com
                 1900 Avenue of the Stars, 11th Floor
                 Los Angeles, CA 90067
                 Telephone:  310/698-7880
                 Facsimile:  310/775-9777

                 **LEVI & KORSINSKY LLP**
                 EDUARD KORSINSKY (*pro hac vice*)
                 ek@zlk.com
                 SHANNON L. HOPKINS (*pro hac vice*)
                 shopkins@zlk.com
                 NANCY A. KULESA (*pro hac vice*)
                 nkulesa@zlk.com
                 STEPHANIE A. BARTONE (*pro hac vice*)

sbartone@zlk.com
30 Broad Street, 24th Floor
New York, New York 10004
Telephone:  212/363-7500
Facsimile:   866/367-6510

*Interim Class Counsel*

**THE WILNER FIRM, P.A.**
RICHARD J. LANTINBERG (*pro hac vice*)
rlantinberg@wilnerfirm.com
444 E. Duval Street
Jacksonville, FL 32202
Telephone:  904/446-9817
Facsimile:  904/446-9825

**DORNFELD & NASIS LLP**
ELBERT F. NASIS
enasis@DornfeldNasis.com
145 Marcus Boulevard, Suite 4
Hauppauge, New York 11788
Telephone: 866/578-5438
Facsimile: 631/236-9871

**BISNAR CHASE LLP**
BRIAN D. CHASE (164109)
bchase@bisnarchase.com
JERUSALEM F. BELIGAN (211258)
jbeligan@bisnarchase.com
TRAVIS K. SIEGEL (282482)
tsiegel@bisnarchase.com
1301 Dove Street, Suite 120
Newport Beach, CA
Telephone: 949/752-2999
Facsimile: 949/752-2777

*Additional Counsel for Plaintiffs*

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED: July 9, 2014                      **WOLF HALDENSTEIN ADLER**
                                          **FREEMAN & HERZ LLP**

                                  By:   */s/ Janine L. Pollack*
                                          JANINE L. POLLACK (*pro hac vice*)
                                          pollack@whafh.com
                                          DEMET BASAR (*pro hac vice*)
                                          basar@whafh.com
                                          KATE M. MCGUIRE (*pro hac vice*)

- 60 -

mcguire@whafh.com
270 Madison Avenue
New York, New York 10016
Telephone:  212/545-4600
Facsimile:  212/545-4653

**WOLF HALDENSTEIN ADLER
    FREEMAN & HERZ LLP**
FRANCIS M. GREGOREK (144785)
gregorek@whafh.com
BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. RICKERT (190634)
rickert@whafh.com
MARISA C. LIVESAY (223247)
livesay@whafh.com
750 B Street, Suite 2770
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:  619/234-4599

**WESTERMAN LAW CORPORATION**
JEFF S. WESTERMAN (94559)
jwesterman@jswlegal.com
1900 Avenue of the Stars, 11th Floor
Los Angeles, CA 90067
Telephone:  310/698-7880
Facsimile:  310/775-9777

**LEVI & KORSINSKY LLP**
EDUARD KORSINSKY (*pro hac vice*)
ek@zlk.com
SHANNON L. HOPKINS (*pro hac vice*)
shopkins@zlk.com
NANCY A. KULESA (*pro hac vice*)
nkulesa@zlk.com
STEPHANIE A. BARTONE (*pro hac vice*)
sbartone@zlk.com
30 Broad Street, 24th Floor
New York, New York 10004
Telephone:  212/363-7500
Facsimile:  866/367-6510

*Interim Class Counsel*

**THE WILNER FIRM, P.A.**
RICHARD J. LANTINBERG (*pro hac vice*)
rlantinberg@wilnerfirm.com
444 E. Duval Street
Jacksonville, FL 32202
Telephone:  904/446-9817
Facsimile:  904/446-9825

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DORNFELD & NASIS LLP**
ELBERT F. NASIS
enasis@DornfeldNasis.com
145 Marcus Boulevard, Suite 4
Hauppauge, New York 11788
Telephone: 866/578-5438
Facsimile: 631/236-9871

**BISNAR CHASE LLP**
BRIAN D. CHASE (164109)
bchase@bisnarchase.com
JERUSALEM F. BELIGAN (211258)
jbeligan@bisnarchase.com
TRAVIS K. SIEGEL (282482)
tsiegel@bisnarchase.com
1301 Dove Street, Suite 120
Newport Beach, CA
Telephone: 949/752-2999
Facsimile: 949/752-2777

*Additional Counsel for Plaintiffs*

NJOY:20460v7.complaint

# PROOF OF SERVICE

I, the undersigned, say:

I am a citizen of the United States and am over the age of 18 and not a party to the within action. My business address is 1900 Avenue of the Stars, 11th Floor, Los Angeles, California 90067.

On July 9, 2014, I served the following document:

**SECOND CONSOLIDATED AMENDED COMPLAINT FOR VIOLATIONS OF: (1) CAL. CONSUMERS LEGAL REMEDIES ACT; (2) CAL. UNFAIR COMPETITION LAW; (3) FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT; (4) N.Y. GEN. BUS. LAW; AND (5) BREACH OF EXPRESS WARRANTY**

By posting the document to the ECF Website of the United States District Court for the Central District of California, for receipt electronically.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 9, 2014, at Los Angeles, California.

_____/s/ Jenna Radomile_____
Jenna Radomile