**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
FRANCIS M. GREGOREK (144785)
gregorek@whafh.com
BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. RICKERT (190634)
rickert@whafh.com
750 B Street, Suite 2770
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile: 619/234-4599

**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
JANINE L. POLLACK
pollack@whafh.com
DEMET BASAR
basar@whafh.com
KATE M. MCGUIRE
mcguire@whafh.com
270 Madison Avenue
New York, New York 10016
Telephone:  212/545-4600
Facsimile:  212/545-4653

**WESTERMAN LAW CORPORATION**
JEFF S. WESTERMAN (94559)
jwesterman@jswlegal.com
1900 Avenue of the Stars, 11th Floor
Los Angeles, CA 90067
Telephone:  310/698-7880
Facsimile:  310/775-9777

**LEVI & KORSINKSY LLP**
EDUARD KORSINSKY (*pro hac vice*)
ek@zlk.com
SHANNON L. HOPKINS (*pro hac vice*)
shopkins@zlk.com
NANCY A. KULESA (*pro hac vice*)
nkulesa@zlk.com
STEPHANIE BARTONE (*pro hac vice*)
sbartone@zlk.com
30 Broad Street, 24th Floor
New York, NY 10004
Telephone: 212/363-7500
Facsimile: 866/367-6510

Interim Co-Lead Counsel
[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

|  |  |
|---|---|
| IN RE NJOY, INC. CONSUMER CLASS ACTION LITIGATION | Case No. CV 14-00428-MMM (RZx) |
|  | **THIRD CONSOLIDATED AMENDED COMPLAINT FOR VIOLATIONS OF: (1) CAL. CONSUMERS LEGAL REMEDIES ACT; (2) CAL. UNFAIR COMPETITION LAW; AND (3) FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT** |
|  | **Class Action** |
|  | **DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

**Page**

JURISDICTION AND VENUE ................................................................. 1

NATURE OF THE ACTION ................................................................... 3

PARTIES ................................................................................................ 6

*Plaintiffs* ............................................................................................... 6

*Defendant* ............................................................................................. 7

FACTUAL ALLEGATIONS ................................................................... 8

    I. ELECTRONIC CIGARETTES ........................................................ 8

    II. PUBLISHED STUDIES DEMONSTRATE THE DANGERS AND
    EXPOSURE TO HEALTH RISKS OF E-CIGARETTES ...................... 11

    III. NJOY'S PRE-CLASS PERIOD MARKETING CONVEYED
    SIMILAR MESSAGES AS ITS DECEPTIVE AND FALSE CORE
    MARKETING MESSAGES DURING THE CLASS PERIOD ................. 22

    IV. DEFENDANT'S UNIFORM AND PERVASIVE ADVERTISING
    CAMPAIGN DURING THE CLASS PERIOD WAS MATERIALLY
    DECEPTIVE, FALSE AND MISLEADING ....................................... 27

        A. Materially Misleading Omissions on NJOY Packages ............ 28

        B. Defendant's Other Advertising Was Similarly Materially False
        and Misleading ........................................................................ 31

    V. EACH NAMED PLAINTIFF SAW AND RELIED ON
    DEFENDANT'S CORE MARKETING MESSAGE, INCLUDING
    SPECIFIC ADS AND PACKAGING ............................................... 49

        Plaintiff Halberstam ............................................................... 49

        Plaintiff McGovern ................................................................. 51

        Plaintiff Thomas ..................................................................... 52

CLASS DEFINITION AND ALLEGATIONS ......................................... 52

COUNT I: Injunctive Relied and Damages for Violation of the Consumers
    Legal Remedies Act (Cal. Civ. Code §§ 1750 et seq.) ..................... 56

COUNT II: Injunctive and Equitable Relief for Violations of the Unfair
    Competition Law (Bus. & Prof. Code §§ 17200 et seq.) .................. 61

COUNT III: Injunctive Relieve and Damages for Breach of the Florida
    Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201, et seq.) .... 64

- i -

PRAYER FOR RELIEF ................................................................................ 66

DEMAND FOR JURY TRIAL ................................................................... 69

Plaintiffs Ben Z. Halberstam ("Plaintiff Halberstam") and Eric McGovern ("Plaintiff McGovern") (collectively, "California Plaintiffs"), and Kathryn Thomas ("Plaintiff Thomas" or "Florida Plaintiff") (collectively, with the California Plaintiffs, "Plaintiffs"), by and through their undersigned attorneys, bring this action on behalf of themselves and all others similarly situated, based upon personal knowledge as to themselves and their activities, and on information and belief as to all other matters, against defendants NJOY, Inc. and Sottera, Inc. (collectively, "NJOY"[1] or "Defendant"), and allege as follows:

## JURISDICTION AND VENUE

1.  Diversity subject matter jurisdiction exists over this class action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005), amending 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions involving: (a) 100 or more members in the proposed class; (b) where at least some members of the proposed class have different citizenship from some defendants; and (c) where the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in the aggregate. 28 U.S.C. §§ 1332(d)(2) and (6).

2.  While the exact number of members in the proposed classes is unknown at this time, Plaintiffs have reason to believe that thousands of consumers purchased Defendant's electronic cigarettes (or "e-cigarettes") throughout California and Florida during the class period.[2]

---

[1] Sottera, Inc. was formerly the parent company of NJOY, Inc. and was wholly merged into NJOY, Inc. in July 2012.

[2] As set forth in ¶ 119, the class period for the California Class is from January 17, 2010 until the date of notice.  As set forth in ¶ 120, the class period for the Florida Class is July 9, 2010 until the date of notice. Unless stated otherwise, the two class periods are collectively referenced as the "Class Period."

3.   Diversity of citizenship exists between Plaintiffs and Defendant.  Plaintiffs Halberstam and McGovern are citizens of California: Plaintiff Halberstam resides in Los Angeles, California and Plaintiff McGovern resides in Costa Mesa, California. Plaintiff Thomas is a citizen of Florida and resides in Jacksonville, Florida.  NJOY is incorporated in Delaware with its corporate headquarters located at 15211 North Kierland Boulevard, Suite 200, Scottsdale, Arizona 85254.  Sottera was formerly incorporated in the state of Nevada and was headquartered at 15211 North Kierland Boulevard, Suite 200, Scottsdale, Arizona 85254.  Therefore, diversity of citizenship exists.

4.   While the exact damages to Plaintiffs and the Classes are unknown at this time, Plaintiffs reasonably believe that their claims exceed five million dollars ($5,000,000) in the aggregate.

5. Jurisdiction over the Florida Plaintiff is proper pursuant to Section 28 U.S.C. § 1367, which provides, in relevant part, that: (a) "in any action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution … includ[ing] claims that involve the joinder … of additional parties."

6.   This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the privilege of conducting business in the State of California.

7.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District and because Defendant:

a.    has intentionally availed itself of the laws and markets within this District through the promotion, marketing, distribution and sale of its products in this District;

b.    does substantial business in this District; and

c.    is subject to personal jurisdiction in this District;

and because Plaintiffs Halberstam and McGovern:

a.    were exposed to Defendant's misleading practices and representations in this District; and

b.    purchased NJOY E-Cigarettes (defined below) in this District.

8. Venue is proper in this Court as to the Florida Plaintiff and claim under the doctrine of pendent venue.

## NATURE OF THE ACTION

9.    Defendant, the manufacturer of the NJOY brand of electronic cigarettes, has a uniform and long-standing pattern of employing unfair and deceptive practices with respect to the sale of its products through misrepresentations and omissions concerning the potential health risks thereof.  During the relevant period, NJOY manufactured and sold, among others, NJOY, NPRO, OneJoy and NJOY Kings. These are collectively referenced herein as "NJOY E-Cigarettes."[3]

10.    Beginning in 2007, and continuing during the Class Period, Defendant has engaged in a consistent and pervasive marketing campaign that promotes its core marketing message that NJOY E-Cigarettes are known to be safer than traditional tobacco cigarettes or generally safe.  For example, one of NJOY's marketing taglines has been that its NJOY E-Cigarettes provide "everything you like about smoking without the things you don't," and variations of that statement, which have appeared in numerous print and other advertisements for NJOY E-Cigarettes.  NJOY has also

---

[3] NJOY E-Cigarettes that are rechargeable may be purchased with paraphernalia such as chargers, replacement batteries and cartridges.

used marketing slogans such as that NJOY is the "Resolution Solution;" that "Friends Don't Let Friends Smoke;" and, in the pre-Class Period, that NJOY provides "All the Pleasures of Smoking Without All the Problems."  The core marketing message about the purported safety of NJOY E-Cigarettes that is conveyed by these slogans is deceptive, false and misleading because it is not true that NJOY E-Cigarettes are known to be generally safe or safer than traditional cigarettes, which are known to be dangerous.  Studies have shown that electronic cigarettes, including NJOY E-Cigarettes, also contain disease-causing substances that are dangerous to your health. Studies also show that certain electronic cigarettes, including NJOY E-Cigarettes, require that the user take deeper puffs to produce vapor than the puffs required for a traditional tobacco cigarette, and that this could be harmful to users' health. Furthermore, there is widespread agreement in the scientific community that further research is necessary before the full negative effects of electronic cigarette use on users' health can be known.  Despite Defendant's marketing slogans, Defendant fails to disclose not only what it knew or should have known about the contents of its own products, but that numerous studies have shown that electronic cigarettes, including NJOY E-Cigarettes, contain carcinogens, toxins and other impurities (including some of those also found in tobacco cigarettes) that do carry the risk of and cause disease. Similarly, the packages in which NJOY E-Cigarettes have been sold during the Class Period have omitted both the products' ingredients, and, despite stating other potential dangers of the products regarding nicotine, information about health risks associated with the products.

11.   Defendant has employed numerous methods to convey to consumers throughout the United States, including California and Florida, its deceptive, false and misleading message about its E-Cigarettes, including its packaging, product inserts, print advertisements, television and radio advertisements, as well as its website through which it sells its product directly to the public.  http://www.njoy.com/njoy-

1   kings/njoy-king-3-pack.html (as visited Jan. 7, 2014).  As detailed in ¶¶ 110-116

2   below, Plaintiffs saw and relied on Defendant's false and misleading core marketing

3   message by seeing specific ads and/or packaging, during the Class Period.

4          12.    As a result of Defendant's deceptive, false and misleading claims in its

5   advertising and marketing, consumers – including Plaintiffs and the other members

6   of the proposed Classes – have purchased NJOY E-Cigarettes without being advised

7   that they contain a variety of carcinogens, toxins, impurities, and related potential

8   health hazards as found by various studies discussed in more detail below.  Had

9   Defendant disclosed these material facts, Plaintiffs would not have purchased

10  Defendant's NJOY E-Cigarettes.  Defendant was able to charge more than what its

11  NJOY E-Cigarettes would have been worth had it disclosed the truth about them.

12         13.    Plaintiffs bring this lawsuit against Defendant, on behalf of themselves

13  and the proposed Classes, in order to: (a) halt the dissemination of Defendant's

14  deceptive advertising messages; (b) correct the false and misleading perception

15  Defendant has created in the minds of consumers through its misrepresentations and

16  omissions; and (c) secure redress for consumers who have purchased one or more

17  NJOY E-Cigarettes.  The California Plaintiffs, on behalf of themselves and the

18  proposed California Class, allege violations of the Consumers Legal Remedies Act,

19  California Civil Code §§ 1750, *et seq.* ("CLRA") and the California Business &

20  Professions Code §§ 17200, *et seq.* ("UCL").  The Florida Plaintiff, on behalf of

21  herself and the proposed Florida Class, alleges violations of the Florida Deceptive and

22  Unfair Trade Practices Act, Florida Statute §501.201, *et seq.* ("FDUTPA").

23

24

25

26

27

28

## PARTIES

*Plaintiffs*

14.     Plaintiff Halberstam is an individual who resides in Los Angeles, California and is a citizen of California.

15.     Plaintiff McGovern is an individual who resides in Costa Mesa, California and is a citizen of California.

16.     Plaintiff Thomas is an individual who resides in Jacksonville, Florida and is a citizen of Florida.

17.     During the respective Class Periods, Plaintiffs, while in the states of California and Florida, were exposed to, saw and relied on Defendant's material, deceptive marketing claims and/or packaging, as specified in ¶¶ 110-116 below.  As a result of that misleading marketing and packaging and Defendant's omissions, Plaintiffs believed that NJOY's products did not carry dangers or risks like traditional cigarettes do and are generally safe.  The California Plaintiffs and the Florida Plaintiff, purchased NJOY E-Cigarettes while in their respective states.   Had Defendant disclosed that NJOY E-Cigarettes contain a variety of carcinogens, toxins, impurities, and related potential health hazards which are or should be known to Defendant, and as found by various studies discussed in more detail below, including some also found in tobacco cigarettes, Plaintiffs would not have purchased Defendant's NJOY E-Cigarettes. Thus, as a result of Defendant's material deceptive claims and omissions, Plaintiffs suffered injury in fact and lost money.

18.     Plaintiff Halberstam first purchased NJOY E-Cigarettes in September 2013, at Walgreens located at 8770 W. Pico Blvd., Los Angeles, California, 90035. He purchased NJOY Kings Menthol disposable E-Cigarettes.   He thereafter intermittently purchased additional NJOY Kings.   In total, Plaintiff Halberstam purchased approximately five NJOY E-Cigarettes between September and December 2013, for which he paid the retail market price for each, which he believes was $7.99.

On information and belief, during the Class Period the price was first $7.99, and at times was $8.99, for a single disposable NJOY Kings E-Cigarette.

19.     Plaintiff McGovern purchased NJOY E-Cigarettes in Orange County, California in or around December 2013.  He purchased NJOY King Menthol Gold at the 7-Eleven store on 2244 Fairview Road, Costa Mesa, California; the 7-Eleven store at 2150 Placentia Ave., Costa Mesa, California 92627; and the 7-Eleven store at 9502 Hamilton Ave, Huntington Beach, California 92646.  He thereafter intermittently purchased additional NJOY E-Cigarettes until January 2014.  Plaintiff McGovern paid the retail market price for each NJOY E-Cigarette, which he believes was approximately $7.99. On information and belief, during the Class Period the price was first $7.99, and at times was $8.99, for a single disposable NJOY Kings E-Cigarette.

20.     Plaintiff Thomas first purchased NJOY E-Cigarettes in the summer of 2012, at a Kangaroo Express store located at 3051 Monument Road, Jacksonville, Florida, 32225.  Plaintiff Thomas purchased approximately one NJOY OneJoy for which she paid the retail market price, which she believes was $10.99.  Thereafter, Plaintiff Thomas purchased one additional NJOY OneJoy, also for the retail market price.  On information and belief, the price, at times during the Class Period, was $10.99 for a single OneJoy E-Cigarette.

***Defendant***

21.     Sottera, Inc. is or was a corporation incorporated in the state of Nevada, and had its corporate headquarters at 15211 North Kierland Boulevard, Suite 200, Scottsdale, Arizona 85254.  Upon information and belief, it was the parent of NJOY, Inc., and in July 2012, merged into NJOY, Inc.

22.     NJOY, Inc. is incorporated in Delaware, and has its corporate headquarters at 15211 North Kierland Boulevard, Suite 200, Scottsdale, Arizona 85254.  NJOY also has an address at 5455 N Greenway Hayden # 15,

1    Scottsdale, Arizona 85260.   Upon information and belief, NJOY merged with its

2    parent, Defendant Sottera, in July 2012.

3         23.     Plaintiffs allege, on information and belief, that at all relevant times,

4    Defendant's agents, employees, representatives, executives, directors, partners,

5    and/or subsidiaries were acting within the course and scope of such agency,

6    employment, and representation, on behalf of Defendant.

7                                **FACTUAL ALLEGATIONS**

8    **I.    ELECTRONIC CIGARETTES**

9         24.     This action concerns NJOY E-Cigarettes sold by Defendant, including

10   but not limited to those marketed under the names NJOY, NJOY Kings, OneJoy, and

11   NPRO.

12        25.     An electronic cigarette, or e-cigarette, is a device that simulates tobacco

13   smoking.  E-cigarettes are designed to deliver a smoking-like "hit" of vapor, usually

14   containing nicotine, which is inhaled by the user.  They work through the use of a

15   battery operated heating mechanism, which typically converts a cartridge containing

16   glycerin, propylene glycol, natural and artificial flavors and, in most electronic

17   cigarettes, various proportions of nicotine, into vapor.   When a person inhales

18   ("vapes") from an e-cigarette, this mimics the taking of a "drag" on a traditional

19   tobacco cigarette.  A heating device is activated, the solution is converted into vapor,

20   and the consumer breathes it in.  Some electronic cigarettes, including electronic

21   cigarettes manufactured by Defendant, are designed to look like tobacco cigarettes.

22   The cylinder containing the components is the size and shape of a traditional cigarette;

23   it is encased in a material resembling white paper printed to look like a traditional

24   cigarette wrapper, and glows red at the tip when the user inhales.

25

26

27

28

26.     According to a recent report by the Centers for Disease Control and Prevention ("CDC"), as of that 2013, more than 36% of smokers in the United States had tried electronic cigarettes, and 8.5% of all adults had tried them.[4]

27.     According to a subsequent study by the CDC, nearly 1.8 million middle and high school students tried e-cigarettes in 2011 and 2012, including approximately 160,000 students who had never used conventional cigarettes.[5]  The study also found that the number of U.S. middle and high school student e-smokers doubled between 2011 and 2012.[6]

28.     According to analysts, sales of e-cigarettes in America in 2012 were between $300 million and $500 million.[7]  This was approximately double what they were in the preceding year,[8] and sales more than doubled to $1.5 billion in 2013.[9]

29.      During the Class Period, Defendant stated on its website that it makes "America's #1 E-Cigarette," and claimed, "Over 3 Million Sold." [10]  As of the end of

---

[4]     Centers for Disease Control and Prevention, *Key Findings: Trends in Awareness and Use of Electronic Cigarettes among U.S. Adults, 2010-2013*, http://www.cdc.gov/tobacco/basic_information/e-cigarettes/adult-trends/index.htm (last visited Nov. 6, 2014).

[5]     Morbidity and Mortality Weekly Report, Centers for Disease Control and Prevention, *Notes from the Field: Electronic Cigarette Use Among Middle and High School Students — United States, 2011–2012* (Sept. 6, 2013), http://www.cdc.gov/mmwr/preview/mmwrhtml/mm6235a6.htm (last visited Jan. 7, 2014).

[6]     *Id.*

[7]     *See E-cigarettes: Vape 'Em if You Got 'Em*, The Economist, Mar. 23, 2013.

[8]     *Id.*

[9]     Horizon Investments, *E-Cigarettes: Proposed Regulations Could Prove To Be A Game Changer*, Seeking Alpha, May 25, 2014.

[10]     *Id.*

December 2012, according to its Chief Executive Officer ("CEO"), Craig Weiss, NJOY controlled about 40 percent of the U.S. electronic cigarette market.[11]

30.     NJOY E-Cigarettes sell for a range of prices.  According to a press release by Defendant dated December 6, 2012, announcing the nationwide availability of NJOY Kings, the product was introduced with a retail price of $7.99.  Subsequent to the filing of this action on January 17, 2014, individual NJOY Kings were being sold on NJOY's website for $8.99.  As of the filing of this Third Amended Complaint, individual NJOY Kings are no longer offered on NJOY's website, though packs of five and more are, and individual Kings and/or other NJOY E-Cigarettes can also be purchased at stores including various stores in California and Florida, such as Walgreens in Los Angeles, California, 7-Eleven in Costa Mesa, California, 7-Eleven in Huntington Beach, California, and Kangaroo Express in Jacksonville, Florida.  On its website, during the Class Period, Defendant offered additional NJOY products at various rates including a pack of two disposable OneJoy E-Cigarettes for $21.99.  NJOY's website presently offers a five pack of disposable NJOY Kings for $29.95 and a twenty pack of disposable NJOY Kings for $104.99.  During the Class Period, replacement cartridges for rechargeable NJOYs were also offered on NJOY's website, with a pack of five cartridge refills being sold for $21.99.  As of the filing of this Complaint, NJOY's website offers a "Recharge Economy Kit" for $24.99, and a "Recharge Standard Kit" for $64.99.  During the Class Period, NJOYs have been available not only online and in the above referenced stores, but other large retail establishments, consumer warehouse clubs and local convenience stores, nationwide.

31.     NJOY's products are more expensive than those of certain of its competitors.  For example, White Cloud, a competitor, offers individual disposables

---

[11]     Burritt, Chris, *E-Cigarette Maker NJOY Seen as Takeover Target Amid Innovation*, Bloomberg, Dec. 5, 2012, http://www.bloomberg.com/news/2012-12-05/e-cigarette-maker-njoy-seen-as-takeover-target-amid-innovation.html (last visited Jan. 7, 2014).

for $5.95, and a five pack of rechargeables for $9.95.  Another competitor, Metro Kings E-Cigs, offers individual disposables for $5.99.  Yet another competitor, Mistic, sells one disposable electronic cigarette for $5.99, and cartridge refills for five packs for $39.99 and 12 five packs for $129.99; and a five pack of cartridges for its rechargeable e-cigarettes for $14.99.  Krave offers individual disposable Krave King e-cigarettes for $6.95 and a five pack of cartridges for its rechargeable e-cigarettes for $10.95.  Bull Smoke offers individual disposable "Buckshot" e-cigarettes for $5.00 each, and a five pack of cartridges for its rechargeable e-cigarettes for $12.95.

## II.   PUBLISHED STUDIES DEMONSTRATE THE DANGERS AND EXPOSURE TO HEALTH RISKS OF E-CIGARETTES

32.   Because of the rapid growth in the use of electronic cigarettes by consumers in recent years, an increasing number of government agencies and research facilities have begun to conduct studies concerning the potential health impact and risks of these devices.  These studies have found, *inter alia*, including with respect to NJOY E-Cigarettes: (a) measurable amounts of carcinogens, toxins and other contaminants in e-cigarettes that are, or potentially are, disease-causing, (b) harmful potential side effects of e-cigarettes, and (c) that more study is needed to determine the full range of health dangers of e-cigarettes.

33.   In 2009, the United States Food and Drug Administration ("FDA") conducted a study of two brands of cigarettes, one of which was NJOY.[12]  The FDA tested a number of NJOY products, including menthol and regular samples at a variety of nicotine strengths.

---

[12]   *See* FDA Evaluation of E-cigarettes, DPATR-FY-09-23, available at http://www.fda.gov/downloads/drugs/scienceresearch/ucm173250.pdf (last visited Jan. 13, 2014).

34.   The FDA issued a summary of the results of that study,[13] making, *inter alia*, the statements in the following block quotes (language in brackets added):

- [the] FDA's Center for Drug Evaluation, Office of Compliance purchased two samples of electronic cigarettes and components from two leading brands.  [These were: NJOY E-Cigarettes with various cartridges and Smoking Everywhere Electronic Cigarettes with various cartridges.[14]]   These samples included 18 of the various flavored, nicotine, and no-nicotine cartridges offered for use with these products. These cartridges were obtained in order to test some of the ingredients contained in them and inhaled by users of electronic cigarettes.

- FDA's Center for Drug Evaluation, Division of Pharmaceutical Analysis (DPA) analyzed the cartridges [including NJOY cartridges] from these electronic cigarettes for nicotine content and for the presence of other tobacco constituents, some of which are known to be harmful to humans, including those that are potentially carcinogenic or mutagenic.

- DPA's analysis of the electronic cigarette samples [including those from NJOY] ***showed that the product contained detectable levels of known carcinogens and toxic chemicals to which users could potentially be exposed***.  [Emphasis added.]

---

[13]     http://www.fda.gov/NewsEvents/PublicHealthFocus/ucm173146 (last visited Jan. 7, 2014).

[14]     For the applicability to NJOY of this and each of the below bullet points quoted regarding the FDA study, *see* FDA Evaluation of E-cigarettes, DPATR-FY-09-23, available at http://www.fda.gov/downloads/drugs/scienceresearch/ucm 173250.pdf (last visited Jan. 13, 2014).

- DPA's testing also suggested that **quality control processes used to manufacture these products are inconsistent or non-existent**. [Emphasis added.]

- Specifically, DPA's analysis of the electronic cigarette cartridges from the two leading brands revealed the following:

  - **Certain tobacco-specific nitrosamines which are human carcinogens were detected in half of the samples tested [including NJOY samples].**

  - **Tobacco-specific impurities suspected of being harmful to humans—anabasine, myosmine, and β-nicotyrine—were detected in a majority of the samples tested [including NJOY samples].**

  - Three different [NJOY] electronic cigarette cartridges with the same label ["Menthol high"] were tested and each cartridge emitted a markedly different amount of nicotine with each puff.  The nicotine levels per puff ranged from 26.8 to 43.2 mcg nicotine/100 mL puff.

*Id.*  (Emphasis added.)

35.    The FDA issued a contemporaneous consumer health brochure titled, "FDA Warns of Health Risks Posed by E-Cigarettes,"[15] in which Margaret A. Hamburg, M.D., commissioner of food and drugs, stated, "The FDA is concerned about the safety of these products and how they are marketed to the public."  The FDA also issued a safety alert[16] repeating the risks and noting that "[t]hese products

[15]    Retrievable at http://www.fda.gov/ForConsumers/ConsumerUpdates/ucm173401.htm (last visited Jan. 7, 2014).

[16]    Retrievable at http://www.fda.gov/%20NewsEvents/Newsroom/PressAnnouncements/ucm173222.htm (last visited Jan. 7, 2014).

- 13 -

do not contain any health warnings comparable to FDA-approved nicotine replacement products or conventional cigarettes."

36.     Indeed, in the FDA's 2009 study, all four of the major tobacco-specific nitrosamines, N-nitrosonicotine (NNN), N-nitrosoanabasine (NAB), N-nitrosoanatabine (NAT) and 4-(methylnitrosamino)-1-(3-pyridyl)-1-butanone (NNK), were found in NJOY cartridges.

37.     The health risks and unknowns concerning electronic cigarettes are compounded by the reality that e-cigarette users smoke differently than traditional smokers.  For example, a study of eight traditional and four electronic cigarettes including certain NJOY products found, *inter alia*, that, for the NJOYs, they "***required a stronger vacuum [inhalation strength] to smoke than conventional [tobacco] brands***."  Trtchounian, A., *Conventional and Electronic cigarettes (e-cigarettes) have different smoking characteristics*, Nic. & Tob. Res., Vol. 12, No. 9 (Sept. 2010), at 911.[17]  (Emphasis added.)  The study states, "the effects of this on human health could be adverse."  *Id.* at 905.  According to researchers, as a general matter, stronger puffing has the potential for "leading to cancer in the deeper lung regions."  *Lung Deposition Analyses of Inhaled Toxic Aerosols in Conventional and Less Harmful Cigarette Smoke: A Review*, International Journal of Environmental Research and Public Health, September 23, 2013.[18]

38.     Since the FDA released the results of its 2009 study of NJOY and Smoking Everywhere Electronic Cigarettes and its concomitant warning concerning e-cigarettes generally, new studies have been emerging discussing the risks and dangers of e-cigarettes.   These studies have concerned a variety of brands and

---

[17]     Retrievable at http://edge.rit.edu/content/P12056/public/e%20cig%20vs%20conventional%20cig.pdf (last visited Jan. 14, 2014).

[18]     Retrievable at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3799535/ (last visited Jan. 14, 2014).

1   products, but, because e-cigarettes generally operate in a similar manner, and contain
2   similar primary ingredients, even those studies which are not identified below as
3   directly having reviewed NJOY products are relevant hereto.

4       39.    E-cigarettes are a subject of concern to major international entities.
5   According to a presentation given by the World Health Organization ("WHO") to the
6   European Parliament at a Workshop on Electronic Cigarettes on May 7, 2013,
7   "electronic cigarettes are a controversial issue for which additional studies and
8   evidence are needed."  That presentation referenced recent findings from Turkey that:

9       ***indicate that propylene glycol and tobacco specific N-nitrosamines, a***
10      ***powerful carcinogen, were found in the majority of samples***.  Toxins from
11      the e-cigarette averaged around 20% of those of a regular cigarette.  It was
12      also found that similarly labeled ENDS [Electronic Nicotine Delivery
13      Systems] cartridges emit different amounts of nicotine, and a nicotine
14      overdose may occur which can have serious side effects.  ***There are***
15      ***currently no studies available on safety and efficacy of long-term e-***
16      ***cigarettes use***. (Emphasis added.)

17      40.    As recently as July 2013, the WHO stated that "[m]ost ENDS [Electronic
18  Nicotine Delivery Systems] contain large concentrations of propylene glycol, which
19  is a known irritant when inhaled," that "[t]he testing of some of these products also
20  suggests the presence of other toxic chemicals, aside from nicotine," and that the
21  safety of these devices "has not been scientifically demonstrated."[19]

22      41.    Numerous other studies have been performed by universities and other
23  research centers, and have reported similar concerns about the potential for health
24  risks associated with electronic cigarettes.

25

26  [19]    Retrievable at http://www.who.int/tobacco/communications/statements/
27  electronic_cigarettes/en/ (last visited Jan. 7, 2014).

28

42.    For example, a 2013 report titled *Electronic Cigarettes – an Overview*, by the German Cancer Research Center,[20] which was based on a comprehensive review of literature in the field, found in summary as to "Product characteristics" (the following bullet pointed paragraphs are block quoted text)**:**

- E-cigarettes cannot be rated as safe at the present time.
- Consumers do not have reliable information on product quality.
- Electronic cigarettes have various technical flaws (leaking cartridges, accidental intake of nicotine when replacing cartridges, possibility of unintended overdose.)
- Some manufacturers provide insufficient and partly wrong information about their liquids.

As to "Health Effects," the summary stated (the following bullet pointed paragraphs are block quoted text):

- The liquids contain ingredients that on short-term use irritate air-ways and may lead to allergic reactions and which may be harmful to health when inhaled repeatedly over a prolonged period of time.
- The aerosol of some liquids contains harmful substances (formaldehyde, acetaldehyde, acrolein, diethylene glycol, nickel, chromium, lead).
- The functionality of electronic cigarettes can vary considerably (aerosol production, nicotine delivery into aerosols).
- Adverse health effects for third parties exposed cannot be excluded because the use of electronic cigarettes leads to emission of fine and ultrafine inhalable liquid particles, nicotine and cancer-causing substances into indoor air.

---

[20]    Published in Red Series, Tobacco Prevention and Tobacco Control, Vol. 19: Electronic Cigarettes – An Overview (Heidelberg 2013), available at http:www.dkfz.de/en/presse/download/RS-Vol. 19-E-Cigarettes-EN/pdf.

1    *Id.* at viii.

2        43.    Among the more specific risks identified in the studies reviewed in that

3    report by the German Cancer Research Center are that, *inter alia* (the following bullet

4    pointed paragraphs are block quoted text, the language in brackets has been added,

5    and all internal citations are omitted):

6    • Electronic cigarettes do not extinguish naturally after about ten puffs

7        like conventional cigarettes, but can be used for hundreds of puffs

8        without a break.  When using them as intended, consumers may

9        therefore get a dangerous amount of nicotine by taking too many

10        puffs, which may even result in serious symptoms of nicotine

11        poisoning.  *Id.* at 4-5.

12    • Not even nicotine-free liquids are necessarily harmless.  Their main

13        ingredients (propylene glycol [which is an ingredient in NJOY],

14        glycerine [another ingredient in NJOY], flavours) have been

15        approved for use in food, but this does not necessarily mean that they

16        are also safe when they are repeatedly inhaled over a prolonged

17        period of time – as they are when used in electronic cigarettes.  There

18        are currently no studies available on the effects of long-term use of e-

19        cigarettes. *Id.* at 7.

20    • To date, only [a] few studies have been conducted on potential health

21        risks associated with inhaling propylene glycol [an ingredient in

22        NJOY] – as one does when using electronic cigarettes as intended.

23        According to these studies, inhaling propylene glycol may affect

24        airways.  Short-term exposure to propylene glycol in indoor air (309

25        mg/m3 for one minute) already causes irritations in the eyes, throat

26        and airways.  Long-term exposure to propylene glycol in indoor air

27        may raise children's risk of developing asthma.  People who have

28

frequently been exposed to theatrical fogs containing propylene glycol are more likely to suffer from respiratory, throat and nose irritations than do unexposed people.  We may therefore assume that the use of e-cigarettes, which involves inhaling propylene glycol vapours several times daily, may cause respiratory irritations.  This applies, in particular, to individuals with impaired airways and to smokers who switch to e-cigarettes or use them additionally, because smokers usually already have impaired airways.  *Id.*

- Glycerine [an ingredient in NJOY] is considered generally safe for oral intake and is used in food production as a humectant and as a solution carrier in flavours.  However, this does not necessarily mean that it is also safe for inhalation – as in e-cigarettes if used as intended.  These concerns are not unfounded.  The specialist journal Chest reports about a case study of a patient with lipoid pneumonia caused by glycerine-based oils from the aerosol of electronic cigarettes.  The link appears to be clear, since symptoms disappeared when the patient stopped using electronic cigarettes.  *Id.* at 7-8.

- Individual liquids [including NJOY, per the FDA study noted above and cited in the instant article] were found to contain small amounts of nitrosamines.   In addition, formaldehyde, acetaldehyde and acrolein were measured in the aerosol of various e-cigarettes, although considerably less than in cigarette smoke.  Formaldehyde and acrolein were only found in glycerine-containing liquids [NJOY contains glycerine]; they probably form upon heating of glycerine.  Acrolein is absorbed by the user: A decomposition product of acrolein was detected in the urine of e-cigarettes users, although considerably less than after smoking conventional cigarettes.   In

addition, nickel and chromium were detected in the aerosol, with higher levels of nickel measured than it is known to be present in cigarette smoke. The aforementioned substances have been classified by the German Research Foundation (Deutsche Forschungsge-meinschaft, DFG) and the International Agency for Research on Cancer (IARC) as carcinogenic. Since there is no safe threshold value for these substances, it cannot be excluded that using electronic cigarettes increases cancer risk, even though these substances may be present in very small amounts. *Id.*

- Data on the impact of e-cigarette use on pulmonary function are not conclusive. A study involving 30 participants reports adverse effects on pulmonary function after using an electronic cigarette for five minutes; however, the long-term pulmonary effects of e-cigarette use are unknown at the present time. *Id.*

- There are currently no studies available on the effects of long-term use of e-cigarettes. *Id.* at 7.

44. Certain of the many studies considered in the above-referenced Red Series review are among those discussed in more detail in the individual study references below. One such study was *Short-term Pulmonary Effects of Using an Electronic Cigarette*, published in June 2012 in Chest, the journal of the American College of Chest Physicians. That study expressly found both that electronic cigarettes had adverse health effects and the need for further research:

> **E-cigarettes assessed in the context of this study were found to have immediate adverse physiologic effects after short-term use that are similar to some of the effects seen with tobacco smoking**; however, the long-term health effects of e-cigarette use are unknown but potentially adverse and worthy of further investigation. (Emphasis added.)

45.     A French article published in the consumer publication *60 millions de consommatuers* on August 26, 2013, reported that e-cigarettes are potentially carcinogenic.  It based its findings upon testing 10 different models of e-cigarettes.[21] It found "carcinogenic molecules in a significant amount" in the vapour produced in the products.  It further determined that "[i]n three cases out of 10, for products with or without nicotine, the content of formaldehyde was as much as the levels found in some conventional cigarettes."   It found acrolein, a toxic molecule emitted in quantities "that exceeded the amount found in the smoke of some cigarettes." "Potentially toxic" trace metals were also discovered in some of the models.

46.     A study by scientists at the University of California Riverside, published on March 20, 2013 in the journal PLoS One, found that:

> one [unidentified] brand of e-cigarettes generates aerosols containing
> micron particles comprised of tin, silver, iron, nickel, aluminum and
> silicate, as well as nanoparticles containing tin, chromium and nickel,
> which are elements that cause respiratory distress and disease.  Those
> metals come from the wires inside the cartridge, while silicate particles
> may originate from the fiber glass [*sic*] wicks.

Williams, M., *et al.*, *Metal and Silicate Particles Including Nanoparticles Are Present in Electronic Cigarette Cartomizer Fluid and Aerosol,* PLoS ONE 8(3): e57987 (2013).

47.  Also, according to that study by the University of California at Riverside:

> A total of 22 elements were identified in EC [electronic cigarette]
> aerosol, and three of these elements (lead, nickel, and chromium) appear
> on the FDA's ''harmful and potentially harmful chemicals'' list.  Lead

---

[21]     Quotes in this paragraph are derived from B. McPartland, "Report: e-cigarettes are 'potentially carcinogenic'" an article published in *The Local*, a source for "France's News in English," on August 26, 2013, describing this study.

and chromium concentrations in EC aerosols were within the range of conventional cigarettes, while nickel was about 2–100 times higher in concentration in EC aerosol than in Marlboro brand cigarettes (Table 1). Adverse health effects in the respiratory and nervous systems can be produced by many of the elements in Table 1, and many of the respiratory and ocular symptoms caused by these elements have been reported by EC users in the Health and Safety Forum on the Electronic Cigarette Forum website (http://www.e-cigarette-forum.com/forum/health-safety-e-smoking/). Although [a table reflecting this research] was constructed to emphasize the effects of the elements found in aerosol on the respiratory system, other systems, such as the cardiovascular and reproductive systems, can be affected by most of the elements in EC aerosol. ***EC consumers should be aware of the metal and silicate particles in EC aerosol and the potential health risks associated with their inhalation***.

*Id.* at 5 (emphasis added).

48. A study published on September 23, 2013 in the International Journal of Environmental Research and Public Health titled, *Lung Deposition Analyses of Inhaled Toxic Aerosols in Conventional and Less Harmful Cigarette Smoke: A Review*, found that there were potential risks associated with e-cigarettes that were not a factor in traditional cigarettes, including "compensatory smoking (*i.e.*, stronger puffing) leading to cancer in the deeper lung regions," and that "[u]nknown reactions between some components in newly designed filters (or other new additives) may lead to the production of carcinogens or other toxicants."

49. Most NJOY E-Cigarettes contain nicotine. On December 15, 2013, the American Society for Cell Biology issued a press release concerning the findings of researchers at Brown University, who determined that, "Nicotine, the major addictive

- 21 -

substance in cigarette smoke, contributes to smokers' higher risk of developing atherosclerosis, the primary cause of heart attacks," and that, as such, e-cigarettes, which contain nicotine, as most NJOY E-Cigarettes do, "may not significantly reduce risk for heart disease."[22]

**III.    NJOY'S PRE-CLASS PERIOD MARKETING CONVEYED SIMILAR MESSAGES AS ITS DECEPTIVE AND FALSE CORE MARKETING MESSAGES DURING THE CLASS PERIOD**

50.    Prior to the Class Period, beginning in 2007, as shown below, NJOY packaging bore the slogan "ALL THE PLEASURES OF SMOKING WITHOUT ALL THE PROBLEMS"[23]:

---

[22]    American Society for Cell Biology, "Nicotine drives cell invasion that contributes to plaque formation in coronary arteries, Research indicates e-cigarettes may not significantly reduce risk for heart disease," Dec. 15, 2013, available at http://www.eurekalert.org/pub_releases/2013-12/asfc-ndc112613.php (last accessed Jan. 7, 2014).

[23] http://tobaccoproducts.org/index.php/NJoy_Electronic_Cigarette (last visited Dec. 14, 2013) (showing picture of packaging with tagline, dated 2007, and stating that each product was introduced in 2007).



51.    While packages like the above example appeared only before the Class Period, NJOY continued during the Class Period to market its E-Cigarettes using that core marketing message that NJOY E-Cigarettes are known to be safe or safer than traditional cigarettes.

52.    In NJOY's early years, the "All the Pleasures of Smoking Without All the Problems" slogan appeared on a variety of NJOY packages and more than one product line.  The package below, for example, is for NJOY's NPRO line, and the slogan reads:  "All the pleasures of smoking without all the problems."[24]

---

[24]http://www.electroniccigarettereview.com/images/njoy_review_npro_starter_kit.jpg (last visited Nov. 4, 2014).

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15    53.    NJOY also used the message to market its E-Cigarettes at the point of

16  sale.  For example, as seen in the below example from approximately 2007, rack

17  posters in stores included the slogan, "All the Pleasures of Smoking Without All the

18  Problems," and the representation that the products had "No Carcinogens, No Tar."[25]

19
20
21
22
23
24
25
26

27  [25]http://www.countertobacco.org/sites/default/files/NJOY2007.jpg (last visited Nov.
4, 2014).
28

1
2
3
4
5
6
7
8
9
10
11



12   54.   The message, as indicated above, was not only on NJOY's packaging

13   and point of sale marketing, but was conveyed through a broad range of marketing

14   materials.

15   55.   On January 30, 2009, for example, Defendant issued a press release

16   stating that, "a smoking alternative that gives smokers all the pleasures they seek,

17   without all the health, social and financial problems – is now available in retail outlets

18   across the United States."  NJOY further stated in this press release that NJOY was a

19   preferable alternative to smoking because it, "contains none of the tar, additives or

20   carcinogens found in tobacco-based products."  It quoted the president of NJOY's

21   distributor as saying, "If you can imagine a product that looks, feels and tastes like a

22   cigarette or cigar, and gives smokers all the enjoyment of traditional smoking …

23   without all of the health, social and economic problems, then you can imagine

24   NJOY."

25   56.   NJOY sent this press release to a wide variety of publications, including

26   the Wall Street Journal, Forbes.com, Market Watch, the Daily Herald, and

27   About.com, all of which have large readerships.

28

57.     Another NJOY press release, issued on March 13, 2009, and disseminated, at least, over MarketWire on that date, stated, "[t]he NPRO from NJOY is a revolutionary new smoking alternative product that … gives smokers all the pleasure and satisfaction of tobacco smoking without all the health, social … and … without the growing economic concerns."  NJOY further stated, "NPRO contains no tobacco, and none of the tar, additives, chemicals or carcinogens found in tobacco cigarettes," and "NJOY … offers … all the pleasures and satisfaction of traditional smoking, without all the issues traditionally associated with tobacco cigarettes."

58.     NJOY also created, or caused to be created, a user guide,[26] the front cover of which read "ALL THE PLEASURES OF SMOKING WITHOUT ALL THE PROBLEMS." The guide listed, among the benefits of NJOY, that it purportedly contains "[n]o carcinogens, no tar," and "[n]o first or second hand smoke."   It described nicotine in the following manner:

> Nicotine is an alkaloid found in certain plants, predominantly tobacco, and in lower quantities, tomato, potato, eggplant, and green pepper. When it is absorbed in small amounts, whether from tobacco cigarettes, cigars, or NJOY, it can cause stimulation, a feeling of relaxation, calmness and alertness … Nicotine, while dependence-forming, is not a known cause of cancer.

This guide further stated that "[t]he number of ingredients in Njoy and the outcome of those ingredients when used are vastly different and better than those found in traditional tobacco cigarettes and cigars," and added that "[t]he Food and Drug Administration deems propylene glycol safe."

---

[26] http://hinareed.com/images/NJOY-2380_Small_Brochure_v2.pdf (last visited Nov. 4, 2014).

59.     In short, Defendant's pre-Class Period advertisements and marketing materials were permeated with health implications that Defendant continued to utilize during the Class Period, as described more fully below.

## IV.   DEFENDANT'S UNIFORM AND PERVASIVE ADVERTISING CAMPAIGN DURING THE CLASS PERIOD WAS MATERIALLY DECEPTIVE, FALSE AND MISLEADING

60.     During the Class Period, Defendant has carried out a consistent and widespread campaign of deceptively promoting its NJOY E-Cigarettes.  It has done this through numerous slogans with health implications, including: that NJOY E-Cigarettes provide "everything you like about smoking without the things you don't," and variations of that statement; that NJOY is the "Resolution Solution;" that "Friends Don't Let Friends Smoke" (but they do encourage them to use NJOY); and that, "Cigarettes, You've Met Your Match;" and through omissions and misleading partial disclosures on its packaging.  The core marketing message that Defendant has used and a reasonable consumer would understand, that NJOY E-Cigarettes are known to be safe or safer than smoking traditional cigarettes, is false and misleading given the studies discussed in ¶¶ 32-49 above, that have found carcinogens, toxins, and other potentially harmful impurities, including certain of those found in traditional tobacco cigarettes, in electronic cigarettes, including NJOY E-Cigarettes.  It is also false and misleading given the content of the NJOY products because, as stated in the studies cited above in Section II, there is still insufficient research for NJOY to assert or convey that NJOY products do not pose health dangers, including long term health dangers, as smoking traditional cigarettes does.  Defendant's statements and omissions have occurred in at least seven forms, all of which constitute "advertising." These include: its packaging; inserts to its packaging and shipping materials; its press releases; its print advertisements; its television ads; its radio ads; and its website

through which it directly sells its NJOY E-Cigarettes and related products to the public.

### A.    Materially Misleading Omissions on NJOY Packages

61.    The packaging for NJOY products, through warnings that are fraught with material omissions, conveys the impression that the product contains no meaningful health risks other than possibly those that are a direct result of nicotine.  For example, the during the Class Period, the packaging on NJOY Kings has warned:

> WARNING: NJOY products are not smoking cessation products and have not been tested as such.  The U.S. FDA has not approved NJOY products for any use and they are not intended to diagnose, cure, mitigate, treat, or prevent any disorder, disease, or physical or mental condition.  NJOY products contain nicotine, a chemical known to the State of California to cause birth defects or other reproductive harm.  Nicotine is addictive and habit forming, and it is very toxic by inhalation, in contact with the skin, or if swallowed.  Ingestion of the non-vaporized concentrated ingredients in the cartridges can be poisonous.  Physical effects of nicotine may include accelerated heart rate and increased blood pressure.   If the cartridge is swallowed, seek medical assistance immediately.  NJOY products are intended for use by adults of legal smoking age (18 or older in California), and not by children, women who are pregnant or breastfeeding, or persons with or at risk of heart disease, high blood pressure, diabetes, or taking medicine for depression or asthma.  NJOY products may not be sold to minors.  Identification of all persons under 26 will be required before purchase.  Keep out of reach of children.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

62.    During the Class Period, Defendant used the following packaging for NJOY Kings, which included the language stated above at ¶ 61:[27]




63.    During the Class Period, packages for OneJoys, contained the same or substantively similar warnings.

64.    Defendant utilized very small print on the back of the packaging which made it difficult for many people to read.  Moreover, during the Class Period, Defendant failed to list the ingredients of the product on the package.   While Defendant did describe what it claims are its ingredients on its website during the Class Period (which description is itself false and misleading as described below, at ¶¶ 91-96), by omitting the ingredients from the labels, Defendant denied consumers

---

[27]    Photographs taken November 21, 2013 of product purchased on that date.

at the point of sale the opportunity to decide for themselves whether the chemicals used are substances they are willing to risk inhaling.  For example, by omitting the ingredients, Defendant hid the fact that NJOY E-Cigarettes contain propylene glycol, a product found to cause throat irritation and induce coughing,[28] and thus no longer used by certain of NJOY's competitors in their e-cigarettes.  Moreover, as discussed below, omitting the ingredients on the package conceals the dangers associated with the chemicals in its NJOY E-Cigarettes, which are described in the studies referenced above.

65.   By warning of certain risks relating to nicotine, and the risks that may arise if the concentrated contents of the cartridge are swallowed without being vaporized, this packaging implied that those are the only significant health-related risks related to NJOY E-Cigarettes.  This is deceptive and misleading, as the package omitted reference to the other carcinogens, toxins and impurities, including carcinogenic tobacco-specific nitrosamines found in NJOY E-Cigarettes, and the potentially harmful effects of propylene glycol, as discussed above in Section II.  It also did not reference the difference in inhalation behavior between vaping and traditional smoking (described herein) that may cause additional problems for persons who use e-cigarettes, including NJOY E-Cigarettes.

---

[28]   *Electronic Cigarettes – An Overview*, published in the Red Series Tobacco Prevention and Tobacco Control, Vol. 19 (Heidelberg 2013), referenced in ¶¶ 42-43 above, citing Wieslander G., *Experimental exposure to propylene glycol mist in aviation emergency training: acute ocular and respiratory effects*, Occup Environ Med 58: 649-655, Choi H, (2010), *Common household chemicals and the allergy risks in pre-school age children,* PLoS One 5: e13423, and Moline JM, *Health effects evaluation of theatrical smoke, haze and pyrotechnics* (2000).  *See also* New Hampshire Department of Environmental Services, *Ethylene Glycol and Propylene Glycol: Health Information Summary*, Environmental Fact Sheet, http://des.nh.gov/organization/commissioner/pip/factsheets/ard/documents/ard-ehp-12.pdf (last visited Jan. 7, 2014) (stating  that "Human volunteers exposed to high levels of propylene glycol mist for a short time had increased levels of eye and throat irritation, and cough.").

**B.      Defendant's Other Advertising Was Similarly Materially False and Misleading**

66.   As demonstrated below, Defendant's pervasive advertisements representing that NJOY E-Cigarettes offer all of the positive aspects of smoking cigarettes without the negative ones, and otherwise implying that NJOY E-Cigarettes are without various health risks, including those present in traditional tobacco cigarettes, are materially deceptive, false and misleading given the studies discussed above in Section II, and fail to disclose that such research and studies have raised significant concerns about the health risks of NJOY E-Cigarettes, including but not limited to:

- the presence of nitrosamines, which are powerful carcinogens, toxins, and other impurities, including certain of those found in tobacco cigarettes, that are dangerous to the user's health and cause disease;

- the harmful impact to lung capacity as a result of the chemicals, including propylene glycol and glycerine, contained therein that are present in NJOY E-Cigarettes;

- that NJOY E-Cigarettes require that the user take significantly stronger puffs than the puffs required for a traditional tobacco cigarette, and that this could be harmful to health;

- and other potentially dangerous but unknown health effects caused by the long term use of e-cigarettes, including NJOY E-Cigarettes.

67.   In December 2012, NJOY introduced what would become its new main product, the NJOY Kings.  NJOY Kings are sold in regular tobacco and menthol flavors. The packages for NJOY Kings were designed to look like they contain traditional cigarettes, and the NJOY Kings smoking devices mirror traditional cigarettes and, as such, are intended to capitalize on consumers' desire to smoke but

1   yet avoid the health dangers of traditional tobacco cigarettes.  For example, as

2   described more fully below, one of NJOY's commonly used slogans includes the

3   statements: "Finally, smokers have a real alternative," and "Cigarettes, you've met

4   your match."

5       68.    Defendant launched this product with a widespread marketing campaign

6   that included television, radio, print, and internet advertisements.

7       69.    Defendant's print ads spread its core marketing message.  For example,

8   as shown in the picture below, in one ad for NJOY Kings, published in at least USA

9   Today in December 2012 and March 2013, and the February 2013 edition of Out

10  Magazine, NJOY states, under the lead line, "The most amazing thing about this

11  cigarette?  It isn't one," that with the NJOY King, "You get to keep all the things you

12  like about smoking while losing the things you don't."

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20
21
22
23
24
25
26
27
28

70.     Another ad shown below, published in at least the June 2013 edition of Out Magazine, under the lead line, "Try something new in bed.  Finally smokers have a real alternative," asserts "It's the first electronic cigarette where you get to keep the things you like about smoking, while losing the things you don't.  What's not to love? Cigarettes, you've met your match."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18   71.   There was also a Valentine's Day version of this advertisement, shown
19   below, which read, "This Valentine's Day, smokers have a real alternative," and
20   contained the tagline, "you get to keep the things you like about smoking while losing
21   the things you don't."  This version ran in, at least, New York Magazine in February
22   2013.
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17   72.   Another ad, shown below, published in at least USA Today in April

18   2013, and Out Magazine in May 2013, contains the same tagline "You get to keep the

19   things you like about cigarettes while losing the things you don't," but under the lead

20   line, "Start a new relationship."

21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



73.    The statements in the advertisements in ¶¶ 67-72 above, including that with NJOY E-Cigarettes, "You get to keep all the things you like about smoking while losing the things you don't," are deceptive, false and misleading for the reasons stated in ¶ 66, *supra*.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

74.    Another ad, published in at least two editions of New York Magazine in September 2013, touted that NJOY was "Turning New York into the City that Never Smokes," and stated, "Cigarettes, you've met your match."



75.    This slogan, too, conveyed Defendant's core message concerning the purported known health benefits of using NJOY.  A reasonable consumer could view

1    it as representing that it is good to be in a city that "never smokes," because smoking

2    is unhealthy, and that NJOY is known to be safer than smoking.

3         76.    Related NJOY ads centered on the concept of New Year's resolutions.

4    These, too, conveyed Defendant's core message about the safety and lack of risk of

5    NJOY E-Cigarettes.  Advertisements like the one shown below, published in at least

6    Sports Illustrated magazine in December 2012 and January 2013,  and Rolling Stone

7    magazine in January 2013, give the impression that NJOY E-Cigarettes are a smoking

8    cessation device, and also convey the message that NJOY E-Cigarettes are known to

9    be safe or safer than traditional tobacco cigarettes:



77.   The phrase "Resolution Solution" clearly refers to smokers' New Year's resolutions to quit smoking.   The reason many people make resolutions to quit smoking is that it is unhealthy.   The ad states that NJOY E-Cigarettes are "a real alternative" and thus conveys the impression that they are safer than traditional tobacco cigarettes

78.   Defendant also ran a radio ad at the end of 2012 and/or beginning of 2013 in the same vein, which began, "It's New Year's Resolution time.  Good thing you've got NJOY on your side."

79.   These "Resolution Solution" ads additionally convey the impression that NJOY E-Cigarettes are, in fact, a smoking cessation aid.  Yet, in multiple places, including as referred to in ¶ 61 *supra* (but omitted in this particular advertisement), Defendant states that NJOY E-Cigarettes are not a smoking cessation device.  Thus, this advertisement is deceptive, false and misleading.   This misrepresentation is particularly significant because the reason that NJOY states elsewhere that it is not a smoking cessation device is to avoid regulation under the Food, Drug and Cosmetic Act ("FDCA") which has been found, in a lawsuit to which NJOY was a party, to grant the FDA the power to regulate smoking cessation devices.  *See Smoking Everywhere, Inc. v. United States FDA*, 680 F. Supp. 2d 62 (D.D.C. 2010), *aff'd*, *Sottera, Inc. v. FDA*, 627 F.3d 891 (D.C. Cir. 2010).

80.   NJOY's promotion of its NJOY E-Cigarettes as a "real alternative" for smokers in these ads continues to convey the deceptive, false and misleading impression discussed above that its NJOY E-Cigarettes are "without" the things you don't like about traditional tobacco cigarettes and therefore carry no risk of and do not cause disease as traditional tobacco cigarettes do, which is false in light of the material information discussed in the studies described above in Section II.

81.   The statements in the advertisements in ¶¶ 74-80 above, including the slogan that NJOY is the "Resolution Solution," are deceptive, false and misleading for the reasons stated in ¶ 66, *supra*.

82.   Other printed marketing disseminating the same message in 2013 was included in NJOY packaging.   One package insert for NJOY E-Cigarettes is as follows:



83.   The statements in the insert above, including that "The NJOY King provides everything you like about smoking without the things you don't," are deceptive, false and misleading for the reasons stated in ¶ 66, *supra*.

84.   Another insert found in NJOY's packaging in 2013 instructs readers, "Be sure to tell your friends and family about the positive impact that NJOY products are having on your life," and states that "the NJOY King gives you everything you love about the smoking experience":

85.     For the reasons noted above in ¶ 66, these representations are deceptive, false and misleading.

86.     Each example of NJOY's packaging, inserts and advertising contains an address for NJOY's website, which as described herein, also contains misrepresentations and omissions about NJOY's products.

87.     The product description for NJOY King's below, which states, "It provides everything you like about smoking without the things you don't," was taken from Defendant's website:[29]



---

[29]     NJOY, http://www.njoy.com/njoy-kings/njoy-king-3-pack.html (as visited Jan. 10, 2013).

88.    As described above, the statement, "It provides everything you like about smoking without the things you don't," is deceptive, false and misleading for the reasons stated in ¶ 66, *supra*.

89.    Beginning in approximately late December 2013, Defendant added a new slogan to its marketing (pictured below), that continued to convey its core marketing message concerning the purportedly known safety or comparative safety to traditional tobacco cigarettes of NJOY E-Cigarettes: "Friends Don't Let Friends Smoke."[30]



---

[30]    According to an AdvertisingAge Article published January 2, 2014, this ad "will appear through the winter and spring on cable networks including Discovery, ESPN and Viacom, as well as on the radio, in digital media and in "out-of-home" ads.  http://adage.com/article/media/njoy-e-cig-tv-spot-insists-friends-friends-smoke/290886/ (last visited June 25, 2014).

1    90.   Substantially similar versions of this ad ran on television around New

2    Year's and during the Super Bowl, and could be played on NJOY's website.[31]   Each

3    included voiceovers that said, "For everything friends do for each other, return the

4    favor.  Friends don't let friends smoke.  Give them the only electronic cigarette worth

5    switching to.  The NJOY King.  Cigarettes, you've met your match."  A reasonable

6    consumer viewing these advertisements would believe them to mean that "friends

7    don't let friends smoke" because traditional tobacco cigarettes contain carcinogens

8    and toxins and smoking carries the risk of disease, but that friends should encourage

9    friends to use NJOY because NJOY E-Cigarettes do not contain carcinogens or

10   toxins as tobacco cigarettes do and do not therefore carry the same or similar risk of

11   disease.   According to a January 2, 2014 article published in Advertising Age,

12   "[a]sked whether the ad winks at the audience about health claims, a spokeswoman

13   for NJOY said yes."[32]  This is another deceptive, false and misleading advertisement

14   for the reasons stated in ¶ 66, *supra*.

15   91.   During the Class Period, Defendant's website had a Frequently Asked

16   Questions page.[33]   In one of the sections, Defendant stated that "[t]he primary

17   ingredients [of NJOY E-Cigarettes] are glycerin and propylene glycol, and the

18   secondary ingredients are nicotine and flavors to replicate the taste of traditional

---

[31] The ads that ran around New Year's included the language "This New Year,"
while other versions that ran during the Super Bowl, omitted that phrase.  In
addition, the version that ran on NJOY's website had the text, "This New Year
Return the Favor, Friends Don't Let Friends Smoke," along with a button users
could click to make the video play, visible on the screen, while the television ads
had that language in only voiceover.  Finally, at least some of the ads run during the
Super Bowl replaced the few seconds of the video that show the chipmunk above
with a blurred naked man streaking across the football field.  These minor
differences did not change the impact of the core marketing message.

[32]   *Id.*

[33]   NJOY, http://www.njoy.com/faqs (as visited Jan. 7, 2014).

smoking," and went on to provide deceptive, false and misleading statements about those ingredients.[34]  With respect to propylene glycol and glycerin, Defendant's FAQ page on its website stated:

- Propylene Glycol - The Food and Drug Administration (FDA) has determined propylene glycol to be "***generally recognized as safe***" for use in food, and propylene glycol is used in cosmetics and medicines.  It is used in food coloring and flavoring, as an additive to keep food, medicines and cosmetics moist, and in machines that simulate smoke, although usage in simulating smoking devices is not currently included in the list of uses recognized by the FDA.  In NJOY, propylene glycol functions to provide the vapor mist that looks like smoke and to suspend flavor.

- Glycerin - The FDA has determined glycerin to be "***generally recognized as safe***" for use in food, and glycerin is commonly used in foods, beverages, medical and pharmaceutical applications, such as cough drops, although usage in simulating smoking devices is not currently included in the list of uses recognized by the FDA.

(Emphasis added.)

92.    By stating that the FDA considers these substances "generally recognized as safe" for consumption in food, Defendant created the false and misleading impression that these substances carry are known to be safe as used for inhalation in NJOY E-Cigarettes.  However, as discussed in the studies referenced in Section II, *supra*, the gastrointestinal system processes foreign matter differently than the respiratory system, and ingredients that may be safe when digested may not be safe when inhaled, especially with long term use.  The statement that "usage in simulating smoking devices is not currently included in the list of uses recognized by

---

[34]    *Id.*

the FDA," is itself misleading in the absence of reference to the studies finding that these ingredients may not be safe when inhaled, including, but not limited to, the studies referenced in the review of the literature, *Electronic Cigarettes – An Overview*, published in the Red Series Tobacco Prevention and Tobacco Control, Vol. 19 (Heidelberg 2013), referenced in ¶¶ 42-43 above. For example, that paper stated: "Glycerine is considered generally safe for oral intake and is used in food production as a humectant and as a solution carrier in flavours. However, this does not necessarily mean that it is also safe for inhalation – as in e-cigarettes if used as intended." *Id.* at 7 - 8.

93. As to the other ingredients it described on the FAQ page of the NJOY website, Defendant stated, with respect to nicotine that:

Nicotine - is an alkaloid found in ***certain plants, predominately tobacco, and in lower quantities, tomatoes, potatoes, eggplants, cauliflower, bell-peppers, and some teas***.

94. To draw a parallel between nicotine in e-cigarettes and tomatoes, potatoes, eggplants, cauliflower, bell-peppers and teas is deceptive and misleading, as demonstrated by the studies cited *supra* in Section II.

95. Finally, Defendant listed the other ingredients of NJOY as unspecified "Natural and Artificial flavors," as to which it said:

Natural and Artificial Flavors - ***determined to be safe for use in food products***.

96. This is deceptive and misleading because the website did not disclose what those "flavors" are, nor did it acknowledge that safety for use in food products does not denote safety for use in inhaled products, as described above.

97. An additional deception by NJOY is that it stated on its website during the Class Period:

> Regulatory Compliance: NJOY is the only e-cigarette company to
> have had its marketing practices reviewed by Federal District and

Appellate Courts and found to have not made or implied health claims.  The FDA is prohibited from restricting NJOY product imports as a drug or drug delivery device.  Other electronic cigarettes may continue to have importation risks.

98.   This was a misstatement of the District's and Appellate Courts' rulings in the cases at issue.  The only Federal District and Appellate Court decisions concerning NJOY's marketing do not hold that NJOY's marketing practices do not make or imply health claims.  Rather, these cases hold that NJOY has not marketed its products as "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals" or "articles … intended to affect the structure or any function of the body of man or other animals," such that NJOY would be subject to the "drug/device" provisions of the Food, Drug, and Cosmetic Act ("FDCA").  *See Smoking Everywhere, Inc. v. United States FDA*, 680 F. Supp. 2d 62 (D.D.C. 2010), *aff'd*, 627 F.3d 891 (D.C. Cir. 2010).  Notably, these rulings were issued before NJOY began to market its NJOY E-Cigarettes as the "Resolution Solution," an obvious reference to tobacco smokers' resolutions to quit smoking in the new year.  To the extent that the statement implies that the FDA or courts have approved NJOY's past advertising or changes to its advertising after the opinions, it is further misleading.

99.   NJOY also had still other ways of disseminating its false and misleading core marketing message.  For example, on March 25, 2013, it issued a press release announcing that Dr. Richard Carmona, the former U.S. Surgeon General, had joined NJOY's board of directors.  NJOY quotes Dr. Carmona as stating, "The current data indicate that electronic cigarettes may have a very meaningful harm reduction potential, and NJOY is committed to the further development of science in this area." This conveyed to a reasonable consumer that NJOY E-Cigarettes are known to be

safe or safer than traditional tobacco cigarettes, which, given the studies cited in Section II, is materially false and misleading.

100. As of the time of the filing of this Complaint, Defendant continues to make material misrepresentations and omissions about its NJOY E-Cigarettes. First, individual NJOY Kings are still widely sold in stores in the packaging shown above at ¶ 62.

101. However, it appears that certain new packaging for NJOY lists at least certain of NJOYs ingredients (stating that the product "Contains Glycerin, Propylene Glycol, Nicotine and Flavors"), which is a tacit concession that those ingredients should have been listed all along, and that NJOY was fully capable of doing so.

102. Moreover, it appears that certain new NJOY packaging contains a modified warning label, which still does not make the disclosures Plaintiffs allege are omitted. For example, the warning on a five-pack of NJOY Kings purchased in the State of California on November 6, 2014, reads:

> WARNING: NJOY products are not smoking secession products and have not been tested as such. NJOY products are intended for use by adults of legal smoking age (18 or older in California) and not by children, women who are pregnant or breastfeeding, or persons with or at risk of heart disease, high blood pressure, diabetes or taking medicine for depression or asthma. NJOY products contain nicotine, a chemical known to the State of California to cause birth defects or other reproductive harm. Nicotine is addictive and habit forming, and it is very toxic by inhalation, in contact with the skin, or if swallowed. Ingestion of the non-vaporized concentrated ingredients in the cartridges can be poisonous. Keep out of reach of Children,

1    Made in China.   Flavors made in the USA with domestic and
2    imported ingredients.

3

4    103.  The changes that Defendants have made to this warning still contain the
5    nondisclosures Plaintiffs claim were omitted in this action, as discussed herein above.
6    Even with the recent disclosure of ingredients, the label, read as a whole, continues
7    to be false and misleading for the reasons stated above at ¶¶61-63, and 65.

8    104.  In addition, as of the time of the filing of this Complaint, NJOY has
9    modified its website in certain respects.  However, the health risks and studies at issue
10   in this complaint remain undisclosed on Defendant's website, and instead, it continues
11   to describe its ingredients and products in a deceptive manner.  For example, the
12   website says about propylene glycol that it "provides the vapor mist that looks like
13   tobacco smoke and gives the vapor some of its lasting flavor," but does not mention
14   that studies have found that inhalation of the substance is known to cause throat and
15   airway irritation and have adverse effects on short term lung function, and that the
16   long term impact of inhalation of propylene glycol is not known.

17   105.  Defendant was well aware that its pervasive advertising campaign would
18   convey to the reasonable consumer that NJOYs were known to be safe or safer than
19   tobacco cigarettes. In an advertising brief of NJOY's ad agency dated June 18, 2012,
20   among a listing of "Brand Promise Dimensions," is that "NJOY combines what
21   smokers have loved for so long (real tobacco pleasure) with the innovations that
22   eliminate everything they are looking to avoid – odor, smoke, ***and safer than***
23   ***cigarettes (although not communicated)…***"   (Emphasis supplied.)

24   106.  Likewise, in an email between Roy Anise, an NJOY Executive Vice
25   President with involvement in marketing, Craig Weiss, NJOY's CEO, and other
26   NJOY executives, dated July 26, 2012, Mr. Anise, stated:

27

28

media pick up should be centered on the idea that NJOY's goal with the King's (*sic*) is to "Obsolete Cigarettes" … [s]omething like; to accomplish this goal NJOY has designed a revolutionary new e-cigarette that is nearly identical and better (absent health claims) then (*sic*) a cigarette in every way (tell NJOY/King's story). This steps way beyond cessation/health/smoke free, etc. to the much bigger idea of elimination of cigarettes from our society, which is the actual desire of the majority, and makes NJOY the face/brand of that desire. This strategy separates NJOY from Cigarettes, makes NJOY the solution, [and] ***will get across the 'safer" message in the pick up***… (Emphasis supplied.)

107.   In addition, as set forth in ¶ 90 above, in a January 12, 2014 Advertising Age article, an NJOY spokeswoman admitted that NJOY's "Friends Don't Let Smoke" advertisement "winks" at the audience about health claims.

108.   NJOY and its agents thus intended for consumers to read a safety message into its ads.

## V.   EACH NAMED PLAINTIFF SAW AND RELIED ON DEFENDANT'S CORE MARKETING MESSAGE, INCLUDING SPECIFIC ADS AND PACKAGING

109.   Each of the Plaintiffs saw and relied on the core marketing message that Defendant disseminated during the Class Period, including specific ads and packaging.

**Plaintiff Halberstam**

110.   Plaintiff Halberstam saw the NJOY packages before he purchased them in California and read the warning on the packages prior to purchase. The NJOY packages Plaintiff Halberstam purchased did not have an ingredient list on the package. Plaintiff Halberstam, relying on the package, purchased NJOY E-Cigarettes believing that the only material health risks associated with using NJOY E-Cigarettes

1 were those that were disclosed on the package, and that they otherwise were safer than

2 traditional cigarettes or safe generally.   Plaintiff Halberstam would not have

3 purchased NJOY E-Cigarettes had he known that studies have found NJOYs contain

4 detectable levels of known carcinogens, toxic chemicals and other contaminants and

5 impurities that are, or potentially are, disease-causing, that they may have potentially

6 harmful side effects, and that the full range and long-term health effects of NJOYs

7 are not yet known, as stated in the studies referenced in Section II above.

8  111.   Plaintiff Halberstam was also exposed to Defendant's core advertising

9 message that NJOY E-Cigarettes are known to be safe or safer than traditional

10 cigarettes because he saw Defendant's print and television advertisements before he

11 purchased NJOY E-Cigarettes.   Halberstam subscribed to Rolling Stone magazine

12 from approximately June of 2012 to the present, and while reading it between

13 December 2012 and January 2013, saw NJOY's slogans "Resolution Solution" and

14 "Cigarettes, You've Met Your Match."  In addition,  Plaintiff Halberstam read Sports

15 Illustrated and ESPN magazine and between December 2012 and early 2013, saw

16 NJOY's print advertisements featuring the slogans "Resolution Solution" and

17 "Cigarettes, You've Met Your Match."  Plaintiff Halberstam also saw NJOY's print

18 advertisement featuring the slogan "Try Something New In Bed."

19  112.   Plaintiff Halberstam, relying on Defendant's core marketing message,

20 including through the material omissions on the NJOY package and Defendant's false

21 and misleading advertisements as described above in paragraphs 110 and 111,

22 purchased NJOY E-Cigarettes  believing that they were generally safe and did not

23 carry the dangers or risks that traditional tobacco cigarettes do.  Plaintiff Halberstam

24 would not have purchased NJOYs had he known that studies have found NJOY E-

25 Cigarettes contain detectable levels of known carcinogens, toxic chemicals and other

26 contaminants and impurities that are, or potentially are, disease-causing, that they may

27 have potentially harmful side effects, and that the full range and long-term health

28

1   effects of NJOYs are not yet known, as stated in the studies referenced in Section II

2   above.

3   **Plaintiff McGovern**.

4       113.   Plaintiff McGovern saw the NJOY packages before he purchased them

5   in California and read the warning on the packages prior to purchase.  The NJOY

6   packages Plaintiff McGovern purchased did not have an ingredient list on the

7   package.  Plaintiff McGovern, relying on the package, purchased NJOY E-Cigarettes

8   believing that the only material health risks associated with using NJOY E-Cigarettes

9   were those that were disclosed on the package, and that they otherwise were safer than

10  traditional tobacco cigarettes or generally safe. Plaintiff McGovern would not have

11  purchased NJOY E-Cigarettes had he known that studies have found NJOYs contain

12  detectable levels of known carcinogens, toxic chemicals and other contaminants and

13  impurities that are, or potentially are, disease-causing, that they may have potentially

14  harmful side effects, and that the full range and long-term health effects of NJOY E-

15  Cigarettes are not yet known.

16      114.   Plaintiff McGovern was first exposed to NJOY E-Cigarettes when he

17  was given a free sample of NJOY King Regular in late 2013 in a bar in Orange

18  County, California.  Plaintiff McGovern did not smoke the free sample, because it

19  was not menthol.   In late 2013, after receiving the free sample, Plaintiff McGovern

20  saw NJOY's television advertisement featuring the slogan "Friends Don't Let Friends

21  Smoke." In December 2013, after seeing this television commercial and after

22  reviewing the warning on the packaging, Plaintiff McGovern made his initial

23  purchase of NJOY King Menthol at a local 7-Eleven. Plaintiff McGovern, relying on

24  Defendant's advertising messages, made two additional purchases of NJOY E-

25  Cigarettes in January 2014.

26      115.   Plaintiff McGovern, relying on Defendant's core marketing message,

27  including through the material omissions on the NJOY package and Defendant's false

28

1    and misleading advertisements as described above in paragraphs 113 and 114,

2    purchased NJOY E-Cigarettes believing that they were generally safe and did not

3    carry the dangers or risks that traditional tobacco cigarettes do.  Plaintiff McGovern

4    would not have purchased NJOY E-Cigarettes had he known that studies have found

5    NJOY E-Cigarettes contain detectable levels of known carcinogens, toxic chemicals

6    and other contaminants and impurities that are, or potentially are, disease-causing,

7    that they may have potentially harmful side effects, and that the full range and long-

8    term health effects of NJOY E-Cigarettes are not yet known, as stated in the studies

9    referenced in Section II above.

10   **Plaintiff Thomas**

11        116.   Plaintiff Thomas saw the NJOY packages before she purchased them in

12   Florida and read the warning on the packages prior to purchase.  The NJOY packages

13   Plaintiff Thomas purchased did not have an ingredient list on the package.  Plaintiff

14   Thomas, relying on the package, purchased NJOY E-Cigarettes believing that the only

15   material health risks associated with using NJOY E-Cigarettes were those that were

16   disclosed on the package, and that they otherwise were safer than traditional cigarettes

17   or generally safe.  Plaintiff Thomas would not have purchased NJOY E-Cigarettes

18   had she known that studies have found NJOY E-Cigarettes contain detectable levels

19   of known carcinogens, toxic chemicals and other contaminants that are, or potentially

20   are, disease-causing, that they may have potentially harmful side effects, and that the

21   full range and long-term health effects of NJOY E-Cigarettes are not yet known.

22                      **CLASS DEFINITIONS AND ALLEGATIONS**

23        117.   Plaintiffs bring this action as a class action pursuant to Rule 23(a) and

24   (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure ("Rule") for the purpose

25   of asserting the claims alleged in this Complaint on a common basis.  Plaintiffs bring

26

27

28

this action on behalf of themselves and all members of the following two classes (the "Classes") comprised of:

    **a. All persons, exclusive of Defendant and its employees, who purchased in or from California one or more NJOY E-Cigarettes sold by Defendant during the Class Period (the "California Class").**

    **b. All persons, exclusive of Defendant and its employees, who purchased in or from Florida one or more NJOY E-Cigarettes sold by Defendant during the Class Period (the "Florida Class").**

118.   Plaintiffs reserve the right to modify or amend the definitions of the Classes after they have had an opportunity to conduct further discovery.

119.   The Class Period for the California Class is from January 17, 2010 until the date of notice.

120.   The Class Period for the Florida Class is from July 9, 2010 until the date of notice.

121.   ***Numerosity.   Rule 23(a)(1).***   The members of the Classes are so numerous that their individual joinder is impracticable.  Plaintiffs are informed and believe that the proposed Classes contain at least thousands of purchasers of NJOY E-Cigarettes who have been damaged by Defendant's conduct as alleged herein.

122.   ***Existence of Common Questions of Law and Fact. Rule 23(a)(2).***  This action involves common questions of law and fact, which include, but are not limited to, the following:

    a.   Whether the statements made by Defendant as part of its advertising and marketing for NJOY E-Cigarettes discussed herein are true, or are reasonably likely to deceive, given the omissions of material fact described above;

b.      Whether Defendant's warnings on the packages of NJOY E-Cigarettes are misleading or are reasonably likely to deceive, given the omissions of material fact described above;

c.      Whether Defendant's conduct described herein constitutes a deceptive act or practice in violation of the CLRA (California Class);

d.      Whether Defendant's conduct described herein constitutes an unlawful, unfair, and/or fraudulent business practice in violation of the UCL (California Class);

e.      Whether Defendant's conduct described herein constitutes unfair, deceptive, untrue or misleading advertising in violation of the UCL;

f.      Whether Defendant's conduct described herein constitutes an unconscionable, deceptive, or unfair act or practice in violation of FDUTPA (Florida Class);

g.      Whether Plaintiffs and the other members of the Classes are entitled to damages on the Counts where damages are an available remedy; and

h.      Whether Plaintiffs and the Classes are entitled to restitution, injunctive relief, or other equitable relief and/or other relief as may be proper.

123.    ***Typicality. Rule 23(a)(3).***  All members of the Classes have been subject to and affected by the same conduct and omissions by Defendant.  The claims alleged herein are based on the same violations by Defendant that harmed Plaintiffs and members of the Classes.  By purchasing NJOY E-Cigarettes during the applicable Class Periods, all members of the Classes were subjected to the same wrongful conduct.  Plaintiffs' claims are typical of the Classes' claims and do not conflict with the interests of any other members of the Classes.  Defendant's unlawful, unfair, deceptive, and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.

124.  ***Adequacy.  Rule 23(a)(4).***  Plaintiffs will fairly and adequately protect the interests of the members of the Classes.  Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.  Plaintiffs have no adverse or antagonistic interests to those of the Classes.

125.  ***Injunctive and Declaratory Relief.  Rule 23(b)(2).***  Defendant's actions regarding the deceptions and omissions regarding NJOY E-Cigarettes are uniform as to members of the Classes.  Defendant has acted or refused to act on grounds that apply generally to the Classes, so that final injunctive relief as requested herein is appropriate respecting the Classes as a whole.

126.  ***Predominance and Superiority of Class Action.   Rule 23(b)(3).***  Questions of law or fact common to the Classes predominate over any questions affecting only individual members and a class action is superior to other methods for the fast and efficient adjudication of this controversy, for at least the following reasons:

    a.   Absent a class action, members of the Classes as a practical matter will be unable to obtain redress, Defendant's violations of its legal duties will continue without remedy, additional consumers will be harmed, and Defendant will continue to retain its ill-gotten gains;

    b.   It would be a substantial hardship for most individual members of the Classes if they were forced to prosecute individual actions;

    c.   When the liability of Defendant has been adjudicated, the Court will be able to determine the claims of all members of the Classes;

    d.   A class action will permit an orderly and expeditious administration of each Class members' claims and foster economies of time, effort, and expense;

e.    A class action regarding the issues in this case does not create any problems of manageability; and

f.    Defendant has acted on grounds generally applicable to the members of the Classes, making class-wide monetary and equitable relief appropriate.

127.    Plaintiffs do not contemplate class notice if the Classes are certified under Rule 23(b)(2), which does not require notice, and notice to the putative Classes may be accomplished through publication, signs or placards at the point-of-sale, or other forms of distribution, if necessary, if the Classes are certified under Rule 23(b)(3), or if the Court otherwise determines class notice is required.  Plaintiffs will, if notice is so required, confer with Defendant and seek to present the Court with a stipulation and proposed order on the details of a class notice program.

## COUNT I
**Injunctive Relief and Damages for Violations of the Consumers Legal Remedies Act**
**(Cal. Civil Code §§ 1750 *et seq.*)**
**(On Behalf of the California Plaintiffs and the California Class and Against Defendant)**

128.    The California Plaintiffs repeat and reallege the allegations contained in the paragraphs above, as if fully set forth herein.

129.    The relevant period for this Count is January 17, 2011 until the date of notice.

130.    This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* ("CLRA" or the "Act"), which provides that enumerated listed "unfair methods of competition and unfair or deceptive acts or practices (including those listed below in ¶ 139) undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful," CLRA § 1770, and that "[a]ny consumer

1   who suffers any damage as a result of the use or employment by any person of a

2   method, act, or practice declared to be unlawful by Section 1770 may bring an action

3   against such person to recover or obtain" various forms of relief, including injunction

4   and damages. Cal. Civ. Code § 1780. This cause of action seeks both injunctive relief

5   and damages on behalf of the California Class.

6       131.   On January 16, 2014, prior to the filing of the initial complaint in this

7   action, Plaintiff Halberstam sent Defendant a CLRA notice letter providing the notice

8   required by California Civil Code § 1782(a). Plaintiff Halberstam sent the letter via

9   certified mail, return receipt requested, to the location in Los Angeles where Plaintiff

10  Halberstam purchased NJOY E-Cigarettes, as well as to Defendant's principal place

11  of business in Arizona, and to the Secretary of State of Nevada, where Sottera had

12  been incorporated, advising Defendant that it is in violation of the CLRA and must

13  correct, replace or otherwise rectify the goods and/or services alleged to be in

14  violation of § 1770. Defendant was further advised that in the event the relief

15  requested has not been provided within thirty (30) days, Plaintiff Halberstam will

16  amend his Complaint to include a request for monetary damages pursuant to the

17  CLRA. A true and correct copy of Plaintiff Halberstam's letter is attached hereto as

18  Exhibit A.

19      132.   On February 14, 2014, prior to the filing of Plaintiff McGovern's

20  complaint,[35] and prior to the consolidation with this action, Plaintiff McGovern sent

21  Defendant a CLRA notice letter providing the notice required by California Civil

22  Code § 1782(a). Plaintiff McGovern sent the letter via certified mail, return receipt

23  requested, to the California Secretary of State, as well as to Defendant's principal

24  place of business in Arizona and Defendant's place of incorporation. The letter

25  ────────────────

26  [35]    On February 11, 2014, Plaintiff McGovern filed a complaint against
    Defendant in the Superior Court of the State of California in and for the County of

27  Orange, Case No.: 30-21014-00705711-CU-FR-CXC. On April 29, 2014, this
    Court consolidated Plaintiff McGovern's action with this present action.

28

1   advised Defendant that it is in violation of the CLRA and must correct, replace or

2   otherwise rectify the goods and/or services alleged to be in violation of § 1770, and

3   that in the event the relief requested has not been provided within thirty (30) days,

4   Plaintiff McGovern will amend his complaint to include a request for monetary

5   damages pursuant to the CLRA.  A true and correct copy of Plaintiff McGovern's

6   letter is attached hereto as Exhibit B.

7          133.   Defendant did not correct, replace, or otherwise rectify the goods and/or

8   services alleged in either Plaintiff's letter.  Therefore, the California Plaintiffs seek

9   monetary damages pursuant to the CLRA.

10          134.   The California Plaintiffs were deceived by Defendant's unlawful

11   practices as described above, which included carrying out an advertising campaign,

12   directed at California Plaintiffs and the California Class, conveying the message that

13   NJOY E-Cigarettes are known to be safer than smoking traditional cigarettes, or

14   known to be generally safe, which was deceptive, false and misleading given the

15   ingredients and characteristics of NJOY products which were or should be known to

16   Defendant, and the studies that have found carcinogens, toxins, and other potentially

17   harmful contaminants and impurities in NJOY E-Cigarettes and electronic cigarettes

18   generally, including certain of those found in traditional tobacco cigarettes, and that

19   NJOY E-Cigarettes require that the user take significantly stronger puffs than the

20   puffs required for a traditional cigarette, and that this could be harmful to health which

21   was not disclosed.  Also undisclosed was the lack of research required to assess the

22   potential danger of electronic cigarettes, especially in long term users.

23          135.   Defendant's actions, representations and conduct have violated, and

24   continue to violate the CLRA, because they extend to transactions that are intended

25   to result, or which have resulted, in the sale of goods to consumers.

26          136.   Defendant marketed, sold and distributed NJOY E-Cigarettes in

27   California and throughout the United States during the relevant period for this Count.

28

137.   The California Plaintiffs and members of the California Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).

138.   Defendant's NJOY E-Cigarettes were and are "good[s]" within the meaning of Cal. Civ. Code §§ 1761(a) & (b).

139.   Defendant violated the CLRA by engaging in at least the following practices proscribed by California Civil Code § 1770(a) in transactions with the California Plaintiffs and the California Class which were intended to result, and did result, in the sale of NJOY E-Cigarettes:

> (5)   Representing that [NJOY E-Cigarettes have] . . . approval, characteristics . . . uses [or] benefits . . . which [they do] not have . . . .
>
> ***
>
> (7) Representing that [NJOY E-Cigarettes are] of a particular standard, quality or grade . . . if [they are] of another.
>
> ***
>
> (9) Advertising goods . . . with intent not to sell them as advertised.

140.   As such, Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices because it does not sell, and because it intends not to sell, the NJOY E-Cigarettes as Defendant advertised and instead misrepresents the particulars by, in its marketing, representing NJOY E-Cigarettes as described above when it knew, or should have known, that the representations and advertisements were deceptive, false and misleading in light of the omissions of material facts as described above.

141.   The omitted information would have been material to a reasonable consumer in his or her decision as to whether to purchase the NJOY E-Cigarettes and/or purchase the NJOY E-Cigarettes at the price at which they were offered.

142.   Defendant had a duty to disclose this information to the California Plaintiffs and the members of the California Class for several reasons.   First,

Defendant used statements that convey the message that the use of NJOY E-Cigarettes is known to be safer than smoking traditional cigarettes, or known to be generally safe, as detailed above.  Disclosure of the omitted information, including information in the studies referred to in Section II, was necessary to avoid the false impression of safety provided by such marketing.  Second, Defendant knew or was in a position to know, from its own product knowledge and creation decisions and the studies, of the presence of carcinogens, toxins, and other impurities in its NJOY E-Cigarettes, especially as described in the FDA's 2009 study of NJOY and Smoking Everywhere Products referenced in ¶¶ 33-37, while consumers were not reasonably in a position to be aware of Defendant's internal product information or such studies.  Third, Defendant actively omitted to disclose, or actively concealed, these material facts as to the California Plaintiffs and the California Class.  Finally, while Defendant made certain specific representations about the risks associated with its NJOY E-Cigarettes, limited to only that they contain nicotine and bear risks related thereto, those representations were misleading half-truths because they implied that those are all of the material or significant risks relating to the use of the product, when, in fact, they are not.

143.  Defendant provided the California Plaintiffs and the other California Class members with NJOY E-Cigarettes that did not match the quality portrayed by its marketing.

144.  As a result, the California Plaintiffs and members of the California Class have suffered irreparable harm.  The California Plaintiffs' and the other California Class members' injuries were proximately caused by Defendant's conduct as alleged herein.  Plaintiffs Halberstam and McGovern, individually and on behalf of all other California Class members, seek entry of an order enjoining Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code section 1780(a)(2), awarding exemplary and punitive

1  damages against Defendant pursuant to California Civil Code sections 1780(a)(1) and

2  (a)(4), and ordering the payment of costs and attorneys' fees, and such other relief as

3  deemed appropriate and proper by the Court under California Civil Code section

4  1780(a)(2).  If Defendant is not restrained from engaging in these practices in the

5  future, the California Plaintiffs and the California Class will continue to suffer harm.

6         145.   Pursuant to section 1780(d) of the CLRA, attached hereto as Exhibits C

7  and D are affidavits showing that this action has been commenced in the proper forum.

8                                      **COUNT II**
   **Injunctive and Equitable Relief for Violations of Unfair Competition Law**
9            **(Cal. Business & Professions Code §§ 17200, *et seq.*)**
   **(On Behalf of the California Plaintiffs and the California Class and Against**
10                                    **Defendant)**

11        146.   The California Plaintiffs repeat and reallege the allegations contained in

12  the paragraphs above, as if fully set forth herein.

13        147.   The relevant period for this Count is January 17, 2010 until the date of

14  notice.

15        148.   The Unfair Competition Law, Cal. Business & Professions Code §

16  17200, *et seq.* ("UCL"), prohibits any "unlawful," "unfair," or "fraudulent" business

17  act or practice and any false or misleading advertising.

18        149.   In the course of conducting business, Defendant committed unlawful

19  business practices by, *inter alia*, making the representations (which also constitute

20  advertising within the meaning of § 17200) and omissions of material facts, as set

21  forth more fully herein, and violating Cal. Civil Code §§ 1750, *et seq*, and the common

22  law.

23        150.   The California Plaintiffs, individually and on behalf of the other

24  California Class members, reserve the right to allege other violations of law which

25  constitute other unlawful business acts or practices.  Such conduct is ongoing and

26  continues to this date.

27        151.   Defendant's actions constitute "unfair" business acts or practices

28

because, as alleged above, *inter alia*, Defendant engages in deceptive and false advertising, and misrepresents and omits material facts regarding its NJOY E-Cigarettes, and thereby offends an established public policy, and engages in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers. This conduct constitutes violations of the unfair prong of Business & Professions Code §§ 17200, *et seq.*

152. Business & Professions Code §§ 17200, *et seq.*, also prohibits any "fraudulent business act or practice."

153. Defendant's actions, claims, nondisclosures, and misleading statements, as alleged herein, also constitute "fraudulent" business practices in violation of the UCL because, among other things, they are false, misleading, and/or likely to deceive reasonable consumers within the meaning of Business & Professions Code §§ 17200, *et seq.*

154. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

155. As a result of Defendant's pervasive false marketing, including deceptive and misleading acts and omissions as detailed herein, the California Plaintiffs and other members of the California Class have in fact been harmed as described above. If Defendant had disclosed the information discussed above about the NJOY E-Cigarettes and otherwise been truthful about their safety, the California Plaintiffs would not have purchased Defendant's products. Defendant was also able to charge more than what its NJOY E-Cigarettes would have been worth had it disclosed the truth about them.

156. As a result of Defendant's unlawful, unfair, and fraudulent practices, the California Plaintiffs and the other California Class members have suffered injury in fact and lost money.

157. As a result of its deception, Defendant has been able to reap unjust

1  revenue and profit in violation of the UCL.

2  158.   Unless restrained and enjoined, Defendant will continue to engage in the

3  above-described conduct.   Accordingly, injunctive relief is appropriate for the

4  California Plaintiffs and the California Class.

5  159.   As a result of Defendant's conduct in violation of the UCL, the

6  California Plaintiffs and members of the California Class have been injured as alleged

7  herein in amounts to be proven at trial because they purchased NJOY E-Cigarettes

8  without full disclosure of the material facts discussed above.

9  160.   As a result, the California Plaintiffs, individually, and on behalf of the

10  California Class, and the general public, seek restitution and disgorgement of all

11  money obtained from the California Plaintiffs and the members of the California Class

12  collected by Defendant as a result of unlawful, unfair, and/or fraudulent conduct, and

13  seek injunctive relief, and all other relief this Court deems appropriate, consistent with

14  Business & Professions Code § 17203.

## COUNT III
### Injunctive Relief and Damages for Breach of the Florida Deceptive and Unfair Trade Practices Act
### (Fla. Stat. § 501.201, *et seq.*)
### (On Behalf of the Florida Plaintiff and the Florida Class and Against Defendant)

161.   Plaintiff Thomas repeats and realleges the allegations contained in ¶¶ 1-127 above, as if fully set forth herein.

162.   The relevant period for this Count is July 9, 2010 until the date of notice.

163.   This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201 et seq. ("FDUTPA"), whose purpose is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. §501.202(2).

164.   This cause of action is for damages pursuant to Fla. Stat. § 501.211(2). Pursuant to the Act, "a person who has suffered a loss as a result of a violation of this part may recover actual damages, plus attorney's fees and Court costs." Fla. Stat §501.211(2).

165.   Plaintiff Thomas is a consumer as defined by Fla. Stat. §501.203. Plaintiff Thomas and each member of the Florida Class purchased NJOY E-Cigarettes during the Class Period.

166.   Defendant is engaged in trade or commerce within the meaning of the Act.

167.   Fla. Stat. §501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ."

168.   Defendant has violated the Act by engaging in the unfair and deceptive acts and practices as described herein, which included carrying out an advertising

campaign, directed at Plaintiff Thomas and the Florida Class, conveying the message that the use of NJOY E-Cigarettes is known to be safer than smoking traditional cigarettes, or known to be generally safe, which was deceptive, false and misleading given the studies that have found carcinogens, toxins, and other potentially harmful impurities in NJOY E-Cigarettes and electronic cigarettes generally, including certain of those found in traditional tobacco cigarettes, and that NJOY E-Cigarettes require that the user take significantly stronger puffs than the puffs required for a traditional cigarette, and that this could be harmful to health which was not disclosed.  Also undisclosed was the lack of additional research which such studies have determined is required to assess the potential danger of electronic cigarettes, especially in long term users,  which offend public policies and are immoral, unethical,  unscrupulous and substantially injurious to consumers.

169. Plaintiff Thomas and the Florida Class have been aggrieved by Defendant's unfair and deceptive acts and practices in that they purchased NJOY E-Cigarettes.  As a result of Defendant's unfair and deceptive acts and practices, and unlawful conduct, Plaintiff Thomas and other members of the Florida Class have in fact been harmed.  If Defendant had disclosed the information discussed above about the NJOY E-Cigarettes and otherwise been truthful about their safety, Plaintiff Thomas would not have purchased Defendant's products.  In fact, Defendant was able

to charge more than what its NJOY E-Cigarettes would have been worth had it disclosed the truth about them.

170.   The damages suffered by Plaintiff Thomas and the Florida Class were directly and proximately caused by the unfair and deceptive acts and practices of Defendant, as more fully described herein.

171.   Pursuant to Fla. Stat. § 501.211(1), Plaintiff Thomas and the Florida Class seek a declaratory judgment and a court order enjoining the above-described wrongful acts and practices of Defendant.

172.   Additionally, pursuant to Fla. Stat. § 501.211(2) and pursuant to Fla. Stat. § 501.2015, Plaintiff Thomas and the Florida Class make claims for damages, attorneys' fees and costs.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for a judgment:

a.   Certifying the Classes as requested herein, appointing Plaintiffs Halberstam and McGovern as class representatives for the California Class, appointing Plaintiff Thomas as class representative for the Florida Class and appointing Court-appointed interim co-lead counsel, Wolf Haldenstein Adler Freeman & Herz LLP, Westerman Law Corporation, and Levi & Korsinsky LLP, as counsel for the Classes;

b.   Requiring Defendant to disgorge or return all monies, revenues and profits obtained by means of any wrongful act or practice to Plaintiffs and the members of the Classes under Cal. Bus. & Prof. Code §§ 17200 et seq, and each other cause of action where such relief is permitted;

c.   Enjoining Defendant from engaging in the unlawful practices as set forth herein, including marketing or selling NJOY E-Cigarettes without disclosing the potential health risks relating thereto, and directing

1  Defendant to engage in corrective action, or providing other injunctive

2  or equitable relief;

3  d.  Pursuant to Fla. Stat. §§ 501.211 and 501.2015, awarding damages to

4  each member of the Florida Class;

5  e.  Awarding damages pursuant to Cal. Civ. Code § 1780, including

6  exemplary and punitive damages to prevent and deter Defendant from

7  future unlawful conduct;

8  f.  Awarding all equitable remedies available pursuant to Cal. Civ. Code §

9  1780 and other applicable law;

10  g.  Awarding attorneys' fees and costs;

11  h.  Awarding pre-judgment and post-judgment interest at the legal rate; and

12  i.  Providing such further relief as may be just and proper.

13  DATED: November 10, 2014  **WOLF HALDENSTEIN ADLER
       FREEMAN & HERZ LLP**

14

15  By:  */s/ Janine L. Pollack*
       JANINE L. POLLACK (*pro hac vice*)

16  pollack@whafh.com
       DEMET BASAR (*pro hac vice*)

17  basar@whafh.com
       KATE M. MCGUIRE (*pro hac vice*)

18  mcguire@whafh.com
       270 Madison Avenue

19  New York, New York 10016
       Telephone:  212/545-4600

20  Facsimile:  212/545-4653

21  **WOLF HALDENSTEIN ADLER
       FREEMAN & HERZ LLP**
       FRANCIS M. GREGOREK (144785)

22  gregorek@whafh.com
       BETSY C. MANIFOLD (182450)

23  manifold@whafh.com
       RACHELE R. RICKERT (190634)

24  rickert@whafh.com
       MARISA C. LIVESAY (223247)

25  livesay@whafh.com
       750 B Street, Suite 2770

26  San Diego, CA 92101
       Telephone:  619/239-4599

27  Facsimile:  619/234-4599

28

- 67 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WESTERMAN LAW CORPORATION**
JEFF S. WESTERMAN (94559)
jwesterman@jswlegal.com
1900 Avenue of the Stars, 11th Floor
Los Angeles, CA 90067
Telephone:  310/698-7880
Facsimile:   310/775-9777

**LEVI & KORSINSKY LLP**
EDUARD KORSINSKY (*pro hac vice*)
ek@zlk.com
SHANNON L. HOPKINS (*pro hac vice*)
shopkins@zlk.com
NANCY A. KULESA (*pro hac vice*)
nkulesa@zlk.com
STEPHANIE A. BARTONE (*pro hac vice*)
sbartone@zlk.com
30 Broad Street, 24th Floor
New York, New York 10004
Telephone:  212/363-7500
Facsimile:   866/367-6510

*Interim Co-Lead Counsel*

**THE WILNER FIRM, P.A.**
RICHARD J. LANTINBERG (*pro hac vice*)
rlantinberg@wilnerfirm.com
444 E. Duval Street
Jacksonville, FL 32202
Telephone:  904/446-9817
Facsimile:  904/446-9825

**BISNAR CHASE LLP**
BRIAN D. CHASE (164109)
bchase@bisnarchase.com
JERUSALEM F. BELIGAN (211258)
jbeligan@bisnarchase.com
TRAVIS K. SIEGEL (282482)
tsiegel@bisnarchase.com
1301 Dove Street, Suite 120
Newport Beach, CA
Telephone: 949/752-2999
Facsimile: 949/752-2777

*Additional Counsel for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED: November 10, 2014

**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**

By:   */s/ Janine L. Pollack*

JANINE L. POLLACK (*pro hac vice*)
pollack@whafh.com
DEMET BASAR (*pro hac vice*)
basar@whafh.com
KATE M. MCGUIRE (*pro hac vice*)
mcguire@whafh.com
270 Madison Avenue
New York, New York 10016
Telephone:  212/545-4600
Facsimile:  212/545-4653

**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
FRANCIS M. GREGOREK (144785)
gregorek@whafh.com
BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. RICKERT (190634)
rickert@whafh.com
MARISA C. LIVESAY (223247)
livesay@whafh.com
750 B Street, Suite 2770
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:  619/234-4599

**WESTERMAN LAW CORPORATION**
JEFF S. WESTERMAN (94559)
jwesterman@jswlegal.com
ANNA FAIRCLOTH (275636)
afaircloth@jswlegal.com
1900 Avenue of the Stars, 11th Floor
Los Angeles, CA 90067
Telephone:  310/698-7880
Facsimile:  310/775-9777

**LEVI & KORSINSKY LLP**
EDUARD KORSINSKY (*pro hac vice*)
ek@zlk.com
SHANNON L. HOPKINS (*pro hac vice*)
shopkins@zlk.com
NANCY A. KULESA (*pro hac vice*)
nkulesa@zlk.com

STEPHANIE A. BARTONE (*pro hac vice*)
sbartone@zlk.com
30 Broad Street, 24th Floor
New York, New York 10004
Telephone:  212/363-7500
Facsimile:   866/367-6510

*Interim Class Counsel*

**THE WILNER FIRM, P.A.**
RICHARD J. LANTINBERG (*pro hac vice*)
rlantinberg@wilnerfirm.com
444 E. Duval Street
Jacksonville, FL 32202
Telephone:  904/446-9817
Facsimile:  904/446-9825

**BISNAR CHASE LLP**
BRIAN D. CHASE (164109)
bchase@bisnarchase.com
JERUSALEM F. BELIGAN (211258)
jbeligan@bisnarchase.com
TRAVIS K. SIEGEL (282482)
tsiegel@bisnarchase.com
1301 Dove Street, Suite 120
Newport Beach, CA
Telephone: 949/752-2999
Facsimile: 949/752-2777

*Additional Counsel for Plaintiffs*

NJOY:766889.complaint

1

## PROOF OF SERVICE

2

3

I, the undersigned, say:

4

I am a citizen of the United States and am over the age of 18 and not a party to the within action. My business address is 1900 Avenue of the Stars, 11th Floor, Los Angeles, California 90067.

5

6

On November 10, 2014, I served the following document:

7

8

**SECOND CONSOLIDATED AMENDED COMPLAINT FOR VIOLATIONS OF: (1) CAL. CONSUMERS LEGAL REMEDIES ACT; (2) CAL. UNFAIR COMPETITION LAW; (3) FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT; (4) N.Y. GEN. BUS. LAW; AND (5) BREACH OF EXPRESS WARRANTY**

9

10

By posting the document to the ECF Website of the United States District Court for the Central District of California, for receipt electronically.

11

12

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July November 10, 2014, at Los Angeles, California.

13

14

15

_____/s/ Jenna Radomile_____
Jenna Radomile

16

17

18

19

20

21

22

23

24

25

26

27

28