**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
FRANCIS M. GREGOREK (144785)
gregorek@whafh.com
BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. RICKERT (190634)
rickert@whafh.com
MARISA C. LIVESAY (223247)
livesay@whafh.com
750 B Street, Suite 2770
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile: 619/234-4599

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
JANINE L. POLLACK
pollack@whafh.com
DEMET BASAR
basar@whafh.com
KATE M. MCGUIRE
mcguire@whafh.com
270 Madison Avenue
New York, New York 10016
Telephone:  212/545-4600
Facsimile:  212/545-4653

**WESTERMAN LAW CORP**
JEFF S. WESTERMAN (94559)
jwesterman@jswlegal.com
ANNA FAIRCLOTH (275636)
afaircloth@jswlegal.com
1900 Avenue of the Stars, 11th Floor
Los Angeles, CA 90067
Telephone:  310/698-7880
Facsimile:  310/775-9777

**LEVI & KORSINKSY, LLP**
EDUARD KORSINSKY
ek@zlk.com
SHANNON L. HOPKINS
shopkins@zlk.com
30 Broad Street, 24th Floor
New York, NY 10004
Telephone: 232/363-7500
Facsimile: 866/367-6510

Interim Co-Lead Class Counsel
[Additional Counsel Appear on Signature Page]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION**

| | |
|---|---|
| IN RE NJOY, INC. CONSUMER CLASS ACTION LITIGATION | Case No. CV 14-00428 MMM(JEMx)<br><br>CLASS ACTION<br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Judge:      Margaret M. Morrow<br>Place:      Courtroom 780<br>Date:       July 27, 2015<br>Time:       10:00 a.m. |

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

Case No. CV-14-00428-MMM(JEMx)
PLAINTIFFS' MEM. IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY OF THE FACTS............................ 1

II.   ARGUMENT ................................................................................... 5

    A.    Legal Standard for Class Certification Under Rule 23 .................... 5

    B.    Plaintiffs Have Satisfied the Requirements of Rule 23(a).............. 6

    C.    The Proposed Class Is Ascertainable ................................... 8

    D.    The Class Can Be Maintained Under Rule 23(b)(3).......................... 9

        1.    Plaintiffs Satisfy Predominance Under Rule 23(b)(3)(i)........9

            a)    Common Questions of Fact Predominate .................. 10

                (1)    Defendant Disseminated the Same False and Deceptive Safety Message Across Various Media.............................……………......10

                (2)    Reasonable Consumers Would Understand NJOY's Marketing  as Conveying a Safety Message……………………………...14

                (3)    Common Evidence Will Show Defendant Intended to Imply the Safety Message………..16

                (4)    Common Evidence Can Be Used to Establish Materiality………………………………...18

                (5)    Common Evidence Can Be Used to Establish Whether  NJOYs Are Safe or Safer than Cigarettes.........................................20

            b)    Common Questions of Law Predominate……………20

                (1)    The California Consumer Protection Claims……………………………………….20

                 (2)    Florida Consumer Protection Claims……………………………………….20

            c)    Plaintiffs' Damages Are Calculable Classwide……...21

    E.    A Class Action is a Superior Means of Resolving these Claims............................................................................. ………24

III.   CONCLUSION………………………………………….25

i

1

## <u>TABLE OF AUTHORITIES</u>

2

3  **CASES**                                                                    **Pages**

4
5
*Amchem Products v. Windsor,*
  521 U.S. 597 (1997).................................................................................. 9

6
7
*Amgen Inc. v. Connecticut Retirement Plans & Trust Funds,*
  133 S. Ct. 1184 (2013)............................................................................. 18

8
9
*Apple Inc. v. Samsung Electronics Co.,*
  735 F.3d 1352 (Fed. Cir. 2013) ............................................................... 22

10
11
*Arnold v. FitFlop USA, LLC,*
  2014 U.S. Dist. LEXIS 58800 (S.D. Cal. Apr. 28, 2014) ....................... 25

12
13
*Bezdek v. Vibram USA Inc.,*
  2015 U.S. Dist. LEXIS 5508 (D. Mass. Jan, 16, 2015).......................... 25

14
15
*Cabral v. Supple, LLC,*
  2013 U.S. Dist. LEXIS 184170
  (C.D. Cal. Feb. 14, 2013)................................................................. 7, 10

16
17
*Carrera v. Bayer Corp.,*
  727 F.3d 300 (3d Cir. 2013) ..................................................................... 8

18
19
*Comcast Corp. v. Behrend,*
  133 S. Ct. 1426 (2013)............................................................................. 21

20
21
*In re ConAgra Foods, Inc.,*
  2015 U.S. Dist. LEXIS 24971 (C.D. Cal. Feb. 23, 2015) ............................*passim*

22
23
*Fitzpatrick v. General Mills, Inc.,*
  263 F.R.D. 687 (S.D. Fla. 2010),
  *vacated on other grounds,* 635 F.3d 1279 (11th Cir. 2011)................. 20

24
25
*Forcellati v. Hyland's Inc.,*
  2014 U.S. Dist. LEXIS 50600 (C.D. Cal. Apr. 9, 2014)....................... 20

26
27
28

ii

PLAINTIFFS' MEM. IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

*Guido v. L'Oreal, USA, Inc.,*
   2014 U.S. Dist. LEXIS 165777 (C.D. Cal. July 24, 2014) ......................8, 22, 23

*Heighley v. J.C. Penney Life Ins. Co.,*
   257 F. Supp. 2d 1241 (C.D. Cal. 2003) ............................................................20

*In re High-Tech Employee Antitrust Litigation,*
   289 F.R.D. 555 (N.D. Cal. 2013) ....................................................................24

*Johnson v. General Mills, Inc.,*
   275 F.R.D. 282 (C.D. Cal. 2011)................................................................10, 18

*Johns v. Bayer Corp.,*
   280 F.R.D. 551 (S.D. Cal. 2012) ......................................................................6

*Keegan v. American Honda Motor Co.,*
   284 F.R.D. 504 (C.D. Cal. 2012)..................................................................7, 20

*Kwikset v. Superior Court,*
   51 Cal. 4th 310 (2011) ....................................................................................20

*Makaeff v. Trump University,*
   2014 U.S. Dist. LEXIS 22392 (S.D. Cal. Feb. 21, 2014)..................................10

*McCrary v. Elations Co.,*
   2014 U.S. Dist. LEXIS 8443 (C.D. Cal. Jan. 13, 2014) .....................................8

*Nelson v. Mead Johnson Nutrition Co.,*
   270 F.R.D. 689 (S.D. Fla. 2010)......................................................................10

*In re Nucoa Real Margarine Litigation,*
   2012 U.S. Dist. LEXIS 189904 (C.D. Cal. June 12, 2012)..................................8

*Roach v. T.L. Cannon Corp.,*
   778 F.3d 401 (2d Cir. 2015) ............................................................................21

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.,*
   559 U.S. 393 (2010)..........................................................................................6

iii

*In re Toyota Motor Corp. Hybrid Brake Marketing*,
   2012 U.S. Dist. LEXIS 151559 (C.D. Cal. Sept. 20, 2012) ................................ 24

*TV Interactive Data Corp. v. Sony Corp.*,
   929 F. Supp. 2d 1006 (N.D. Cal. 2013) ................................................................ 22

*Vaccarino v. Midland Nat'l Life Ins. Co.*,
   2014 U.S. Dist. LEXIS 18601 (C.D. Cal. Feb. 3, 2014) ............................... 21, 24

*Wiener v. Dannon Co.*,
   255 F.R.D. 658 (C.D. Cal. 2009) ........................................................................... 6

**STATUTES & RULES**

California Consumers Legal Remedies Act,
Cal. Civil Code §§1750, *et seq.* ("CLRA") ........................................................ 2, 10

California Unfair Competition Law ("UCL"),
Cal. Bus. & Professional Code §§17200, *et seq.* ................................................ 2, 10

Federal Rules of Civil Procedure
   9(b) ........................................................................................................................ 3
   23(a) .................................................................................................................. 2, 4
   23(a)(1) ................................................................................................................. 6
   23(a)(2) ................................................................................................................. 6
   23(a)(3) ................................................................................................................. 6
   23(a)(4) ................................................................................................................. 7
   23(b)(3) ........................................................................................................ *passim*
   23(b)(3)(i) ............................................................................................................. 9

Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") ...................... 2, 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' MEM. IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

## I.     INTRODUCTION AND SUMMARY OF THE FACTS

Defendant NJOY[1] is one of the top manufacturers of e-cigarettes in the United States and, during the Class Period (defined below), sold millions of its NJOY e-cigarettes nationwide.  NJOY's stated ▮▮▮▮▮ was to ▮▮▮▮▮▮▮▮▮ *See*, *e.g.*, A-558055.[2]  Given the widely known health dangers of combustible tobacco cigarettes, NJOY knew that the only way to effect a migration to NJOY electronic e-cigarettes ("NJOYs") was to convey the message that NJOYs had health benefits over cigarettes, but with the same level of enjoyment.  *Id.* ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮  However, because of restrictions on health claims by the Food and Drug Administration ("FDA") and a Consent Judgment NJOY signed with the California Attorney General ("AG"), NJOY could not overtly advertise the health benefits of its products.    To increase sales, NJOY thus used a pervasive, deceptive marketing scheme that conveyed the implicit message that NJOYs were known to be safe or safer than combustible tobacco cigarettes (the "Safety Message").  In fact, NJOY's main challenge was to make sure that the wording of its marketing ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮  B-43152.  To further promote the Safety Message, NJOY also made partial disclosures and omitted an ingredient list on its products' packages to create the misleading impression that the only material health risks in using NJOYs were related to nicotine.

---

[1] Unless otherwise stated, defined terms have the same meanings ascribed to them as in the Third Consolidated Amended Complaint ("¶__") (Dkt. 82).

[2] "A" refers to Exhibit A of the accompanying Declaration of Janine L. Pollack ("Pollack Dec.") and 558056 refers to an NJOY-produced document without the NJOY prefix and the zeros before the number.  This citing convention is used throughout this memorandum.

Contrary to NJOY's Safety Message, however, numerous studies have found dangerous carcinogens and toxins and related and other health risks in using NJOYs and similar e-cigarettes.  In fact, numerous studies have found that, at a minimum, more research is required before the long-term effects of use can be known, and that e-cigarettes cannot be deemed safe at this time.  Defendant was well aware of these studies.  Consumers were not.

Plaintiff Ben Z. Halberstam, a consumer living in California, and Plaintiff Kathryn Thomas, a consumer living in Florida, like thousands of others in their respective states, purchased NJOYs during the Class Period.[3]  ¶¶14, - 16-18, 20. Each Plaintiff saw and relied upon NJOY's deceptive representations and omissions through exposure to its advertisements and/or NJOYs' packages. ¶¶110-12, 116. Plaintiffs bring claims under the consumer protection statutes of California and Florida,[4] on behalf of themselves and other purchasers of NJOYs in their states during the Class Period. Plaintiffs seek certification of a California Class and a Florida Class (collectively, the "Class") under Federal Rule of Civil Procedure 23(a) and (b)(3).

Consumers' perception of NJOY's marketing and materiality can be established on a classwide basis.  Plaintiffs' marketing expert, Dr. Thomas J. Maronick, conducted a survey that found a significant percentage of consumers understood NJOY's ads to convey the Safety Message, which proves a "reasonable person" could take away that message.  The survey also showed that the purported safety of NJOYs was material to those consumers, and that consumers would have

---

[3] A third Plaintiff, Eric McGovern, voluntarily dismissed his claims in this action on May 20, 2015 (Dkt. 114), and is not seeking to represent the Class.

[4] California Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, *et seq.* ("UCL"), California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

PLAINTIFFS' MEM. IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

wanted all health risks to be disclosed on NJOY packages. ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████  This evidence not only shows that materiality here can be answered by common proof, but that such proof is already in hand.

NJOY's Safety Message, implied through similar phrases and concepts across all of its advertising, was part of a uniform deceptive marketing scheme.   For example, NJOY had a widely shown television ad featuring the slogan "Friends Don't Let Friends Smoke," which also includes a voiceover stating: "Give them [i.e., friends] the only electronic cigarette worth switching to, the NJOY King. Cigarettes, you've met your match."   ¶90. Plaintiff Halberstam alleges that he saw NJOY's "Resolution Solution" print ad (¶111), which states, "Smokers finally have a real alternative," and "Cigarettes, You've Met Your Match."   ¶76. In the Tentative Order denying NJOY's Motion to Dismiss in part ("TO") (Pollack Dec., Ex. AV), this Court stated that these advertisements, including the "alternative"/"switching" concept and the "cigarettes, you've met your match" copy, which also appears in much of NJOY's other advertising, could "suggest to a reasonable consumer that the NJOY King is superior because it is safer than traditional cigarettes." TO at 21. In the TO, the Court also stated that it "decline[d] to dismiss the claims to the extent they are based on advertisements plaintiffs did not themselves see or hear," and thus the claims include all substantially similar marketing seen by Class members. *Id.* at 41.[5]

_____

[5] Halberstam also alleges that he saw the "Try Something New in Bed" print ad. ¶111.  While the Court tentatively held that Fed. R. Civ. P. 9(b) was not met with respect to that ad because Halberstam had not pled where and when he saw it with (continued…)

PLAINTIFFS' MEM. IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Each Plaintiff also alleges he or she saw NJOY's packaging, which is alleged to be deceptive through partial disclosures and omissions. ¶¶110, 116.  In the TO, the Court tentatively held that Plaintiffs' omission claim is actionable. TO at 37. All Class members were exposed to NJOY's packaging, and common evidence will resolve the omission claims.

As shown below, the requirements of Rule 23(a) of numerosity, commonality, typicality and adequacy are easily met here and the Class is ascertainable.  Rule 23(b)(3) is also satisfied.  Individual issues do not predominate. Consideration of the claims requires no assessment of the behavior or values of individual Class members.  Under the relevant state consumer statutes, deceptiveness turns on what a reasonable consumer would believe, which is determined through common evidence.  Here, Dr. Maronick's study found, for example, that 73% of those viewing the "Friends Don't Let Friends Smoke" commercial, and 43% of those who saw the "Resolution Solution" and "Try Something New in Bed" print ads believed they conveyed the message that NJOYs are safe or safer for health than traditional cigarettes, and 90 to 95% of those consumers believed the "safe" and "safer" message in the ads was important or very important.  The reasonableness of this belief is thus not only provable, but has been shown, on a classwide basis.

In addition, the damages ascribable to Plaintiffs' theory of the case can be established on a classwide basis.  Plaintiffs have retained an economist, Dr. Jeffrey E. Harris of the Massachusetts Institute of Technology, who has served as an expert in multiple light cigarette cases.  Dr. Harris proposes two damages models: conjoint analysis and the direct survey method.  With conjoint analysis, one can isolate the value or "partworth" that NJOY consumers place on the Safety Message by using a

_____

(…continued)

adequate specificity (TO at 27), the ad may nonetheless be included as part of NJOY's overall deceptive scheme.

PLAINTIFFS' MEM. IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

survey that provides choice sets that group multiple attributes, and, based on the aggregate responses, uses statistical analysis to assign a separate value to the worth of each attribute. This Court has held that conjoint analysis is an acceptable method for computing classwide damages at the class certification stage. *In re Conagra Foods, Inc.*, 2015 U.S. Dist. LEXIS 24971, at \*\*245-46 (C.D. Cal. Feb. 23, 2015) (Morrow, J.) ("*ConAgra*"). With the direct survey method, which can be used as an alternative to or together with the conjoint analysis, consumers are asked directly how much, if at all, they would pay for a safe or safer e-cigarette. Under both models, the specific value of the Safety Message is applied to historical prices to compute classwide damages (available from Nielsen and NJOY for its internet sales).

Accordingly, Plaintiffs' motion for class certification should be granted.

## II. ARGUMENT

Because this action can be proven or disproven on a classwide basis, the following classes should be certified:

- **All persons, exclusive of Defendant and its employees, who purchased in or from California one or more NJOY E-Cigarettes sold by Defendant during the Class Period (the "California Class").**

- **All persons, exclusive of Defendant and its employees, who purchased in or from Florida one or more NJOY E-Cigarettes sold by Defendant during the Class Period (the "Florida Class").[6]**

### A. Legal Standard for Class Certification Under Rule 23

To certify a class, Plaintiffs must "satisfy the criteria set forth in subdivision (a) … and it also must fit into one of three categories described in subdivision (b)."

---

[6] The class period for the California Class is from January 17, 2010 until the date of notice. ¶119. The class period for the Florida Class is July 9, 2010 until the date of notice. ¶120. Unless stated otherwise, the two class periods are collectively referenced as the "Class Period."

1   *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398

2   (2010).  Plaintiffs seek certification under Rule 23(b)(3).

3           **B.       Plaintiffs Have Satisfied the Requirements of Rule 23(a)**

4           Rule 23(a)(1)'s numerosity requires a showing that joinder of all claims

5   would be difficult or inconvenient, not impossible. *ConAgra*, 2015 U.S. Dist.

6   LEXIS 24971, at *96.  In 2013 alone, NJOY sold more than ██████████████

7   ████████████████████████ (C-241167), which shows sufficient numbers of

8   individuals purchased NJOYs in California and Florida. *Johns v. Bayer Corp.*, 280

9   F.R.D. 551, 556 (S.D. Cal. 2012) (reasonable to assume sufficient number

10  purchased product in California where national sales were large).  In fact, ████

11  ████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████

13  ████████████████████████████████ AT-726426, AU-726430.  Numerosity is

14  satisfied.

15          Plaintiffs also satisfy the commonality requirement of Rule 23(a)(2).  This

16  "requirement is construed liberally," and the existence of some common legal and

17  factual issues is sufficient. *ConAgra,* 2015 U.S. Dist. LEXIS 24971, at *97. Where

18  "proposed class members clearly share common legal issues regarding [the] alleged

19  deception and misrepresentations in [the] advertising and promotion of [p]roducts,"

20  the commonality requirement is met.  *Wiener v. Dannon Co.*, 255 F.R.D. 658, 664-

21  65 (C.D. Cal. 2009).  Here, all Class members share common questions, including

22  whether NJOY's Safety Message was deceptive, whether NJOY's packaging

23  contained misleading partial disclosures about the health risks of the product, and

24  whether NJOY's misrepresentations and omissions were material.  All of these

25  questions can be answered with a yes or no, and are common to the claims of all

26  Class members.

27          Plaintiffs' claims are also typical of those of the Class.  Rule 23(a)(3) is

28  satisfied where a plaintiff's claims are "'reasonably co-extensive' with absent class

members' claims.  They need not be 'substantially identical.'" *ConAgra*, 2015 U.S. Dist. LEXIS 24921, at **100-01.  Typicality is established where the class was injured through an alleged common practice.  *Id.*  That a plaintiff may have relied on different statements than some class members does not make that plaintiff's claim atypical.  *Cabral v. Supple, LLC*, 2013 U.S. Dist. LEXIS 184170, *11 (C.D. Cal. Feb. 14, 2013).  Here, the claims of the proposed Class representatives are typical because they are based on the same deceptive conduct by NJOY that harmed Class members in the same way.  All Class members were exposed to the package and/or NJOY's media advertising that conveyed the same Safety Message.  For example, the tag lines that smokers finally have a "real alternative" and "cigarettes, you've met your match" were on virtually every piece of advertising.  Plaintiffs' claims are "reasonably co-extensive" with Class members' claims and typicality is met.

Finally, Plaintiffs satisfy Rule 23(a)(4)'s adequacy requirement.   This is determined by whether "the named plaintiffs and their counsel have any conflicts of interest with other class members," and whether "the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class."  *Keegan v. Am. Honda Motor Co.*, , 284 F.R.D. 504, 525 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d, 1011, 1020 (9th Cir. 1998)).  Here, the interests of Plaintiffs and the Class are fully aligned in determining whether NJOY deceptively or falsely marketed NJOYs. Plaintiffs have been active in this case at all relevant times, and will continue to actively participate, including by sitting for depositions.  *See* Pollack Dec. ¶¶2-3.  In addition, Plaintiffs have retained the law firms of Wolf Haldenstein Adler Freeman & Herz LLP, Levi & Korsinsky LLP, and The Westerman Law Corporation, which have been appointed as interim lead counsel.  All of these firms have significant experience in prosecuting large consumer fraud class actions and are well-qualified to represent the Class.  (*See* Dkt. 36-1 - 36-7, Declaration of Janine L. Pollack in Support of Appointment of Interim Class Counsel, with exhibits.)

7

### C.     The Proposed Class Is Ascertainable

A class is ascertainable if "it can be identified through reference to objective criteria and subjective standards such as a class member's state of mind should not be used when defining the class." *Guido v. L'Oreal, USA, Inc.*, 2014 U.S. Dist. LEXIS 165777, at **51-52 (C.D. Cal. July 24, 2014).   The class need only be "administratively feasible for the court to determine whether a particular individual is a member." *ConAgra*, 2015 U.S. Dist. LEXIS 24971, at *90; *In re Nucoa Real Margarine Litig.*, 2012 U.S. Dist. LEXIS 189901, at **17-18 (C.D. Cal. June 12, 2012) (Morrow, J.). "[I]n this Circuit, it is enough that the class definition describes 'a set of common characteristics sufficient to allow' a prospective plaintiff to identify himself or herself as having a right to recover based on the description." *McCrary v. Elations Co., LLC*, 2014 U.S. Dist. LEXIS 8443, at *24 (C.D. Cal. Jan. 13, 2014) (internal citation omitted).

In *ConAgra*, this Court held that classes are ascertainable even if there may be no way to determine the identity of purchasers, finding that to hold otherwise "would effectively prohibit class actions involving low priced consumer goods -- the very type of claims that would not be filed individually -- thereby upending '[t]he policy at the very core of the class action mechanism.'" *ConAgra*, 2015 U.S. Dist. LEXIS 24971, at *93.[7]  Thus, "[c]ourts routinely certify class actions involving inexpensive products where there are unlikely to be records of who purchased the product." *L'Oreal*, 2014 U.S. Dist. LEXIS 165777, at *42.

Here, one factor determines whether or not a person is a Class member:

---

[7]  While the Third Circuit in *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013), decertified a class because class members likely lacked records of their purchases, and the manufacturer did not keep records of sales, this Court has noted that "*Carrera* is not currently the law in the Ninth Circuit." *ConAgra*, , 2015 U.S. Dist. LEXIS 24971 at *93.   *Carrera* should not be followed as it "eviscerates low purchase price consumer class actions." *McCrary*, 2014 U.S. Dist. LEXIS 8443, at * 24.

8

1    whether he or she purchased NJOYs in California or Florida during the applicable

2    Class Period.  Thus, it will be "administratively feasible for the court to determine

3    whether a particular individual is a member" using objective criteria. Also, many

4    Class members can be identified through records ▮▮▮▮▮▮▮▮▮▮ retail outlets.

5    Defendant sold more than ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6    (D-0726427), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮           NJOY also

7    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9    ▮▮▮▮     *See*, *e.g.*, E-58438, F-632647.  Moreover, NJOY ▮▮▮▮▮▮▮▮▮▮▮

10   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*e.g.*, G-544585, H-529017-18;

11   Pollack Dec. Ex. I, Uncertified Transcript of Deposition of Roy Anise held May 11,

12   2015 ("Anise Tr.") at 97, final to be provided to the Court upon receipt) ▮▮▮▮▮▮

13   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮     Finally, mass club retailers, such as Walgreen's,

14   Sam's Club, and Costco, which use membership cards, retain purchase information

15   for members. *See* Pollack Dec., Ex. J (declaration of Costco employee showing

16   notice was sent to class members in a consumer protection action).  The Class is

17   sufficiently ascertainable.

18       **D.    The Class Can Be Maintained Under Rule 23(b)(3)**

19           **1.    Plaintiffs Satisfy Predominance Under Rule 23(b)(3)(i)**

20       "If common questions 'present a significant aspect of the case and they can be

21   resolved for all members of the class in a single adjudication,' then 'there is clear

22   justification for handling the dispute on a representative … basis,' and the

23   predominance test is satisfied." *Conagra*, 2015 U.S. Dist. LEXIS 24971, at *122,

24   citing *Hanlon*, 150 F.3d at 1022.  "Predominance is a test readily met in certain

25   cases alleging consumer or securities fraud." *Amchem*, 521 U.S. at 625.    Here,

26   common questions will govern the determination of the action.

27

28

PLAINTIFFS' MEM. IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

a)      **Common Questions of Fact Predominate**

A common nucleus of facts underlies each claim.  The same evidence will prove all Class members' claims.

(1)      **Defendant Disseminated the Same False and Deceptive Safety Message Across Various Media**

The Safety Message pervaded Defendants' marketing.  It was uniform in substance, regardless of the exact words used or the form that the marketing took. "[A] false or misleading advertising campaign need not 'consist of a specifically-worded false statement repeated to each and every [member] of the plaintiff class.'" *Cabral*, 2013 U.S. Dist. LEXIS 184170, at *13   (quoting *In re First Alliance Mortgage Co.*, 471 F.3d 977, 992 (9th Cir. 2006)).  Thus, that some Class members may have been exposed to different iterations of NJOY's Safety Message than others does not weigh against certification. "The class action mechanism would be impotent if a defendant could escape much of his potential liability for fraud by simply altering the wording or format of his misrepresentations across the class of victims."  *Id.* (certifying class despite differences in iterations of advertising). *Johnson v. General Mills, Inc.*, 275 F.R.D. 282, 288-89 (C.D. Cal. 2011) (individual issues did not predominate even though purchasers were exposed to different mixes of packages and advertisements); *see also Makaeff v. Trump Univ., LLC*, 2014 U.S. Dist. LEXIS 22392, at *28 (S.D. Cal. Feb. 21, 2014) ("fact that each Plaintiff may have seen a different advertisement, or no advertisement at all, does not defeat typicality."). Under FDUTPA, as under the CLRA and UCL, that each class member was likely exposed to a unique array of advertising statements, and would therefore be required to rely on a slightly divergent pool of evidence, is no bar to class certification.  *Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 696 (S.D. Fla. 2010) ("Defendant's argument that other members of the class viewed different representations than Plaintiff does not render Plaintiff's claim atypical").

Here, Plaintiffs and the Class were exposed to advertising with a common

PLAINTIFFS' MEM. IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

1   implicit Safety Message, subject to nonsubstantive variations.  From the outset of its

2   business in 2007, NJOY made extensive use of the slogan "All the Pleasures of

3   Smoking Without All the Problems."   ¶¶50-59.   However, in the 2010 Consent

4   Judgment with the California AG, NJOY was prohibited from making claims about

5   its e-cigarettes "being safer than cigarettes without competent, reliable scientific

6   evidence to support the claims."   *People of the State of CA v. Sottera, Inc., DBA*

7   *NJOY*, Case No. RG10528622, Consent Judgment at 9(c).  Apparently lacking such

8   "reliable, scientific evidence," ███████████████████████████████████

9   ██████████████████████████████████████████████████████████

10  ██████████████████████████████████████████████████████████

11  ████████████████████████  (K-553148).  ██████████, the slogan,

12  "everything you like about smoking without the things you don't" (and variations

13  thereof), which is nearly indistinguishable from the "all the pleasures of smoking

14  without all the problems" line, appeared in several NJOY Kings ads and on NJOY's

15  website at least as late as 2014.  ¶¶67-72, 83, 87.  As described above, virtually all

16  of the advertising statements NJOY used during the Class Period contained the

17  taglines that smokers finally have a "real alternative" and "cigarettes you've met

18  your match."  *See, e.g.*, Pollack Dec. Ex. L, Uncertified Transcript of Deposition of

19  Francesca Vaccari held May 13, 2015 ("Vaccari Tr.")(final to be provided to the

20  Court upon receipt), NJOY's marketing manager, formerly of Sony Arcade

21  ("Arcade"), NJOY's advertising agency, at 33-36.  Both of these taglines convey the

22  overarching theme that NJOYs were known to be safe or safer than cigarettes.[8]

23      While NJOY did not include advertising statements on its packages, the

24  packages nonetheless promoted NJOY's core marketing Safety Message.  Each

---

25  [8] For example, Vaccari called the ███████████████████████████████

26  ██████████████████ which she explained at her deposition ███████████

27  ██████████████

28  ████████████ Vaccari Tr. at 75-78 ████████████████████

1  package discussed only one ingredient -- nicotine -- warning for example that

2  nicotine should not be used by people with certain medical conditions. ¶61.

3  However, the packages failed to list other ingredients, including propylene glycol

4  and glycerin, or disclose NJOYs other health risks.  ¶64-65.

5       NJOY knew of these dangers. For example, a 2009 report by the FDA found

6  that "certain tobacco-specific nitrosamines which are human carcinogens" and

7  "tobacco specific impurities suspected of being harmful to humans" were detected

8  in NJOY samples.  ¶34.  Another study that tested NJOYs and other e-cigarettes

9  found that they "required a stronger vacuum [inhalation strength] to smoke than

10  conventional [tobacco] brands" and that "the effects of this on human health could

11  be adverse."  ¶37.  Other studies have shown that e-cigarettes have immediate

12  adverse physiologic effects similar to those seen with tobacco smoking (¶¶44), and

13  concluded that "E-cigarettes cannot be rated as safe at the present time." ¶42; *see*

14  Vaccari Tr. at 49-50 █████████████████████████████████████████

15  █████████████████████████████████████████████████████████████

16  █████████████████████████████████████████████████████████████

17  █████████████████████████████████████████████████████████████

18  ███████████████  *E.g.*, M-36609, N-36413, O-35275, P-33545. ████████

19  █████████████████████████████  (Q-553392), ████████████████████

20  ████████████████████  (R-87665-66), ████████████████████████████

21  █████████████████████████████████████████████████████████████

22  (*see*, *e.g.*, S-560362-414, at 560392; Anise Tr. at 56), ████████████████

23  █████████████████████████████████████████████████████████████

24  *See*, *e.g.*, T-552987. ██████████████████████████████████████████

25  ███████  *See, e.g.,* U-528664.  Yet NJOY nowhere disclosed these risks, including

26  on its packages when it was disclosing risks about nicotine.

27       In order to ensure a uniform marketing message, NJOY intentionally

28  maintained brand consistency. ██████████████████████████████████████

12



1

2   V-1284.

3

4

5   W-52011.

6

7   X-65430.

8

9   *See*, *e.g.*, Y-8509 NJOY widely

10 disseminated the advertising containing the false and deceptive Safety Message

11 (including many of the slogans at issue in this case – *e.g.*, "Friends Don't Let

12 Friends Smoke," "Cigarettes You've Met Your Match"; and "Finally, Smokers

13 Have a Real Alternative") across the country, including in California and Florida.[9]

14

15

16

17   AA-18989.

18

19   AB-18108-18109.

20

21   (AC-540647);

22

23   AC-540653).

24   AD-

25 2624.

26 ──────────────

27 [9] Y-

28 8573.                                     Z-3727.

1    Defendants' marketing was designed to and did impart a common Safety

2    Message such that it can and should be addressed on a classwide basis.

3               **(2)**        **Reasonable Consumers Would Understand NJOY's**

4                        **Marketing as Conveying a Safety Message**

5    "Plaintiffs need not prove at this stage that every … customer would find the

6    … [advertising claim] material" or interpret it as Plaintiffs allege but rather "need

7    only demonstrate that a reasonable consumer would understand it in that way and

8    find it material." *Conagra*, 2015 U.S. Dist. LEXIS 24971, at *219.  Here, Plaintiffs

9    conducted a survey that shows that a reasonable consumer would understand the

10   Safety Message from NJOY's marketing.

11   Dr. Thomas J. Maronick, Plaintiffs' marketing expert who was formerly at the

12   Federal Trade Commission and is currently a marketing professor at Towson

13   University, conducted an empirical analysis of consumer perceptions of NJOYs

14   marketing.  Declaration of  Dr. Thomas Maronick in Support of Class Certification

15   ("Maronick Dec."), ¶¶19-20.  Dr. Maronick designed a survey in which respondents

16   who had tried NJOYs were divided into groups.  One group was shown the "Friends

17   Don't Let Friends Smoke" television commercial, the second group was shown the

18   "Resolution Solution" print ad, and a third group was shown the "Try Something

19   New in Bed" print ad.

20   Of those who viewed the "Friends Don't Let Friends Smoke" commercial,

21   when asked to pick all descriptors that reflected the message of the ad, 73% believed

22   the ad said or suggested NJOYs are safer for your health than traditional cigarettes,

23   and 38% believed it said or suggested they were safe.  *Id.*, ¶39. When presented with

24   a similar choice, 43% of those who saw the "Resolution Solution" and "Try

25   Something New in Bed" print ads took the message that NJOYs are safer for health

26   than traditional cigarettes, and 33% and 24% respectively believed that the ad meant

27   they were safe.  *Id.*, ¶32.

28   When asked open-ended questions about their perception of ads, a significant

PLAINTIFFS' MEM. IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

percentage of respondents wrote in the overt, rather than the implied, message of the ads.  For example, 30.7% of respondents who were shown the "Resolution Solution" ad, and 18.7% who saw the "Try Something New in Bed" ad, said the ad said or suggested that NJOYs provided the "look," "feel," taste" or "experience" of a real cigarette, where the ads contained the copy "the first electronic cigarette with the look and feel of the real thing, and authentic flavor developed in the USA by our Master Flavorist."[10]  *Id.*, ¶30. This is consistent with NJOY's plan to seem to be advertising NJOYs with overt non-health messages, with the intent that the implied Safety Message would be "picked up" by consumers – something confirmed by Dr. Maronick's survey results which showed that a material percentage of consumers, when asked a closed-end question, consistently chose "safe" and "safety" as the message of the ads.[11]  However, in some of NJOY's ads, the health message was so obvious that even open-ended questions drew safety-related messages. For example, when asked an open-ended question about the TV commercial, 40.7% wrote in responses reflecting their view that friends don't let friends smoke because it is bad for their health, and 17.6% wrote in that NJOY's were safe, better for them, or risk free.  *Id.*  That consumers perceived multiple messages does not defeat class certification as long as Plaintiffs can demonstrate that a "reasonable consumer"

---

[10] Similarly, 33.7% and 47.6% of respondents who were shown the "resolution" and "try something new" ads, respectively, took away the message that NJOYs were an alternative to or better than tobacco cigarettes, where each ad also included the smokers have a "real alternative" language. *Id.*, Table 6. Open-ended questions concerning the "cigarettes you've met your match" and the smokers have a "real alternative" statements, which appeared in both of the ads, drew similar responses. *Id.*, ¶34.

[11] Other choices on the closed-end questions were smoking indoors, smoking NJOYs is cool, NJOYs can be smoked in a social setting, NJOYs look and feel like traditional cigarettes, NJOYs have no smoke, and they cost less than traditional cigarettes. *Id.*, ¶32.

PLAINTIFFS' MEM. IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

would understand the message at issue in the way Plaintiffs have alleged.  *Conagra*, 2015 U.S. Dist. LEXIS 24971, at *219.  Dr. Maronick's survey demonstrates that while NJOY was successful in conveying that benefits of its products included that they had the look and feel of cigarettes but had no smoke or ash, a reasonable consumer would still take away the Safety Message.  The survey shows that these consumer perceptions are measurable on a classwide basis.

### (3)    Common Evidence Will Show Defendant Intended to Imply the Safety Message

The common evidence of NJOY's intent to imply a health message to capitalize on consumers' desires for a healthier way to smoke is overwhelming. █

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████ AE-559401, 559405 ████████████

████████████████████████████████████████████

██████████████████ A creative brief between NJOY and its advertising agency in ████████ described NJOY's brand positioning as combining "what smokers have loved for so long (real tobacco pleasure) with the innovations that eliminate everything they are looking to avoid—odor, smoke, ***and safer than cigarettes (although not communicated)*** …." (AF-43000) (emphasis added); ¶105.  On July 21, 2012, NJOY's EVP Roy Anise stated that █████████████████ ████████████ its strategy to "Obsolete Cigarettes" "will get across the 'safer' message in the pick up" ███████████████████████ AG-51682-83.

██████████████████████████████████████████

████████████████████████████████████████████

████████████████████ AH-540206 ████████████████

████████████████████████████████████████████



1  ████████████████  AI-NJOY00540486  ████████████

2  ████████████████████████████████████████████████

3  ████████████████████████████████████████████████

4  ████████████████████████████████████████████████

5  █████████████████████████████  AH-540206-07.

6        Mindful that NJOY could not be perceived as directly making health claims

7  but determined to imply them, ████████████████████████████

8  ████████████████████████████████████████████████

9  ████████████████████████████████████████████████

10  ████████████████████████████████████████████████

11  ████████████████████████████████████████████████

12  ████████████████████████████  B-43152  ████████

13  ████████████████████████████████████████████████

14  ████████████████████████████████████████████████

15  ████  AJ-543946.   Nonetheless, NJOY utilized this very slogan anyway in its

16  advertising.  ¶83. ███████████████████████████████

17  ████████████████████████████████████████████████

18  ████████████████████  AK-544096-97.

19        NJOY's desire to convey an implied Safety Message is also evidenced by its

20  hiring of Dr. Richard Carmona, a former U.S. Surgeon General, who was highly

21  critical of tobacco cigarettes, to join its Board of Directors and head its Scientific

22  Advisory Board. ██████████████████████████████ (*see*, *e.g.*, Y-

23  8562), and NJOY issued a press release concerning his joining NJOY, quoting him

24  as stating, for example, that NJOYs have tremendous "harm reduction potential."

25  AL-78996.

26        Accordingly, common evidence will determine – indeed, has already shown –

27  that NJOY intended its marketing to imply the Safety Message.

28

17

1

2

**(4)     Common Evidence Can Be Used to Establish Materiality**

3      A misrepresentation or omission is material if a reasonable person "would

4   attach importance to its existence or nonexistence in determining his choice of

5   action." *ConAgra*, 2015 U.S. Dist. LEXIS 24971, at *229.   "Because materiality is

6   judged according to an objective standard, the materiality of alleged

7   misrepresentations and omissions is a question common to all members of the

8   class." *Amgen, Inc.*, 133 S. Ct. at 1191.   As set forth above, "Plaintiffs need not

9   prove at this stage that every … customer would find the … [advertising claim]

10  material" or interpret it as Plaintiffs allege. *ConAgra*, 2015 U.S. Dist. LEXIS 24971,

11  at *219.   "[T]hey need only demonstrate that a reasonable consumer would

12  understand it in that way and find it material." *Id.*   Moreover, "materiality is

13  generally a question of fact for the jury." *Johnson,* 275 F.R.D. at  287.

14  ████████████████████████████████████████████

15  ██████████████████████████████████████████████

16  ██████████████████████████████████████████████

17  ██████████████████████████████████████████████

18  ███████████████████████████████████████████ AM-

19  345764, 345770, 345799. ████████████████████████

20  ██████████████████████████████████████████████

21  ██████████████████████████████████████████████

22  ██████████████████████████████████████████████

23  ██████ *See also* AN-45160-65 ████████████████████

24  ██████████████████████████████████████████████

25  ██████████████████████████████████████████████

26  ██████████████████████████████████████████████

27  ██████████████████████████████████████████████

28  ██████████████████████████████████████████████

18

PLAINTIFFS' MEM. IN SUPPORT OF MOTION FOR CLASS CERTIFICATION



1  AP-49596.

2

3

4  (AQ-6581, 6585),

5

6  AR-4782.

7

8

9

10

11  *See ConAgra*, 2015 U.S. Dist.

12  LEXIS 24971, at *220 (citing *Oshana v. Coca-Cola Co*., 2005 U.S. Dist. LEXIS

13  14184 (N.D. Ill. July 13, 2005) as holding a study showing 24% of consumers

14  would behave differently was sufficient to establish materiality).[12]

15    Dr. Maronick's survey confirms NJOY's own market research demonstrating

16  the materiality of its Safety Message.  Maronick Dec., ¶¶5, 44.  The survey shows

17  that, of respondents who said the NJOY ads they saw said or suggested NJOYs were

18  "safe for your health" or "safer for your health than traditional tobacco cigarettes,"

19  between 95% and 99% of respondents seeing either of the two NJOY print ads and

20  over 90% of respondents who saw the "Friends" TV ad, said "safety" was either

21  "important" or "very important" in a person's decision to smoke NJOYs.  *Id.*, ¶¶33,

22  40.  In addition, 91% indicated that "[i]f there were health risks associated with the

23

24  [12]

25                                               (E-5843);

26            (*e.g.*,  NJOY00058438);

27

28       (F -632117.)

19

ingredients in NJOYs, other than those listed on the NJOY E-Cigarette package," it would be either "very important" or "important" that other ingredients associated with health risks be listed on the NJOY package.  *Id.*, ¶43.

### (5)    Common Evidence Can Be Used to Establish Whether NJOYs Are Safe or Safer than Cigarettes

All NJOYs sold during the Class Period operated by heating substantially the same ingredients to a vapor that consumers drew into their lungs.  Plaintiffs will submit scientific evidence demonstrating the risks and harms associated with the inhalation of the ingredients in NJOYs, which will apply classwide.

### b)    Common Questions of Law Predominate

### (1)    The California Consumer Protection Claims

For purposes of class certification, the UCL and the CLRA are materially indistinguishable.  *Forcellati v Hyland's, In.*, 2014 U.S. Dist. LEXIS 50600, at *28-29 (C.D. Cal. Apr. 9, 2014).  A plaintiff need not prove that every class member "'was actually deceived, relied upon the fraudulent practice, or sustained any damage.'"  *Heighley v. J.C. Penney Life Ins. Co.,* 257 F. Supp. 2d 1241, 1259 (C.D. Cal. 2003).   Individual reliance is not required, nor must the message at issue provide the only reason to purchase (*Kwikset Corp. v. Sup. Court*, 51 Cal. 4th 310, 326-27 (2011)), and the question is whether the product would have been deceptive to a reasonable consumer.  *ConAgra*, 2015 U.S. Dist. LEXIS 24971, at *219. Where misrepresentations and omissions are material, reliance is presumed. *Id*.at 231; *also Keegan*, 284 F.R.D. at 533-534.   Thus, if the California Plaintiff succeeds in proving that NJOY's misrepresentations are material he is entitled to a presumption of reliance.  *See* Section II.D.1.(a)(4), *supra*.

### (2)    Florida Consumer Protection Claims

"[T]he Eleventh Circuit has said that the FDUTPA does not require a plaintiff to prove the misrepresentation caused them to do anything; rather, the causation requirement is resolved based on how an objective reasonable person

PLAINTIFFS' MEM. IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

1    would behave under the circumstances*." Fitzpatrick v. General Mills, Inc.*, 263

2    F.R.D. 687, 694-95 (S.D. Fla. 2010) (*vacated on other grounds*, 635 F.3d 1279

3    (11th Cir. 2011).  That "[c]laims under the FDUTPA are governed by a 'reasonable

4    consumer' standard … obviat[es] the need for proof of individual reliance by

5    putative class members." *ConAgra*, 2015 U.S. Dist. LEXIS 24971, at *151.  The

6    determinations key to the Florida Plaintiff's claims thus center on Defendant's

7    words and actions toward the Class as a whole.  Accordingly, common question of

8    law predominate for the California and Florida claims.

9              c)    **Plaintiffs' Damages Are Tied To their Theory of**

10                  **Liability and Calculable Classwide**

11          In *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), the Supreme Court

12   held that plaintiffs' method of proving damages must be tied to their theory of

13   liability where plaintiffs alleged four different theories of liability each of which

14   resulted in a different kind of harm. *Id*. at 1433.[13]  Here, Plaintiffs allege one harm

15   resulting from NJOY's Safety Message – consumers paid a premium for its products

16   – and thus a single damages model is sufficient. *Vaccarino v. Midland Nat'l Life*

17   *Ins. Co.*, 2014 U.S. Dist. LEXIS 18601, at *21 (C.D. Cal. Feb. 3, 2014).

18          Plaintiffs, through their economics expert, Dr. Jeffrey Harris,[14] offer two

19

20   [13] The Second Circuit recently clarified, in *Roach v. T.L. Cannon Corp.*, 778 F.3d
     401, 402-03 (2d Cir. 2015), that "*Comcast* [*Corp. v. Behrend*, 133 S. Ct. 1426
21   (2013) from which many damages pleading rulings derive], does not mandate that
     certification pursuant to Rule 23(b)(3) requires a finding that damages are capable of
22   measurement on a classwide basis."

23   [14] Dr. Harris is a tenured economics professor at MIT.  He has provided deposition
24   and trial testimony (and expert reports) concerning damages in numerous "light"
     cigarettes cases, at least four which employed one or both of the conjoint or direct
25   methods he proposes to use here to determine the value consumers attach to the
     alleged safety claims made by manufacturers of "light" cigarettes.  Declaration of
26   Dr. Jeffrey Harris in Support of Motion for Class Certification ("Harris Dec."), ¶¶1-
27   6.

28

PLAINTIFFS' MEM. IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

methods of calculating damages that are tied to their liability theory – conjoint analysis and the direct method – that can be used to determine the value consumers place solely on the Safety Message, calculate the price premium attributable to that value, and calculate damages by applying the premium to NJOY's historical sales data. Based on his review of professional economic studies, NJOY's market research and marketing documents, and his own expertise as an economist with experience in creating damages models, Dr. Harris concludes that: (a) a reasonable consumer would be willing to pay a price premium for the perceived value of NJOY's Safety Message; (b) there are scientifically reliable methods to measure the price premium that Class members paid for the perceived value of the Safety Message during the Class Period; and (c) using historical data of NJOY's sales to Class members (from Nielsen data and NJOY's records of its internet sales) during the Class Period, estimates of the price premiums paid for NJOY's Safety Message can be used to calculate classwide damages during the Class Period. Harris Dec., ¶¶17-19.

As Dr. Harris notes, conjoint analysis is a survey technique that is widely used to assess the value consumers place on specific attributes of products. *Id.*, ¶43. "Conjoint analysis is regularly used in litigation to translate the 'relative importance' of a product feature into a price premium paid by consumers." *ConAgra*, 2015 U.S. Dist. LEXIS 24971, at *245. *See, also, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1368 (Fed. Cir. 2013) (district court abused discretion in failing to consider plaintiff's expert's conjoint analysis); *L'Oreal,* 2014 U.S. Dist. LEXIS 165777, *18 ("Conjoint analysis ha[s] been the subject of extensive literature published in peer-reviewed journals"); *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1020-27 (N.D. Cal. 2013) (conjoint analysis admitted where used to identify a "value" for specific product attributes).

Dr. Harris describes how he will perform conjoint analysis to calculate damages that are ascribable only to the value, if any, that consumers place on the

PLAINTIFFS' MEM. IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Safety Message – *i.e.*, that NJOYs are known to be safe or safer than traditional cigarettes, which Plaintiffs allege NJOY misleadingly portrayed them to be – as opposed to the value consumers place on other attributes of NJOYs.  Harris Dec., ¶¶43-53.  Survey participants will be asked to make a series of choices between various combinations of product attributes.  *Id.*, ¶45.  An analyst will then combine all of the attributes in all of the choice sets to isolate the value (partworth) of each attribute.  *Id.*, ¶46.  Two of the attributes in the NJOY survey will be price and safety.[15]  *Id.*, ¶48.  Dr. Harris has identified additional attributes based on NJOY's internal documents, which indicate that consumers may place value on battery life, rechargeable vs. disposable, flavor, size, packaging, resemblance to a traditional cigarette, and ability to smoke in more places.  *Id.*  The safety attribute will be included in the study at two levels, one that corresponds to the product with the Safety Message, and the other that corresponds to the product without it. *Id.*, ¶¶49-51.  The price levels can be expressed in dollar units or in percentages.  Thus, a respondent might be asked to indicate whether he would pay 20% more, the same as, or 20% less than he usually pays for an NJOY, if that NJOY had a particular combination of features.  *Id.*[16]  The price premium linked to the Safety Message can then be calculated as a percentage of the purchase price.  *Id.*, at ¶52.

With the direct method, survey respondents will be asked to indicate the price they would pay for an NJOY e-cigarette with the Safety Message relative to the price they would pay for the product without it, using percentage point increments.

---

[15] When one of the attributes in a conjoint survey refers to price, the conjoint analysis can be used to attribute the price premium that consumers are willing to pay for each of the other attributes.  *Id.*, ¶46.

[16] It is not necessary that these studies be carried out prior to class certification.  They must "merely provide a method for calculating that premium on a classwide basis."  *L'Oreal*, 2014 U.S. Dist. LEXIS 165777, at *21; *ConAgra*, 2015 U.S. Dist. LEXIS 24971, at *247.

23

The price premium attributable to NJOY's Safety Message would then be computed as the average discount that respondents would pay for the "unsafe" e-cigarette. This method closely ████████████████████████████████████████ ████████████████████████████████████████████████████ *See*, *e.g.*, AS-1467, at 1489. It is a variation of contingent valuation, an approach that has long been widely used by economists, and which has been accepted in this district. *In re Toyota Motor Corp. Hybrid Brake Mktg.*, 2012 U.S. Dist. LEXIS 151559, *18 (C.D. Cal. Sept. 20, 2012) ("contingent valuation, and discrete choice, are generally accepted, have been tested, and are part of peer-reviewed studies.").

Dr. Harris will select a reputable survey search firm and the survey will be designed, pretested, administered, and the data analyzed under his direction. Harris Dec., ¶¶62-66. Further, because both surveys will include Class members from California and Florida, it will be possible to compute the price premium attributable to the Safety Message separately for each state. *Id.*, ¶¶53, 61.

The direct and conjoint methodologies meet the requirements of *Comcast* because they measure the damages classwide stemming from the alleged misconduct in a manner consistent with Plaintiffs' theory of the case. *See Vaccarino*, 2014 U.S. Dist. LEXIS 18601, at **36-38; *In Re High-Tech Employee Antitrust Litigation*, 289.F.R.D. 555, 582 (N.D. Cal. 2013).

**E.    A Class Action is a Superior Means of Resolving these Claims**

Finally, Plaintiffs satisfy Rule 23(b)(3)'s requirement that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *ConAgra*, 2015 U.S. Dist. LEXIS 24971, at 122.  The factors for consideration with respect to superiority are: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in

1    managing a class action.  Fed. R. Civ. P. 23(b)(3).

2         "Where damages suffered by each putative class member are not large, th[e

3    first] factor weighs in favor of certifying a class action."  *ConAgra*, 2015 U.S. Dist.

4    LEXIS 24971, at * 261.  Here, the purchase price of each e-cigarette was relatively

5    low, so the first factor weighs in favor of certifying a class.  The second factor also

6    favors certification – this action is the only one pending on its bases against

7    Defendant.  With respect to the third factor, here, as in *ConAgra*, "[g]iven the small

8    recovery that any individual plaintiff can expect, moreover, concentrating the

9    litigation in a single forum is appropriate."  *Id.*, at *262.  Finally, this action will be

10   manageable.   It concerns only two classes and three claims, far fewer than that

11   found to be manageable in *ConAgra*.

12        As to class notice, first, ███████████████████████████████████

13   ███████████████   In addition, Plaintiffs' counsel will work with a nationally

14   recognized notice expert to develop a plan focused primarily on publicizing notice

15   to the Class in targeted periodicals and across numerous internet sites and through

16   mobile banner ads. Similar notice plans have been accepted in consumer class

17   actions. *See*, *e.g..*, *Arnold v. FitFlop USA, LLC*, 2014 U.S. Dist. LEXIS 58800 (S.D.

18   Cal. Apr. 28, 2014); *Bezdek v. Vibram USA Inc.*, 2015 U.S. Dist. LEXIS 5508 (D.

19   Mass. Jan. 16, 2015).

20   **III.   CONCLUSION**

21        For all of the foregoing reasons, Plaintiffs respectfully submit that the

22   California Class should be certified, with the California Plaintiff as its Class

23   Representative, and the Florida Class should be certified, with the Florida Plaintiff

24   as its Class Representative, and Plaintiffs' Interim Lead Counsel should be

25   appointed as Class Counsel.

26   Dated: May 21, 2015              **WESTERMAN LAW CORP.**

27

28                         By:   ____/s/ Jeff Westerman____
                                 JEFF S. WESTERMAN (94599)

                                 25

PLAINTIFFS' MEM. IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

jwesterman@jswlegal.com
ANNA FAIRCLOTH  (275636)
afaircloth@jswlegal.com
1900 Avenue of the Stars, 11th Floor
Los Angeles, CA 90067
Telephone:  310/698-7880
Facsimile:  310/775-9777

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
JANINE L. POLLACK (*pro hac vice*)
pollack@whafh.com
DEMET BASAR(*pro hac vice*)
basar@whafh.com
KATE M. MCGUIRE(*pro hac vice*)
mcguire@whafh.com
270 Madison Avenue
New York, New York 10016
Telephone:  212/545-4600
Facsimile:  212/545-4653

FRANCIS M. GREGOREK
gregorek@whafh.com
BETSY C. MANIFOLD
manifold@whafh.com
RACHELE R. RICKERT
rickert@whafh.com
MARISA C. LIVESAY
livesay@whafh.com
750 B Street, Suite 2770
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:  619/234-4599

**LEVI & KORSINSKY LLP**
EDUARD KORSINSKY (*pro hac vice*)
ek@zlk.com
SHANNON L. HOPKINS (*pro hac vice*)
shopkins@zlk.com
NANCY A. KULESA (*pro hac vice*)
nkulesa@zlk.com
STEPHANIE A. BARTONE (*pro hac vice*)
sbartone@zlk.com
30 Broad Street, 24th Floor
New York, New York 10004
Telephone:  212/363-7500
Facsimile:  866/367-6510

*Interim Class Counsel*

**THE WILNER FIRM, P.A.**
RICHARD J. LANTINBERG (*pro hac vice*)

PLAINTIFFS' MEM. IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

rlantinberg@wilnerfirm.com
444 E. Duval Street
Jacksonville, FL 32202
Telephone:  904/446-9817
Facsimile:  904/446-9825

*Additional Counsel for Plaintiffs*

780613

27

PLAINTIFFS' MEM. IN SUPPORT OF MOTION FOR CLASS CERTIFICATION