**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
FRANCIS M. GREGOREK (144785)
gregorek@whafh.com
BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. RICKERT (190634)
rickert@whafh.com
MARISA C. LIVESAY (223247)
livesay@whafh.com
750 B Street, Suite 2770
San Diego, CA 92101
Telephone:   619/239-4599
Facsimile: 619/234-4599

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
JANINE L. KULESA (*pro hac vice*)
Kulesa@whafh.com
DEMET BASAR (*pro hac vice*)
basar@whafh.com
KATE M. MCGUIRE (*pro hac vice*)
mcguire@whafh.com
270 Madison Avenue
New York, New York 10016
Telephone:  212/545-4600
Facsimile:   212/545-4653

**WESTERMAN LAW CORP**
JEFF S. WESTERMAN (94559)
jwesterman@jswlegal.com
ANNA FAIRCLOTH (275636)
afaircloth@jswlegal.com
1900 Avenue of the Stars, 11th Floor
Los Angeles, Ca. 90067
Telephone:  310/698-7880
Facsimile:  310/775-9777

**LEVI & KORSINSKY LLP**
EDUARD KORSINSKY (*pro hac vice*)
ek@zlk.com
SHANNON L. HOPKINS (*pro hac vice*)
shopkins@zlk.com
NANCY A. KULESA (*pro hac vice*)
nkulesa@zlk.com
STEPHANIE BARTONE (*pro hac vice*)
sbartone@zlk.com
30 Broad Street, 24th Floor
New York, NY 10004
Telephone: 212/363-7500
Facsimile: 866/367-6510

*Interim Class Counsel*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION**

| | |
|---|---|
| IN RE NJOY, INC. CONSUMER CLASS ACTION LITIGATION | Case No. CV 14-00428-MMM-JEMx<br><br>**PLAINTIFFS' AMENDED (TO INCLUDE TABLES) OBJECTION TO THE DECLARATION OF EXPERT DENISE MARTIN**<br><br>Judge:  Hon. Margaret M. Morrow<br>Mag Judge:  Hon. John E. McDermott<br>Date: February 1, 2016<br>Time: 10:00 a.m. |

1

**TABLE OF CONTENTS**

2    OBJECTIONS ........................................................................................................1

3        I.    Applicable Standards ....................................................................................1

4        II.   Martin Is Not An Expert With Respect to Bayesian Hedonic Regression
             Analysis, Hedonic Regresion, Conjoint Analysis or Direct Method ..............2

5
6        III.  Martin's Testimony and Opinions Impermissibly Piggyback On the Opinion
             of Another Expert Proffered by NJOY in This Action and............................5

7
8        IV.   Martin's Testimony and Opinions Lack Foundation and Are Not Based On
             Sufficiently Reliable Facts Or Data.............................................................12

9        V.    CONCLUSION............................................................................................13

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

ii

28   PLAINTIFFS' AMENDED OBJECTION TO THE DECLARATION OF EXPERT
DENISE MARTIN

# TABLE OF AUTHORITIES

**Cases**

*American Key Corp. v. Cole National Corp.*,
762 F.2d 1569 (11th Cir. 1985) .................................................................................7

*Brown v. Teledyne Cont'l Motors, Inc.*,
2007 U.S. Dist. LEXIS 18179 (N.D. Ohio 2007).......................................................2

*Daubert v. Merrell Dow Pharms. Inc.*,
509 U.S. 579 (1993)...............................................................................................1, 6

*Deutz Corp. v. City Light & Power, Inc.*,
2009 WL 2986515 (N.D.Ga. 2009) .........................................................................2

*Dura Auto Sys. Of Ind., Inc. v. CTS Corp.*,
285 F.3d 609 (7th Cir. 2002) ...............................................................................2, 6

*Fosmire v. Progressive Max Ins. Co.*,
277 F.R.D. 625 (W.D. Wash. 2011) .........................................................................6

*In re Conagra Foods, Inc.*,
302 F.R.D. 537 (C.D. Cal. 2014)..........................................................................6, 7

*In re Conagra Foods, Inc.*,
90 F. Supp. 3d 919 (C.D. Cal. Feb. 23, 2015) .........................................................1

*In re Imperial Credit Indus., Inc. Securities Litig.*,
252 F.Supp.2d 1005 (C.D. Cal. 2003) .....................................................................6

*In re TMI Litig.*,
193 F.3d 613 (3d Cir. 1999) ....................................................................................6

*J.B. Hunt Transp., Inc. v. General Motors Corp.*,
243 F.3d 441 (8th Cir. 2001) ...............................................................................2, 6

PLAINTIFFS' AMENDED OBJECTION TO THE DECLARATION OF EXPERT
DENISE MARTIN

*Kumho Tire Co. v. Carmichael,*
 526 U.S. 137 (1999)......................................................................................7

*Kurtz v. Kimberley-Clark Corp.,*
 Case No. 1:14cv1142 (E.D.N.Y.)...............................................................4

*Paramount Media Group, Inc. v. Vill. of Bellwood,*
 308 F.R.D. 162 (N.D. Ill. 2015) ...............................................................11

*Sterner v. United States DEA,*
 467 F. Supp. 2d 1017 (S.D. Cal. 2006) ...................................................1, 5

*Tokio Marine & Fire Ins. Co., Ltd. v. Norfolk & Western Ry. Co.,*
 No. 98-1050, 1999 U.S. App. LEXIS 476, 1999 WL 12931 (4th Cir. Jan. 14,
 1999) ...........................................................................................................7

*United States Gypsum v. LaFarge North American, Inc.,*
 670 F.Supp.2d 748 (N.D. Ill. 2009).........................................................2

*United States v. Finley,*
 301 F.3d 1000 (9th Cir. 2002) ..................................................................1

PLAINTIFFS' AMENDED OBJECTION TO THE DECLARATION OF EXPERT DENISE MARTIN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

On September 25, 2015, Plaintiffs Ben Z. Halberstam and Kathryn Thomas ("Plaintiffs") filed with the Court an Expert Supplemental Declaration of Jeffrey E. Harris ("Dr. Harris") In Support Of Plaintiffs' Amended Motion For Class Certification (the "Harris Supplemental Declaration") (Dkt. No. 249-1).   On November 23, 2015, Defendant NJOY, Inc. and Sottera, Inc. ("Defendant" or "NJOY") filed an Expert Declaration of Denise Martin ("Martin") (the "Martin Declaration") (Dkt. No. 263), critiquing, in part, the Bayesian hedonic regression analysis set forth in the Harris Supplemental Declaration.  Plaintiffs object to Martin's testimony on the grounds that Martin: (1) is not qualified to offer opinions on Bayesian hedonic regression analysis, hedonic regression, conjoint analysis, or direct method, since she is not an expert and has no experience with these kind of damages analyses; (2) is impermissibly "piggybacking" on the purported expertise and litigation-driven and unreliable conclusions of NJOY's other proposed testifying expert; and (3) lacks foundation to support her conclusions and opinions because she does not provide sufficient facts or data.  For the reasons set forth below, Martin's opinions are irreconcilable with the standards governing expert testimony.

## OBJECTIONS

### I.    Applicable Standards

The admissibility of expert testimony is governed by the framework set out in Federal Rule of Evidence (the "Rule") 702 and *Daubert v. Merrell Dow Pharms. Inc.,* 509 U.S. 579 (1993).  The rule requires that, to be admissible, "the witness must have sufficient expertise," *United States v. Finley,* 301 F.3d 1000, 1007 (9th Cir. 2002), which is established where the witness possesses the sufficient "knowledge, skill, experience, training or education." *Sterner v. United States DEA,* 467 F. Supp. 2d 1017, 1033 (S.D. Cal. 2006).  The party seeking to have expert testimony admitted bears the burden of demonstrating its admissibility by a preponderance of the evidence. *In re Conagra Foods, Inc.,* 90 F. Supp. 3d 919, at 943, n.35 (C.D. Cal. Feb. 23, 2015).

1

PLAINTIFFS' AMENDED OBJECTION TO THE DECLARATION OF EXPERT DENISE MARTIN

Although a qualified expert may base his opinions on facts or data made known to him, Rule 703 is not a license for an expert witness to simply parrot the opinions of another expert. *Dura Auto Sys. Of Ind., Inc. v. CTS Corp.,* 285 F.3d 609, 612-14 (7th Cir. 2002); *J.B. Hunt Transp., Inc. v. General Motors Corp.,* 243 F.3d 441, 444 (8th Cir. 2001); *United States Gypsum v. LaFarge North American, Inc.*, 670 F.Supp.2d 748, 758 (N.D. Ill. 2009); *Deutz Corp. v. City Light & Power, Inc.*, 2009 WL 2986515 (N.D.Ga. 2009) *6; s*ee Brown v. Teledyne Cont'l Motors, Inc.*, 2007 U.S. Dist. LEXIS 18179, *8 (N.D. Ohio 2007) (finding that expert "must himself be qualified to render any opinions he would testify to in court, or he would simply be parroting the opinions of others").

Not only is Martin not qualified to testify on Bayesian hedonic regression, hedonic regression, conjoint and direct damages analyses, but her testimony is not reliable because it is largely based on her complete and blind reliance on the declaration of another testifying expert, rather than her own independent investigation of facts, and her testimony is not based upon sufficient foundational facts or supporting data.

## II. Martin Is Not An Expert With Respect to Bayesian Hedonic Regression Analysis, Hedonic Regresion, Conjoint Analysis or Direct Method

Martin is a Senior Vice President of NERA Economic Consulting. Martin Decl. ¶6; Martin Decl. Ex. 1 (cv).  While Martin has a graduate degree in economics, she has spent the last 25 years at NERA testifying as an expert witness largely on behalf of defendants (*see* Martin Decl. Ex. 1 (cv showing education and professional experience in economics and microeconomics).[1]  Her biography on NERA's website

---

[1] As Martin testified, except for one case in which she testified for plaintiff in individual insurance actions (*Underwriters at Lloyd's London v. Allstate Ins. Co.,* (Court of Common Pleas Ohio, 2015)), she has testified soley on behalf of defendants. Martin Tr. 70:21-71:8; *see* Martin Decl., Ex. 1 (identifying 21 cases Martin has testified in, all of which she testified on behalf of the defendant, except for *Underwriters at Lloyd's London*).  Indeed, she is currently working on a case with Trautman Sanders, counsel for NJOY in this case. Martin Tr. at 71:19-72:3.

2

PLAINTIFFS' AMENDED OBJECTION TO THE DECLARATION OF EXPERT DENISE MARTIN

states that she "has focused her work in three areas: securities litigation, product liability and mass tort valuation, and labor economics." (Bartone Dec., Ex. A). Martin's curriculum vitae, testimony, training, education and experience demonstrate that she is not qualified to proffer an opinion on the Bayesian hedonic regression analysis proposed in the Harris Supplemental Declaration, or Bayesian hedonic regression, hedonic regression analysis, or conjoint or direct analyses in general.

Martin is not qualified by education, experience and training to opine on the Bayesian hedonic regression model proposed by Dr. Harris. Denise Martin Uncertified Deposition Transcript, dated December 11, 2015, at 39:16-40:9, 52:3-7 ("Martin Tr.") (Bartone Dec., Ex. B) (as a teaching fellow, she did not teach classes on hedonic regression analysis or Bayesian hedonic regression analysis); *id.* at 47:7-12 (she did not take classes on hedonic regression; hedonic regression was included in two or three classes she took although it was "not a large percentage"); Martin Decl. Ex. 1 (cv) (listing professional experience with descriptions, none of which mention the damages analyses at issue here). Martin admits that she has never done a hedonic regression analysis herself or Bayesian hedonic regression analysis, nor has she ever been asked to comment on one. Martin Tr. at 48:16-23, 49:15-24; Martin Decl. ¶6.[2] Rather, "this is the first time that" Martin has opined on Bayesian hedonic regression analysis. Martin Tr. at 62:7-11. Martin does not even know if a text on Bayesian statistical regression exists. Martin Tr. at 50:21-51:4 ("Q: Is there a definitive text on Bayesian statistical regression? A: I don't know. . .").

Despite the fact that half of her declaration purports to opine on whether the results of the types of contingent valuation surveys (conjoint analysis and direct method) proposed by Dr. Harris could properly serve as "inputs" into his Bayesian hedonic regression (Martin Dec., ¶¶26-54), Martin has no training or experience whatsoever in contingent valuation or conjoint analysis. Martin Tr. at 62:14-63:13,

---

[2] Martin testified that she was asked to opine on hedonic regression once and "directed" a regression analysis, however. Martin Tr. at 52:11-53:17; 58:23-59:7.

3

PLAINTIFFS' AMENDED OBJECTION TO THE DECLARATION OF EXPERT DENISE MARTIN

75:16-18 (Martin has not taught courses on contingent valuation, performed a conjoint analysis, opined on conjoint analysis or contingent valuation, or performed a conjoint survey). Nor does she have experience with the direct method. Martin Tr. at 63:25-64:3 (Martin admits she has not opined on the direct method). Martin admits that she is not an expert on implementing conjoint analysis and is not an expert on the direct method. Martin Tr. at 75:23-76:10; 78:2-12.

As demonstrated by her NERA biography, Martin similarly lacks expertise in opining on damages in consumer fraud cases. *See* Martin Tr. at 25:25-26:14 (explaining she works primarily in securities, class actions and mass torts and product liability cases); *id.* at 58:19-22 (she has never been involved in individual consumer fraud cases); *id.* at 67:7-70:17; 73:5-74:8 (going through Martin's list of cases she has testified in, stating the subject matter of each case,[3] and stating that none of them, except for one, were consumer class actions). According to Martin's biography posted on the NERA website,[4] Martin "has focused her work at NERA in three areas: securities litigation, product liability and mass tort valuation, and labor economics." Bartone Dec. Ex. A. Notably, there is no mention of expertise in the consumer realm. *See also* Martin Tr. at 25:21-26:14 ("not more than ten percent" of her work has involved consumer class actions"). In the five pages of testimony Martin lists in her "Summary of Testimony/Expert Reports, 2011-2015", only a single case involved a consumer class action[5] – the others were unrelated. Martin Tr. at 67:7-70:17; 73:5-74:8 (going through Martin's list of testimony and stating the subject matter of each case, none of which involve consumer class actions); Martin Decl., Ex. 1; Bartone Dec., Ex. C.

---

[3] Subject matters included, for example, securities action, bankruptcy, and insurance allocation. *Id.*

[4] http://www.nera.com/experts/dr-denise-neumann-martin.html.

[5] That case is *Kurtz v. Kimberley-Clark Corp.,* Case No. 1:14cv1142 (E.D.N.Y.). Martin submitted an expert rebuttal report on the hedonic approach. Martin Tr. at 64:22-65:23.

4

PLAINTIFFS' AMENDED OBJECTION TO THE DECLARATION OF EXPERT DENISE MARTIN

Martin has not written any peer-reviewed articles in any scholarly or professional journals. Her cv lists contributions to various NERA monographs, none of which relate to consumer fraud cases,[6] and none of which is a publication in an independent, peer-reviewed, scholarly economics journal.  She has not produced any scholarly writings on hedonic regression analysis, Bayesian statistical analysis, or statistical analysis in general.  Additionally, there is no evidence that Dr. Martin has written or testified about electronic cigarettes or conventional tobacco cigarettes, nor has she done any independent research on the electronic cigarette or conventional cigarettes market. Martin Tr. at 204:9-16 (she has not done any independent research on the electronic cigarette market).

Thus, Plaintiffs object that Martin is not qualified to testify with respect to the Bayesian hedonic regression analysis, hedonic regression analysis, conjoint analysis, or direct method proposed by Dr. Harris in the Harris Supplemental Declaration, and there is no foundation for her testimony as an expert on the topic for which she is offered. *See Sterner v. United States DEA,* 467 F. Supp. 2d 1017, 1033-34 (S.D. Cal. 2006) (holding that a witness that "neither worked nor gained any practical experience in the field, [ ] [ ] ha[d] not . . . gained specialized knowledge through his education in the field . . . . ha[d] not been trained . . . [or] received formal training in the field" was not qualified to submit an expert declaration under Rule 702).

**III.    Martin's Testimony and Opinions Impermissibly Piggyback On the Opinion of Another Expert Proffered by NJOY in This Action and**

Martin's opinion concerning how contingent valuation fits into Dr. Harris's proposed Bayesian hedonic regression analysis is based solely the expert report of Kent Van Liere and is therefore unreliable.  This Court and courts nationwide have held that a testifying expert may not simply parrot the testimony of another testifying

---

[6] Her work includes, for example, topics on wage and hour settlements, MMSEA regulations, medicare, predatory lending, product liability, and mutual fund advisory fees. *See* Martin Decl., Ex. 1 (cv).

PLAINTIFFS' AMENDED OBJECTION TO THE DECLARATION OF EXPERT DENISE MARTIN

1
2
3
4
5
6
7
8
9
10

expert. *See, e.g., In re Conagra Foods, Inc.,* 302 F.R.D. 537, 556-57 (C.D. Cal. 2014); *J.B. Hunt Transp., Inc. v. General Motors Corp.*, 243 F.3d 441, 444 (8th Cir. 2001) (excluding proposed expert testimony "derivative" of another testifying expert's inadmissible testimony); *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 612-14 (7th Cir. 2002) ("A scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty. That would not be responsible science."); *In re TMI Litig.*, 193 F.3d 613, 714-16 (3d Cir. 1999) (expert's "failure to assess the validity of the opinions of the experts he relied upon together with his unblinking reliance on those experts' opinions, demonstrates that the methodology he used to formulate his opinion was flawed under *Daubert"*).

11
12
13

As explained by this Court in mere reliance on another expert's opinion, such as Martin's reliance on expert Kent Van Liere, without independent analysis raises questions of reliability:

14
15
16
17
18
19
20
21
22
23
24
25
26
27

> ConAgra asserts that Dr. Benbrook's testimony regarding survey data consists merely of repeating figures generated by studies conducted by other experts. An expert's sole or primary reliance on the opinions of other experts raises serious reliability questions. *See Fosmire v. Progressive Max Ins. Co.,* 277 F.R.D. 625, 629 (W.D. Wash. 2011) ("Dr. Polissar's expert report is deficient in several ways. First, although his opinions are based on Dr. Siskin's data and methodology, there is nothing in the record to indicate that Dr. Polissar has tested Dr. Siskin's underlying data to ensure its reliability or that Dr. Polissar even has access to Dr. Siskin's underlying data"); *In re Imperial Credit Indus., Inc. Securities Litig.,* 252 F.Supp.2d 1005, 1012 (C.D. Cal. 2003) ("The rules do not permit an expert to rely upon excerpts from opinions developed by another expert for the purposes of litigation"); *see also Tokio Marine & Fire Ins. Co., Ltd. v. Norfolk & Western Ry. Co.,* No. 98-1050, 98-1077, 1999 U.S. App. LEXIS 476, 1999 WL 12931, *4

28

PLAINTIFFS' AMENDED OBJECTION TO THE DECLARATION OF EXPERT DENISE MARTIN

1
2
3
4
5

(4th Cir. Jan. 14, 1999) (Unpub. Disp.) ("[O]ne expert may not give the opinion of another expert who does not testify"); *American Key Corp. v. Cole National Corp.*, 762 F.2d 1569, 1580 (11th Cir. 1985) ("Expert opinions ordinarily cannot be based upon the opinions of others whether those opinions are in evidence or not").

6

*ConAgra,* 302 F.R.D. at 556-57.

7
8
9
10
11
12
13
14
15
16
17
18
19
20

Here, Martin does exactly what the Court cautioned against in *ConAgra*: she relies exclusively on and repeats the opinions of Van Liere, another expert proffered by NJOY, without any independent analysis.  Martin's reliance on Van Liere is particularly suspect since Van Liere's underlying conclusions were developed for litigation, rather than in the field. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999) (courts must ensure that the proposed expert is applying the same "intellectual right that characterizes the practice of an expert in the relevant field"). In fact, Martin candidly acknowledged at her deposition that she relies on Van Liere's declaration (Martin Tr. at 32:10-13, 93:20-24) and has not conducted her own independent analysis to determine the reliability of Van Liere's opinions. Martin Tr. at 77:3-19 ("Oh, I am relying on [Van Liere's] opinions, correct.  I believe they are correct based on my understanding of conjoint analysis, but he is the expert in executing conjoint analysis, and I am relying on his opinion here.").   Martin admittedly has no experience with conjoint analysis herself. Martin Tr. 63:6-64:4 (has not done or opined in a case on conjoint analysis or the direct method).

21
22
23

Martin's reliance on Van Liere is extremely problematic because she admits that she is relying on Van Liere's criticisms of Harris's conjoint analysis as her basis to conclude Harris's Bayesian hedonic regression analysis will not work.[7] *See* Martin

24

25
26
27

[7] Extremely problematic is the fact that Van Liere himself admittedly relies on outdated material.  In Section IV of the Van Liere Declaration, he cautions that estimates of participants' willingness to pay derived from conjoint analysis may not correspond to consumers' willingness to pay in the marketplace. Van Liere quotes extensively from an unpublished working paper by Allenby and colleagues, dated

28

7

PLAINTIFFS' AMENDED OBJECTION TO THE DECLARATION OF EXPERT DENISE MARTIN

Tr. at 220:4-9 (admitting that she is relying on Van Liere's opinion that Harris's conjoint analysis is flawed, and that she then used Van Liere's opinion to conclude the hedonic analysis would not work).[8] When asked at her deposition about the conjoint analysis, however, Martin was unable to answer a single question, explaining "I don't really have knowledge one way or the other. I have not been involved before in disputes in which conjoint analysis has been proposed or used, so I don't really have a basis for answering that questions." Martin Tr. at 85:15-21; *see id.* at 85:23-90:15; 93:6- 102:21 (unable to answer questions regarding conjoint analysis, deferring to Van Liere's opinion, and explaining it is "not [her] place to be agreeing or disagreeing.").

For example, in par. 5(a) of her declaration, Martin opines that Dr. Harris's proposed application of estimates of consumers' current willingness to pay for the safety attribute as an input into his proposed Bayesian hedonic regression analysis "will generate unreliable results of any price premium for the safety attribute over time." Martin Dec., ¶5(a). For this opinion, she relies completely on Van Liere's opinion that "consumers' contemporary valuations are likely to be different from the valuations consumers had earlier in the alleged class period given …" Martin Tr. at 103:13-104:22 ("Q: And let me direct your attention to paragraph five A on page 2 .

October 2013. Van Liere Decl. ¶17. Van Liere does not acknowledge that the final published version of the article came out in 2014 and the paragraphs cited from the unpublished paper do not appear in the published paper. *See also* Uncertified Deposition Transcript of Kent Van Liere, dated December 16, 2015, at 91:25-93:25 (Bartone Dec., Ex. D) (recognizing he cited from the unpublished paper, that there is a published paper, and that he has not looked at the published version). See the contemporaneously filed Plaintiffs' Objection to the Testimony of Kent Van Liere, Sec. 1.

[8] While Martin relies on Van Liere to conclude the Bayesan hedonic model is not reliable, Van Liere testified that it was his "understanding from Dr. Martin's work that the hedonic regression won't work here." Van Liere Tr. at 102:2-6. Van Liere also stated "Yes" when asked if he was "relying entirely on Dr. Martin's report for the concept that – that the hedonic regression portion would be for marginal consumer." *Id.* at 102:11-14.

8

PLAINTIFFS' AMENDED OBJECTION TO THE DECLARATION OF EXPERT DENISE MARTIN

1

2

3

4

5

6

7

. . . Are you relying on Dr. Van Liere's opinion in this paragraph? A: yes."). While Martin testified that she and Van Liere "discussed" Van Liere's opinion, Martin did not remember any questions she may have asked him about his opinion, she did not ask for any scholarly support for his opinion, and she took no other action to satisfy herself that Van Liere's opinion was correct, and she did not study any aspect of the e-cigarette market herself. Martin Tr. 104:23-106:5. In the absence of Van Liere's opinion, Martin could not opine on this issue.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Martin's reliance on Van Liere taints the entirety of Martin's opinions in the Martin Declaration concerning inputs from contingent valuation in Dr. Harris's Bayesian model. For example, in section C of the Martin Declaration, Martin purportedly explains why a conjoint analysis cannot "solve problems that will arise in [Harris's] hedonic regression." In this section, however, Martin *solely* cites to the Rebuttal Declaration of Dr. Kent D. Van Liere ("Van Liere Declaration"). Martin even confirms that she is heavily relying on Van Liere's opinions here during her deposition testimony. For example, ¶41 of the Martin Declaration states, "as detailed in the Van Liere Declaration, a conjoint model cannot reliably measure all of the attributes necessary to correct all of the problems that Dr. Harris has acknowledged will arise in the hedonic regression." When questioned during her deposition, Martin confirmed that she is relying on Van Liere there. Martin Tr. at 217:25-218:15, 220:4-8 (discussing ¶41 and admitting that she is relying on Van Liere's opinion that Harris's conjoint analysis is flawed, and that she used that opinion to conclude the hedonic analysis would not work); *see also* Martin Decl. ¶41 ("Dr. Van Liere outlines numerous problems with the proposed approach . . . "). Martin's Declaration and deposition testimony similarly confirm that most of Martin's opinions are, in fact, based on Van Liere's conclusions. *See* Martin Decl. ¶ 42 ("Dr. Van Liere concludes that Dr. Harris will be unable to reliably measure the consumer's willingness to pay for the safety claim attribute in his proposed conjoint survey."); Martin Tr. at 222:9-23, 236:22-237:10 (explaining that she understands safety cannot be measured by

28

9

PLAINTIFFS' AMENDED OBJECTION TO THE DECLARATION OF EXPERT DENISE MARTIN

1
2
3
4
5
6
7
8
9
10

conjoint based on Van Liere's opinion, but that she cannot testify as to how to "break the collinearity" described in ¶42 because that is something Van Liere testified on); Martin Decl. ¶44 ("As detailed in the Van Liere Declaration, Dr. Harris will be unable to classify these products and derive reliable estimates of the willingness to pay . . . . Dr. Van Liere explained that . . . ."); *id.* ¶45 ("In his declaration, Dr. Van Liere demonstrates why the results from Dr. Harris' proposed conjoint will not general reliable estimates."). In fact, when asked about including attributes of a brand without the name of a brand in the conjoint survey (something Martin discusses in ¶43 of the Martin Declaration) Martin responds, "Yea, I would say this again is in Dr. Van Liere's territory . . . ." Martin Tr. at 147:12-25.

11
12
13
14
15
16
17
18
19
20
21
22
23
24

Similarly, section D of the Martin Declaration, which argues that "Dr. Harris cannot measure any price premium associated with the alleged omissions using his proposed method," starts off, "As Dr. Van Liere explains in his declaration." When asked what "bars Dr. Harris from separately identifying the part-worths" of the omissions claim, Martin prefaces her answer with, "Again, I don't want to speak for Dr. Van Liere, but . . . ." Martin Tr. at 239:17-240:6. With respect to Section E of Martin's Declaration, when asked during her deposition about the use of a conjoint analysis in the *ConAgra* case Martin cites, versus a conjoint analysis in this Action, Martin responds "I am not offering an opinion about when [hedonic analysis] is or is not appropriate. That is Dr. Van Liere's testimony." Martin Tr. at 195:17-196:2. In response to a question concerning ¶48 under Section E of the Martin Declaration, Martin (again) conditions her testimony by stating "I am relying in part on Dr. Van Liere's testimony" and elaborates that she is "relying on him certainly for his testimony about what a conjoint can and cannot do and why it is not going to be workable here." Martin Tr. at 248:4-19.

25
26
27
28

This lack of independent analysis and reliance on Van Liere indicates a "groupthink" approach rather than a rigorous expert analysis. In fact, Martin testified to communicating and meeting with Van Liere as early as October 2015. Martin Tr.

10

PLAINTIFFS' AMENDED OBJECTION TO THE DECLARATION OF EXPERT DENISE MARTIN

at 13:2-11, 15:11-12, 29:6-8.  At the October 2015 meeting, Martin testified that she spoke with Van Liere about whether Martin would be able to testify on the Bayesian hedonic method, and discussed "what the approach was and began to think about how we would respond, how I would respond if I were going to be retained as an expert." Martin Tr. at 29:7-30:15.  Martin also discussed the substance of Van Liere's report with him and, prior to submitting the Martin Declaration, met with Van Liere "at least once" and "talked on the phone a number of times." Martin Tr. at 28:15-22, 32:4-22. In fact, Martin testified that Van Liere reviewed the Martin Declaration "at least twice" prior to submitting the final version. Martin Tr. at 33:16-34:3.[9]  During those reviews, Van Liere had "wording comments" to "make sure [the Martin Declaration was] summarizing his testimony accurately." Martin Tr. at 34:18-25.[10]

Ultimately, Martin's Declaration amounts to nothing more than saying "because Van Liere said it, it must be so.  Thus, it is my opinion as well."  Thus, Martin cannot manufacture the illusion of general acceptance and scientific reliability within the context of litigation by having cross-referencing another expert's (Van Liere's) litigation-driven conclusions. *See Paramount Media Group, Inc. v. Vill. of Bellwood,* 308 F.R.D. 162, 165 (N.D. Ill. 2015) ("The upshot of all this is that Mr. Quas is just a spokesman for someone else. The expert appears to be Mr. Wiegman and Mr. Quas — although he is experienced in sales and management in the billboard industry — cannot explain how Mr. Wiegman got from point A to point B. All he can do is recite Mr. Wiegman's bottom line. That doesn't pass muster under the Fed.R.Evid. 702 or 703. . . . Mr. Quas isn't basing an opinion on Mr. Wiegman's work, he's adopting Mr. Wiegman's work and merely parroting his opinion. ").

---

[9] Van Liere also testified to having reviewed Martin's Declaration and that "some wording change[s]" were suggested if Martin was referring to Van Lierre's Declaration, and vice versa. Van Liere Tr. at 161:14-18, 162:4-9.

[10] Martin also testified to reviewing drafts and providing comments to the Van Liere Declaration. Martin Tr. 36:3-25.

PLAINTIFFS' AMENDED OBJECTION TO THE DECLARATION OF EXPERT DENISE MARTIN

**IV.    Martin's Testimony and Opinions Lack Foundation and Are Not Based On Sufficiently Reliable Facts Or Data**

Plaintiffs also object because the opinions in the Martin Declaration consist of sweeping generalizations that lack foundation and are not based on any supporting data or facts and, thus, are unreliable.  Specifically, Martin critiques the conclusions set forth in the Harris Supplemental Declaration without citing a single piece of supporting evidence, and thus lacks foundation for her conclusions.  Plaintiffs object to the lack of foundation for Martin's various opinion, as follows:

1. Martin makes the unsupported assertion that Bayesian hedonic regression "is simply not designed to provide an estimate of how supply or demand would change in response to changes in the composition of product attributes available in the market." Martin Decl. ¶16.  As discussed above in Part II, she has no experience, and thus no foundation, for opining on Bayesian hedonic regression analysis.

2. Martin concludes that hedonic regression fails because it cannot account for "supply and demand decisions." Martin Decl. ¶10.  Martin states that "absent the alleged misrepresentations and omissions, both the demand and supply for NJOY e-cigarettes (as well as other e-cigarettes and potentially other tobacco products) would be likely to change." Martin Decl. ¶21.  The only support Harris cites to, however, is an article from 1974 and Dr. Harris's testimony that "suppliers might change both prices and product attributes." Martin Decl. ¶21, n. 25.

3. Martin relies on the opinions of two interested witnesses (Andrew Beaver, the former Chief Marketing Officer of NJOY, and Craig Weiss, the former Chief Executive Officer of NJOY) to conclude that the weights of product attributes making up the price of NJOY's products were changing in ways that Harris's model cannot track. Martin Decl. ¶

12

PLAINTIFFS' AMENDED OBJECTION TO THE DECLARATION OF EXPERT DENISE MARTIN

31. Martin, however, has not conducted independent research on the e-cigarette market. Martin Tr. at 204:9-16.

4. Martin provides no evidence as to why Harris would be unable to obtain the accurate data to conduct his methods. Martin Decl. Sec. VI.A.

5. Martin argues that given the "difference between average and marginal consumers" Dr. Harris cannot "constrain his conjoint results when applying them to the hedonic regression to 'tether' these average, non-market valuations to actual market prices." Martin Decl. ¶38. Martin, however, is not qualified to opine on the conjoint or hedonic damages analysis, as stated above in Section II.

Given that Martin is not an expert on Bayesian hedonic regression, conjoint analysis or the direct method, her unsupported assertions cannot be credited.

## V.   CONCLUSION

For the aforementioned reasons, Plaintiffs object to the testimony and opinions of Martin concerning Bayesian hedonic regression analysis, hedonic regression analysis, and conjoint and direct analyses, and Dr. Harris' opinions in this case.

**LEVI KORSINSKY LLP**

DATED: December 18, 2015      By:_____
EDUARD KORSINSKY
ekorsinsky@zlk.com
SHANNON L. HOPKINS
shopkins@zlk.com
NANCY KULESA
nkulesa@zlk.com
STEPHANIE A. BARTONE
sbartone@zlk.com
30 Broad Street, 24th Floor
New York, New York 10004
Telephone:  212/363-7500
Facsimile:   866/367-6510


**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**JANINE L.
POLLACK (*pro hac vice*)
pollack@whafh.com
DEMET BASAR (*pro hac vice*)

13

PLAINTIFFS' AMENDED OBJECTION TO THE DECLARATION OF EXPERT
DENISE MARTIN

basar@whafh.com
KATE M. MCGUIRE (*pro hac vice*)
mcguire@whafh.com
270 Madison Avenue
New York, New York 10016
Telephone:  212/545-4600
Facsimile:   212/545-4653

**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
FRANCIS M. GREGOREK
BETSY C. MANIFOLD
RACHELE R. RICKERT
MARISA C. LIVESAY
750 B Street, Suite 2770
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:   619/234-4599
gregorek@whafh.com
manifold@whafh.com
rickert@whafh.com
livesay@whafh.com


**WESTERMAN LAW CORP**
 JEFF S. WESTERMAN
ANNA FAIRCLOTH
1900 Avenue of the Stars, 11th Floor
Los Angeles, CA 90067
Telephone:  310/698-7880
Facsimile:   310/775-9777
jwesterman@jswlegal.com
jthigpen@jswlegal.com


*Interim Co-Lead Counsel*

**THE WILNER FIRM, P.A.**
RICHARD J. LANTINBERG
444 E. Duval Street
Jacksonville, FL 32202
Telephone:  904/446-9817
Facsimile:  904/446-9825
rlantinberg@wilnerfirm.com

*Counsel for Plaintiff Kathryn Thomas*
**BISNAR CHASE LLP**
JERUSALEM F. BELIGAN
TRAVIS K. SIEGAL
1301 Dove Street, Suite 120
Newport Beach, CA
Telephone 949/752-2999

14
PLAINTIFFS' AMENDED OBJECTION TO THE DECLARATION OF EXPERT
DENISE MARTIN

1

2

3

Facsimile 949/752-2777
bchase@bisnarchase.com
jbeligan@bisnarchase.com
tsiegel@bisnarchase.com

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15

PLAINTIFFS' AMENDED OBJECTION TO THE DECLARATION OF EXPERT DENISE MARTIN