PAUL L. GALE (SBN 065873)
paul.gale@troutmansanders.com
EDWARD S. KIM (SBN 192856)
edward.kim@troutmansanders.com
S. DANIEL RASHTIAN (SBN 228644)
daniel.rashtian@troutmansanders.com
TROUTMAN SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, CA 92614-2545
Telephone: 949.622.2700
Facsimile:  949.622.2739

JOHN R. GERSTEIN                          LINDSEY B. MANN
*(admitted pro hac vice)*                 *(admitted pro hac vice)*
jack.gerstein@troutmansanders.com         lindsey.mann@troutmansanders.com
TROUTMAN SANDERS LLP                      TROUTMAN SANDERS LLP
401 9th Street, N.W., Suite 1000          600 Peachtree Street, NE, Suite 5200
Washington, D.C. 20004-2134               Atlanta, GA 30308-2216
Telephone: 202.274.2950                   Telephone: 404.885.2743
Facsimile:  202.274.2994                  Facsimile:  404.962.6538

Attorneys for Defendants
NJOY, INC. and SOTERRA, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| IN RE<br><br>NJOY, INC. CONSUMER CLASS ACTION LITIGATION | Case No. CV 14-00428-JFW (JEMx) consolidated with SACV 14-00427-MMM (RZx)<br><br>HONORABLE JOHN F. WALTER<br><br>**NJOY'S RESPONSE TO PLAINTIFFS' OBJECTION TO THE DECLARATION OF DENISE MARTIN**<br><br>Date: February 1, 2016<br>Time: 10:00 a.m.<br>Place: Courtroom 16 |

27725482

# TABLE OF CONTENTS

**Page**

1. INTRODUCTION ................................................................................. 1

2. PLAINTIFFS' OBJECTION/MOTION TO STRIKE SHOULD BE OVERRULED/STRICKEN BECAUSE PLAINTIFFS FAILED TO COMPLY WITH LOCAL RULE 7-3 .............................................................. 1

3. DR. MARTIN IS AN EXPERT ON BAYESIAN HEDONIC REGRESSION AND HEDONIC REGRESSION ANALYSIS ................... 4

4. PLAINTIFFS HAVE FAILED TO SHOW THAT ANY ASPECT OF DR. MARTIN'S DECLARATION IS ERRONEOUS OR UNRELIABLE ................................................................................... 8

5. HEDONIC REGRESSION AND BAYESIAN HEDONIC REGRESSION ARE SELDOM, IF EVER, USED IN CLASS ACTION LITIGATION BECAUSE OF THEIR STRICT REQUIREMENTS ................................................................................... 9

6. DR. MARTIN IS NOT PROVIDING ANY OPINIONS REGARDING THE DESIGN OR IMPLEMENTATION OF CONJOINT ANALYSIS OR THE DIRECT METHOD, AND DOES NOT NEED TO BE AN EXPERT IN THOSE SURVEY METHODS TO RENDER HER OPINIONS REGARDING BAYESIAN HEDONIC REGRESSION ............................................................................. 10

7. DR. MARTIN DOES NOT IMPERMISSIBLY RELY ON THE OPINIONS OF DR. KENT VAN LIERE .......................................... 12

   7.1  Dr. Martin's Opinion That Bayesian Hedonic Regression Cannot Generate an Estimate of Damages in This Case Is Independent of Dr. Van Liere's Testimony ........................................ 12

   7.2  Dr. Martin Uses Dr. Van Liere's Opinion to Highlight the Failures of Dr. Harris's Proposed Regression Analysis .................... 13

   7.3  The Cases on Which Plaintiffs Rely Are Factually Distinguishable ................................................................................ 16

8. NEITHER NJOY NOR DR. MARTIN BEAR THE BURDEN TO SET FORTH EVIDENCE REBUTTING DR. HARRIS'S OPINIONS ...... 17

9. CONCLUSION ................................................................................... 20

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

NJOY'S RESPONSE TO PLAINTIFFS' OBJECTION TO THE DECLARATION OF DENISE MARTIN

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

CASES

4

5
*ABS Entm't, Inc. v. Cumulus Media, Inc.*,
   2015 U.S. Dist. LEXIS 164551 (C.D. Cal. Nov. 25, 2015) ................................. 3

6

7
*Attalla v. Equinox Holdings, Inc.*,
   2015 U.S. Dist. LEXIS 70018 (C.D. Cal. May 29, 2015) .......................... 1, 2, 3

8

9
*Chelan County Washington v. Bank of Am. Corp.*,
   2015 U.S. Dist. LEXIS 89414 (E.D. Wa. July 9, 2015) ...................................... 9

10

11
*Clear-View Techs., Inc. v. Rasnick*,
   2015 U.S. Dist. LEXIS 72601 (N.D. Cal. June 3, 2015) ................................... 18

12
*Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*,
   285 F.3d 609 (7th Cir. 2002) ............................................................................. 16

13

14
*Hynix Semiconductor Inc. v. Rambus Inc.*,
   2008 U.S. Dist. LEXIS 123822 (N.D. Cal. Jan. 5, 2008) ........................... 15, 16

15

16
*In re ConAgra Foods, Inc.*,
   90 F. Supp. 3d 919 (C.D. Cal. 2015) ........................................................... 10, 16

17

18
*In re TMI Litig.*,
   193 F.3d 613 (3d. Cir. 1999) ............................................................................. 17

19

20
*In re Toyota Motor Corp. Unintended Acceleration Mktg. Sales Practices & Prods. Liab. Litig.*,
   978 F. Supp. 2d 1053 (C.D. Cal. 2013) ...................................................... 15, 16

21

22
*J.B. Hunt Transp., Inc., v. General Motors Corp.*,
   243 F.3d 441 (8th Cir. 2001) ............................................................................. 16

23

24
*Paramount Media Group, Inc. v. Vill. of Bellwood*,
   308 F.R.D. 162 (N.D. Ill. 2015) ....................................................................... 17

25

OTHER AUTHORITIES

26

Local Rule 6-1 .......................................................................................................... 3

27

28
Local Rule 7-3 ...................................................................................................... 1, 3

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

NJOY'S RESPONSE TO PLAINTIFFS' OBJECTION TO THE DECLARATION OF DENISE MARTIN

# TABLE OF AUTHORITIES
### (continued)

**Page**

Local Rule 7-4 ..........................................................................................................3

NJOY'S RESPONSE TO PLAINTIFFS' OBJECTION TO THE DECLARATION OF DENISE MARTIN

1    **1.    INTRODUCTION**

2         NJOY has proffered Dr. Denise Martin as a rebuttal expert to independently

3    analyze and evaluate the Bayesian hedonic regression proposed by Plaintiffs' expert

4    witness, Dr. Jeffrey Harris.  Plaintiffs' "Objection" to the Declaration of Denise

5    Martin fails in several respects.  First, Plaintiffs' objection is really a motion to

6    strike, and Plaintiffs failed to comply with Local Rule 7-3, among others.  Second,

7    despite Plaintiffs' misleading attempt to distort Dr. Martin's qualifications, a review

8    of Dr. Martin's education, training, and experience over the past 25 years

9    demonstrates that she is vastly qualified to opine on Dr. Harris's proposed Bayesian

10   hedonic regression.  For this reason alone, the bulk of Plaintiffs' objection fails.

11   Third, Plaintiffs fail to show that any portion of Dr. Martin's opinions, assumptions,

12   or recitations of generally accepted principles are incorrect in any manner.  Fourth,

13   Plaintiffs' objection mischaracterizes Dr. Martin's reliance on the opinions of Dr.

14   Van Liere, and the applicable standards relating to one expert's reliance on another

15   expert for assumptions.  Most glaringly, Plaintiffs ignore Dr. Martin's opinion that

16   Dr. Harris's proposed Bayesian hedonic regression cannot properly estimate

17   damages in this case, independent of Dr. Van Liere's testimony.  Lastly, Plaintiffs

18   impermissibly attempt to shift the burden for rebuttal experts.

19   **2.    PLAINTIFFS' OBJECTION/MOTION TO STRIKE SHOULD BE**

20   **OVERRULED/STRICKEN BECAUSE PLAINTIFFS FAILED TO**

21   **COMPLY WITH LOCAL RULE 7-3**

22        Local Rule 7-3 requires that "counsel contemplating the filing of any motion

23   shall first contact opposing counsel to discuss thoroughly, preferably in person, the

24   substance of the contemplated motion and any potential resolution."  "The purpose

25   of Local Rule 7-3 is to eliminate, or narrow the scope of, the motion and avoid

26   unnecessary expense of the Court's time and resources."  *Attalla v. Equinox*

27   *Holdings, Inc.*, 2015 U.S. Dist. LEXIS 70018, at *2 (C.D. Cal. May 29, 2015)

28   (citing *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002)).  "A district

Troutman Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

1   court has the discretion to strike a motion that fails to comply with the local rules."

2   *Id.*

3           There can be no dispute that Plaintiffs failed to meet and confer with NJOY's

4   counsel before filing their objection/motion to strike.  On Friday, December 18,

5   2015, the same day that Plaintiffs filed their objections/motions to strike, Plaintiffs'

6   counsel indicated by email that they intended to file "objections" to the declarations

7   of NJOY's expert, Denise Martin.  (Declaration of Paul L. Gale in Support of

8   NJOY's Response to Plaintiffs' Objections to the Declarations of Kent Van Liere

9   and Denise Martin ("Gale Decl."), ¶ 2, Ex. A.)  This was the first time that

10  Plaintiffs had stated they would be filing an objection or motion to strike Dr.

11  Martin's declaration.  Moreover, Plaintiffs' correspondence did not relate to any

12  meet and confer, or request a meet and confer, but instead merely asked whether

13  NJOY believed particular deposition citations were confidential.  In fact, Plaintiffs

14  had no intention of meeting and conferring, as the correspondence was sent to the

15  two NJOY attorneys who were attending an out of town deposition in this case on

16  the same day.  Those same attorneys had been in another deposition in this case two

17  days earlier as well, and Plaintiffs never requested any meet and confer, or provided

18  any indication that they would be filing a motion to strike against NJOY's experts.

19  (*Id.* at ¶ 2.)

20          Later that same day, but before anything was filed, NJOY's counsel

21  responded to Plaintiffs' counsel's question as follows:

22          Can you please let me know what you mean by "objection."  To

23          the extent Plaintiffs are seeking to exclude Dr. Martin, or the

24          opinions of Dr. Martin, any such "objection" is effectively a

25          motion to strike/Daubert motion.  Pursuant to Local Rule 7-3,

26          Plaintiffs were required to meet and confer prior to the bringing the

27          motion.  Plaintiffs have never conducted such a conference, and

28          the time to conduct such a conference passed last week.  Moreover,

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

Plaintiffs insisted that NJOY conduct such a meeting prior to bringing its motion to strike Dr. Harris.

(*Id.*, Ex. B.)  Plaintiffs <u>ignored</u> NJOY's email and filed their objection/motion to strike without conferring with NJOY's counsel.  (*Id*. at ¶ 3.)   As a result, the required Local Rule 7-3 conference of counsel never took place.  (*Id*.)

Further, Plaintiffs cannot be permitted to avoid the Local Rules by styling a motion to strike as an "objection."  Plaintiffs' "objection" is a *Daubert* motion/motion to strike, regardless of the title affixed to it.  In fact, the first paragraph of the objection/motion to strike contains a recitation of the *Daubert* standard, and the remainder of the objection/motion to strike focuses on Dr. Martin's alleged failure to meet that standard.  Notably, Plaintiffs recently asserted that Local Rule 7-3 does indeed apply to *Daubert* motions, and insisted that NJOY conduct a lengthy Local Rule 7-3 conference prior to filing its motion to strike the opinions of Plaintiffs' expert, Dr. Jeffrey Harris.  (*Id*., Ex. C.)

Plaintiffs' objection/motion to strike is also procedurally improper, because Plaintiffs failed to include a notice of motion, which among other items, requires a concise statement of the relief or Court action the Plaintiffs seek and a statement that the motion was brought following the conference of counsel pursuant to Local Rule 7-3.  L.R. 6-1, 7-3, 7-4.

The Local Rules exist for a reason.  Because Plaintiffs' counsel failed to meet their obligations required by the Local Rules before filing their objection/motion to strike, the objection/motion to strike should be stricken.  *See Attalla*, 2015 U.S. Dist. LEXIS 70018, at *2 (striking a motion because counsel failed to comply with Local Rule 7-3); *ABS Entm't, Inc. v. Cumulus Media, Inc.*, 2015 U.S. Dist. LEXIS 164551, at *2-3 (C.D. Cal. Nov. 25, 2015) (striking motion for class certification for failure to comply with Local Rule 7-3).

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**3. DR. MARTIN IS AN EXPERT ON BAYESIAN HEDONIC REGRESSION AND HEDONIC REGRESSION ANALYSIS**

Dr. Martin is well qualified to provide opinions regarding hedonic regression analysis and what Dr. Harris describes as a "Bayesian hedonic regression." Dr. Martin is well-versed in each aspect of a Bayesian hedonic regression, as well as the model as a whole. Hedonic regression and "Bayesian hedonic regression" are a subset of general regression analysis and rely on the same statistical techniques. (Declaration of Dr. Denise Martin in Response to Plaintiffs' Objections to the Martin Declaration ("Martin Responsive Decl."), ¶ 8.) As explained in more detail in the Martin Responsive Decl., regression analysis is a statistical tool that estimates the relationship between a dependent (or explained) variable and one or more independent (or explanatory) variables. (*Id*. at ¶ 9.) In other words, regression analysis is a statistical tool that helps to explain what effect, if any, certain independent variables (for example, the amount of time spent studying) have on an outcome (such as grades) that is the dependent variable. (*Id*.)

Hedonic regression is simply a form of such regression analysis that uses price as the dependent variable that is attempting to be explained. However, instead of using hours spent studying to explain grades, product attributes are used as independent variables in an attempt to explain price. (*Id*. at ¶ 10.) As explained in more detail in Section 4 hrerein, hedonic regression can only be applied under strict conditions where the market is stable and a company has no control over price – conditions that are not present here.

As proposed in this context, the term "Bayesian" refers to a statistical model in which the information considered in the regression analysis is supplemented with some form of outside (or "prior") information. That outside information can come from a variety of sources. Dr. Harris proposes to use the results from a proposed conjoint survey as the outside information for his hedonic regression, and he thus coins his method as a "Bayesian hedonic regression." (*Id*. at ¶ 11.)

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1    Dr. Martin earned a Ph.D. in Economics from Harvard University in 1991.

2 Dr. Martin was trained in regression analysis, including hedonic regression, as well

3 as in Bayesian methods, during her undergraduate education at Wellesley College

4 and her graduate education at Harvard University.[1]  (*Id*. at ¶ 12.)

5    Dr. Martin joined NERA Economic Consulting in 1991, and has been a

6 Senior Vice President at NERA since 2001.  Since joining NERA, Dr. Martin has

7 used regression analysis in hundreds of projects on which she was retained.

8 Moreover, during that time, Dr. Martin has run regressions that incorporate

9 information from outside the regression data, which are considered to be

10 "Bayesian" regressions.  (*Id*. at ¶ 13.)  Accordingly, it is clear that Dr. Martin is

11 well qualified to opine on hedonic regression analysis and Bayesian hedonic

12 classes.

13    The dubious nature of Plaintiffs' argument as to why Dr. Martin is not

14 qualified is made clear by the several nonsensical and irrelevant arguments

15 Plaintiffs make regarding Dr. Martin's experience.  For example, Plaintiffs argue

16

17    ───────────────

18    [1] While Plaintiffs attack Dr. Martin for her testimony that she did not take
any courses devoted solely to hedonic regression or Bayesian hedonic regression,
19 no such classes appear to exist.  (Martin Responsive Decl., ¶ 12, n.19; *see also*,
Gale Decl., Ex. H (listing courses taught at Harvard, which does not include any
20 stand alone classes for hedonic regression or "Bayesian hedonic regression")).
Because these methods are subsets, or applications, of broader regression analysis,
21 and because hedonic regression is only appropriate under a set of very stringent
conditions, the absence of entire courses devoted exclusively to these topics is not
22 at all surprising.  Moreover, Plaintiffs failed to put in any evidence that their expert,
Dr. Harris, took such stand-alone classes, or that it is necessary to have taken such
23 hypothetical stand-alone classes.  Similarly, Plaintiffs also attack Dr. Martin for not
knowing if there is a definitive text for Bayesian regression, even though they never
24 established that such a text even exists, or that the contents of the hypothetical text
25 somehow contradicts her opinions.  In fact, Plaintiffs' own expert, Dr. Harris, did
not testify regarding any definitive texts on the subject in either his declaration or
26 his deposition.

27

28

that because Dr. Martin's work has been focused more in the areas of "securities litigation, product liability and mass torts valuation and labor economics," she lacks expertise in consumer fraud matters and is somehow unqualified to opine in this matter.  (Objection to the Declaration of Expert Denise Martin ("Obj."), 4:7-22).  Whether Dr. Martin is, or is not, an expert in "consumer fraud cases" is irrelevant to whether she is qualified to opine on Dr. Harris' proposed regression damages models.  In any event, many of the cases in which Dr. Martin has been retained involve consumer fraud issues.  (Martin Responsive Decl., ¶ 14.)  In addition, while Plaintiffs rely on NERA's website for their assertion that Dr. Martin has "focused her work at NERA in three areas: securities litigation, product liability and mass tort valuation, and labor economics," Plaintiffs fail to inform the Court that NERA's website classifies "Class Actions and Class Certification" as a practice consisting of antitrust, labor and employment, product liability, and securities, with consumer class actions dealing with fraud and misrepresentation include as a subset of product liability.  Consumer class actions are considered a "focus area" for the practice, and Dr. Martin is the designated practice chair at NERA for the class action practice as a whole, as well as the focus area.  (*Id*.)

Even more preposterous is Plaintiffs' reliance on the fact that Dr. Martin has mostly been retained by defendants in litigation.  Whether Dr. Martin is retained by plaintiffs or defendants is wholly unrelated to whether she is qualified to provide her opinions in this matter.  Plaintiffs' position is also highly inappropriate given that their expert, Dr. Harris, has only opined on behalf of plaintiffs during his career.  (*See* June 3, 2015 Deposition of Jeffrey Harris at 57:16-18, attached as Ex. F to the Gale Decl.)

Plaintiffs also argue that Dr. Martin is not qualified because she estimated that she has spent 10% of her time at NERA on consumer class actions.  (Obj., 4:16-17.)  For the reasons set forth above, this argument is irrelevant to whether she is qualified to opine on Dr. Harris's proposed regression models.  Further,

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1    Plaintiffs' argument lacks merit for several additional reasons.  First, Dr. Martin's

2    education, including her graduate level studies in regression analysis, statistics,

3    Bayesian methods, and hedonic regression, give her a basis to render the opinions

4    regarding why Dr. Harris's proposed Bayesian hedonic regression is not

5    appropriate.  Second, Dr. Martin's career spans nearly 25 years, so 10% of such a

6    long career gives her substantial practical expertise in such cases.  (Martin

7    Responsive Decl., ¶ 15(a).)  Dr. Martin's experience includes, among other things,

8    two reports in consumer class action matters in which plaintiffs' expert proposed

9    using hedonic regression.  (*Id*. at ¶ 15(b).)

10          Finally, Dr. Martin has served as a consulting and testifying expert in more

11   than 100 other class action matters (including securities class actions and

12   employment class actions), which has provided her with tremendous practical

13   experience in addressing economic questions similar to those present in this case.

14   While the contexts for these matters may have differed, the assignment in each of

15   those cases often has been the same:  to estimate damages, if possible, using the

16   difference between the price paid and the price that would have been paid absent

17   certain alleged wrongdoing.  For example, in dozens of securities class actions, Dr.

18   Martin has performed regression analyses to estimate the price investors would

19   have paid for a security absent any alleged misstatements or omissions by a

20   defendant, controlling for market and industry factors, which required that she first

21   analyze whether the market conditions existed for her to apply the regression

22   analysis.[2]  (*Id*. at ¶ 15(c).)

23

24          [2] *See, e.g.*, "Affidavit, in *Marvin Neil Silver and Cliff Cohen vs. IMAX
     Corporation, et al.*, Ontario Superior Court of Justice, 2012"; "Rebuttal Report and
25   Declaration, in the United States District Court, District of Puerto Rico, in *Samuel
     Hildenbrand, et al. vs. W Holding Company, Inc., et al.*, 2012"; "Deposition and
26   Reports in the United States District Court, District of New Jersey, *In Re: Schering-
     Plough Corporation/ENHANCE Securities Litigation*, 2011"; and "Deposition and
27   Reports in the United States District Court, District of New Jersey, *In Re: Merck &*

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

### 4.    PLAINTIFFS HAVE FAILED TO SHOW THAT ANY ASPECT OF DR. MARTIN'S DECLARATION IS ERRONEOUS OR UNRELIABLE

Plaintiffs' objection/motion to strike suffers from another glaring defect – Plaintiffs failed to provide any evidence to show that the opinions and generally accepted principles Dr. Martin sets forth in her declaration are incorrect.  Dr. Martin has testified regarding generally accepted principals for hedonic regression, and made clear that it is generally accepted that use of hedonic regression is only appropriate when certain quite stringent conditions apply.

In particular, to be able to interpret the coefficients on the product attributes as implicit prices for those attributes, and to further conclude that the price of the product without the attribute would be the actual price less the estimated implicit price for the attribute, the analyst must have reason to assume that market is stable and that both firms (sellers) and consumers are "price takers."  Firms and consumers that are price takers believe that they do not have control over price and must accept the price as set by the market.  That is, firms are able to sell their product at the established market price, but would be unable to do so if they raised price and have no incentive to lower price.  Price-taking consumers similarly are able to buy products at the established market price, but do not have sufficient purchasing power in the market to be able to pay less for a product than the market price.  (Martin Responsive Decl., ¶ 10 n.17).  If the market is not sufficiently stable or mature (e.g., if the product in question was introduced recently, so that firms are still entering and exiting and new product variations are still being introduced), market-clearing prices will be in flux so that hedonic regression cannot reliably measure the implicit price associated with any particular product attribute.  (*Id.*)

_Co., Inc., Vytorin/Zetia Securities Litigation_, 2011," all of which are included in Exhibit 1 to Martin Responsive Decl.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1  Dr. Harris acknowledges this point in his Reply Declaration.  (Harris Reply Decl.,

2  Dkt. 168, ¶ 33.)  If these conditions do not hold, which they do not for the e-

3  cigarette market, then the link between the price of the product and the implicit

4  prices of the underlying product attributes is severed and hedonic regression will

5  fail and be unable to be used to measure any implicit equilibrium price of the

6  attribute.  The same market conditions must hold for Bayesian hedonic regression

7  to be applied as they are for standard hedonic regression.  (*Id*. at ¶ 10.)

8      Plaintiffs do not put forward any evidence, and do not dispute, these

9  generally accepted principles.  Clearly, if Dr. Martin was incorrect regarding these

10  requirements, Plaintiffs could have cited to *some* authority on that point.  Instead,

11  Plaintiffs fail to point to anything in Dr. Martin's declaration or testimony that is

12  incorrect, and Plaintiffs fail to put forward any evidence to rebut any of Dr.

13  Martin's opinions or her discussion of general accepted principles.

14  **5.   HEDONIC REGRESSION AND BAYESIAN HEDONIC**

15  **REGRESSION ARE SELDOM, IF EVER, USED IN CLASS ACTION**

16  **LITIGATION BECAUSE OF THEIR STRICT REQUIREMENTS**

17      Plaintiffs also attack Dr. Martin for not having rebutted or conducted a

18  Bayesian hedonic regression for litigation.[3]  Significantly, a Lexis search for a

19  proposed damages model labeled as Bayesian hedonic regression, in all cases, state

20  and federal, yields <u>zero</u> results.  (Gale Decl., ¶ 9.)[4]  Moreover, Plaintiffs have not

21  ───────────────

22      [3] Dr. Martin's experience does include submitting two reports in consumer class action matters in which plaintiffs' expert proposed using hedonic regression.

23  (Responsive Martin Decl., ¶ 15(b).)  Moreover, "[w]here a witness has considerable expertise working in a specific field, the witness's 'lack of particularized

24  experience' in one aspect of that field, 'goes to the weight accorded her testimony, not to the admissibility of her opinion as an expert.'"  *Chelan County Washington v.*

25  *Bank of Am. Corp*., 2015 U.S. Dist. LEXIS 89414, at *21 (E.D. Wa. July 9, 2015)

26  (quoting *United States v. Garcia*, 7 F.3d 885, 889 (9th Cir. 1993)).

27      [4] The application of hedonic models (whether classical or Bayesian) occurs

28  most often in the study of the real estate market, because the housing supply in the

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

27725482

- 9 -

1  shown their expert, Dr. Harris, has ever submitted or conducted a Bayesian hedonic

2  regression for litigation previously.

3  **6.  DR. MARTIN IS NOT PROVIDING ANY OPINIONS REGARDING**

4  **THE DESIGN OR IMPLEMENTATION OF CONJOINT ANALYSIS**

5  **OR THE DIRECT METHOD, AND DOES NOT NEED TO BE AN**

6  **EXPERT IN THOSE SURVEY METHODS TO RENDER HER**

7  **OPINIONS REGARDING BAYESIAN HEDONIC REGRESSION**

8  Plaintiffs assert that Dr. Martin is not an expert with respect to conjoint

9  analysis or the direct method. However, Plaintiffs' objection should be disregarded

10  because it is a strawman, as Dr. Martin is not opining on the design or

11  implementation of conjoint analysis or the direct method. As Dr. Martin makes

12  clear in her declaration, she "was asked to evaluate whether the Bayesian hedonic

13  regression analysis proposed by Dr. Harris could be used in this matter to estimate

14  the difference between the price paid by NJOY consumers and the price they would

15  have paid absent the alleged misstatements and omissions regard the safety of

16  NJOY e-cigarettes." (Declaration of Denise Martin ("First Martin Decl."), Dkt.

17  263, ¶ 2, excerpts of which are attached as Ex. I to the Gale Decl.) As discussed in

18  Section 3 above, Dr. Martin is unquestionably qualified regarding regression

19  analysis and Bayesian methods to provide her opinions of whether the Bayesian

20  hedonic regression analysis Dr. Harris proposes could be used to measure damages

21  in this matter.

22  _____

23  short-run can be considered fixed and because individual homeowners act as price
   takers who do not typically believe they can affect the equilibrium prices of houses

24  in the market. (Martin Responsive Decl., ¶ 11, n.21.) At a very macro level, the
   damages model approved in *In re ConAgra Foods, Inc.,* 90 F. Supp. 3d 919 (C.D.

25  Cal. 2015) ("*Conagra II*") could be considered to be a form of a Bayesian hedonic

26  regression, because it brings outside information into a hedonic regression.
   However, as discussed in NJOY's Motion to Strike the Supplemental Declaration

27  of Jeffrey E. Harris (Dkt. 255-1) (Gale Decl., Ex. J), the model proposed in

28  *Conagra II* is markedly different in many respects.

Troutman Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

1   To reiterate, a Bayesian hedonic regression uses outside information about
2   the value of an attribute in the regression, and that outside information could come
3   from a variety of sources.  In order to evaluate whether the Bayesian hedonic
4   regression is applicable, Dr. Martin does not need to be an expert in how that
5   particular data was obtained.  This is why Dr. Martin opines that Dr. Harris's
6   proposed Bayesian hedonic model will not work, even if Dr. Harris's conjoint
7   analysis could be performed and would be reliable.  Moreover, Dr. Martin does not
8   need to an expert in the outside data source (*i.e.*, the conjoint survey) to opine that
9   the information from that data source cannot be properly incorporated into the
10  regression analysis.  For example, Dr. Martin opines that Dr. Harris's proposal to
11  use a conjoint survey as outside information for the regression is problematic here,
12  because a hedonic regression looks at the marginal consumer, while a conjoint
13  study looks at the average consumer.  (Gale Decl., Ex. I, First Martin Decl., Dkt.
14  263, ¶¶ 33-38.)

15  Dr. Martin is not opining on whether a conjoint study looks at the average
16  consumer, and instead, is relying on Dr. Van Liere's opinion (as well as the fact
17  that it is a generally accepted principle in that field), for her assumption that the
18  source of the outside information being incorporated into the regression is for the
19  average consumer.  If that assumption, which is underdisputed, is correct, Dr. Martin's
20  expertise in regression analysis provides her with a sufficient basis to opine that the
21  use of such data is problematic.  (*See* Section 7.2, *infra*, for a further discussion
22  regarding the propriety of Dr. Martin relying on Dr. Van Liere.)

23  In total, Dr. Martin relies on Dr. Van Liere for three assumptions, all of
24  which are undisputed.  The first assumption is that a conjoint analysis analyzes the
25  average consumer.  The second assumption is that the valuations derived from a
26  conjoint analysis will be contemporaneous (whereas historical purchase prices are a
27  key input into a Bayesian hedonic regression).  (First Martin Decl., ¶ 5(a).)  The
28  third assumption is that the information derived from Dr. Harris's proposed model

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

NJOY'S RESPONSE TO PLAINTIFFS' OBJECTION TO THE DECLARATION OF DENISE MARTIN

1   is unreliable (and unreliable data cannot be used to remedy the issues present in a

2   Bayesian hedonic regression).   (*Id*., ¶ 5(c).)

3          Ironically, if Plaintiffs' position were correct – that Dr. Martin could not

4   testify regarding Bayesian hedonic regression because she is not an expert in

5   conjoint analysis – then Dr. Harris similarly would have to be excluded for that

6   reason alone, because he has admitted that he is not a survey expert and would be

7   relying on others to design and implement the conjoint survey.

8   **7.     DR. MARTIN DOES NOT IMPERMISSIBLY RELY ON THE**

9   **         OPINIONS OF DR. KENT VAN LIERE**

10          Plaintiffs assert that Dr. Martin cannot offer an opinion on how contingent

11  valuation fits into Dr. Harris's proposed Bayesian hedonic regression analysis,

12  because Dr. Martin impermissibly relies on the expert report of Dr. Kent Van Liere

13  for that opinion.  (Obj., 5:21-23.)  This argument fails for three reasons.  First, Dr.

14  Martin's opinion that Bayesian hedonic regression cannot generate an estimate of

15  damages in this case is *independent* of Dr. Van Liere's testimony, a fact that

16  Plaintiffs fail to address or acknowledge.  Second, Dr. Martin is simply relying on

17  Dr. Van Liere's opinions regarding conjoint analysis as an input into her more

18  complete analysis – she is not, as Plaintiffs suggest, simply parroting Dr. Van

19  Liere's opinion, or holding out the opinions regarding conjoint analysis as her own.

20  Third, the cases on which Plaintiffs rely in support of their assertion that

21  "piggybacking" is impermissible, are factually distinguishable from Dr. Martin's

22  conduct, and are simply inapplicable.

23         **7.1    Dr. Martin's Opinion That Bayesian Hedonic Regression Cannot**

24         **        Generate an Estimate of Damages in This Case Is Independent of**

25         **        Dr. Van Liere's Testimony**

26          Plaintiffs' Objection makes no reference to Dr. Martin's conclusion that Dr.

27  Harris's Bayesian hedonic regression will not and cannot generate an estimate of

28  damages as defined by this Court (*i.e.*, the difference between the price paid and the

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

price that would have been paid absent the alleged misstatements and omissions). (Martin Responsive Decl., ¶ 19.)  That conclusion is completely independent of Dr. Van Liere's opinions and testimony, rendering false Plaintiffs' assertion that "most of Martin's opinions are, in fact, based on Van Liere's conclusions."  (Obj., 9:22-24.)  Dr. Martin reaches this conclusion for two reasons.  First, because of the immature and unstable market conditions, Dr. Harris's method cannot yield a price premium for any attribute, including the alleged "safety claim," a point that Dr. Harris admits.  (Reply Declaration of Dr. Jeffrey Harris in Support of Plaintiffs' Motion for Class Certification ("Harris Reply Decl."), Dkt. 149-1, ¶¶ 29, 33, excerpts of which are attached as Ex. K to the Gale Decl.)  Even in his declaration filed in support of Plaintiffs' amended motion for class certification (Dkt. 249-1), Dr. Harris does not claim that he could use the results from conjoint analysis or direct survey to address this fundamental problem.  Second, as Dr. Harris acknowledged in his deposition, Bayesian hedonic regression is not designed to generate a "but for" price where market conditions would change.  (Harris October 26, 2015 deposition ("Harris Second Dep.") at 131:9-16 and attached as Ex. E to Gale Decl.; *see also*, Harris Reply Decl., Dkt. 149-1, ¶¶ 29, 33.)  Accordingly, there is no basis for Plaintiffs' assertion that Dr. Martin's opinion should be stricken because she impermissibly relies on the opinions of Dr. Van Liere.  (Martin Responsive Decl., ¶ 19.)

### 7.2   Dr. Martin Uses Dr. Van Liere's Opinion to Highlight the Failures of Dr. Harris's Proposed Regression Analysis

While Dr. Martin relies on Dr. Van Liere's opinions for issues relating to the design and implementation of conjoint surveys, Dr. Martin is not reiterating those opinions as her own.  Further, Plaintiffs mischaracterize and overstate Dr. Martin's reliance regarding those limited issues.

First, while Dr. Martin is not offering an opinion regarding Dr. Harris's conjoint analysis and direct surveys, she has knowledge and experience regarding

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

those techniques and knows exactly how they are used in a Bayesian hedonic regression.  (Martin Responsive Decl., ¶ 24.)

Second, Dr. Martin relies on Dr. Van Liere only to highlight the unreliability of the conjoint analysis and direct survey methods, and the effect of that unreliability on Dr. Harris's proposed regression.  Dr. Harris conceded that the hedonic regression analysis he proposes "may suffer from important limitations," including collinearity, omitted variable bias, and misspecification.  (Supplemental Declaration of Jeffrey E. Harris in Support of Plaintiffs' Motion for Class Certification ("Harris Supp. Decl."), Dkt. 249-1, ¶¶ 20-37, excerpts of which are attached as Ex. L to the Gale Decl.)[5]  Dr. Harris claims that using the results of his proposed conjoint analysis and direct survey as an input or "priors" to his hedonic regression will allow him to mitigate the limitations he identified.  (Gale Decl, Ex. L, Harris Supp. Decl., Dkt. 249-1, at ¶¶ 33-36; Gale Decl, Ex. E, Harris Second Dep. at 26:5-27:10.)  Dr. Martin relies on Dr. Van Liere for the generally accepted principles applicable to such surveys and to show the unreliability of the proposed outside information (gleaned from the conjoint analysis and direct survey), which she then uses to show additional reasons why Dr. Harris's proposed regression analysis fails.  (Martin Responsive Decl., ¶ 5.)  In particular, Dr. Martin concludes that Dr. Harris will be unable to resolve problems of collinearity in his hedonic regression, because he will have no way to tether his conjoint results back to his regression.  Dr. Martin also concludes that Dr. Harris will be unable to resolve the problems of collinearity, omitted variable bias, and misclassification in his hedonic regression by bringing in unreliable estimates of the associated variables from a conjoint analysis or direct survey.  (*Id*. at ¶ 18.)

---

[5] As discussed in NJOY's Motion to Strike Dr. Harris's Supplemental Declaration, Dr. Harris previously testified that a hedonic regression could not be performed with regard to e-cigarettes.  (*See* Dkt. 255-1 at Section 4.2, excerpts of which are attached as Ex. J to the Gale Decl.)

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

It is customary for experts to rely on the opinions of other experts in formulating expert testimony and opinions. Every time an expert cites to an accepted treatise, that expert is explicitly relying on the work or conclusions reached by someone else. (*Id*. at ¶ 17.) Indeed, Dr. Harris's opinion is replete with citations to the work and conclusions of others. Here, Dr. Martin is relying on Dr. Van Liere – who has an M.A. and Ph.D. in Sociology and has been qualified as an expert on conjoint analysis and direct surveys many times – with respect to certain flaws in Dr. Harris's proposed conjoint analysis. (*Id*.)

Further, contrary to Plaintiffs' assertions, Dr. Martin is not reiterating Dr. Van Liere's report. Instead, she is relying on Dr. Van Liere's conclusion that Dr. Harris's conjoint survey is flawed as one part of her analysis of Dr. Harris's proposed Bayesian hedonic regression. In other words, she is using Dr. Van Liere's conclusions and then building on them to reach her own, independent conclusions. That reliance is permissible and does not render her report inadmissible. *See In re Toyota Motor Corp. Unintended Acceleration Mktg. Sales Practices & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1078-79, 1082 (C.D. Cal. 2013) (holding that one expert may rely on the opinions of another admissible expert to build on her testimony). Further, to the extent there are any questions regarding the validity of Dr. Martin's reliance, those questions go to the weight of her testimony, not its admissibility. *See Hynix Semiconductor Inc. v. Rambus Inc.*, 2008 U.S. Dist. LEXIS 123822, at *47 (N.D. Cal. Jan. 5, 2008) (holding that argument regarding the viability of assumptions based on another expert's report go to weight, not admissibility); *see also Toyota*, 978 F. Supp. 2d at 1072 n.20 ("Any assumptions made by [the expert] may be challenged in cross-examination, as they affect weight, not admissibility.").

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1    Accordingly, there is nothing impermissible about Dr. Martin's reliance on

2    Dr. Van Liere's conclusions here.[6]

3    ### 7.3    The Cases on Which Plaintiffs Rely Are Factually Distinguishable

4    Finally, the cases on which Plaintiffs rely in support of their assertion that

5    "piggybacking" is impermissible are factually distinguishable from the present case

6    involving Dr. Martin.  Each of those cases deals with an expert who is attempting to

7    put forward the opinion of a non-testifying expert as his or her own opinion, or

8    where an expert relies on inadmissible opinions.  *See In re Conagra Foods, Inc.*, 90

9    F. Supp. 3d at 950 (finding the proffered expert's testimony regarding what various

10   surveys meant was inadmissible, because the expert relied on surveys conducted by

11   other experts not before the court); *J.B. Hunt Transp., Inc., v. General Motors*

12   *Corp.*, 243 F.3d 441, 444 (8th Cir. 2001) (finding the proffered expert's testimony

13   inadmissible because its relevance solely depended on the inadmissible testimony

14   of another testifying expert); *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d

15   609, 615 (7th Cir. 2002) (concluding that the sole testifying expert's testimony

16   "would have rested on air" without the testimony of other experts relied upon in the

17

---

18   [6]  Furthermore, one expert's reliance on another does not render that expert's

19   testimony inadmissible.  Instead, "[e]xpert opinions may find a basis in part 'on

20   what a different expert believes on the basis of expert knowledge not possessed by
     the first expert.'  Indeed, this is common in technical fields."  *Toyota*, 978 F. Supp.

21   2d at 1066 (quoting *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613
     (7th Cir. 2002)).  "For example, a physician may rely for a diagnosis on an x-ray

22   taken by a radiologist, even though the physician is not an expert in

23   radiology."  *Id.*  The *Toyota* court admitted the testimony of several experts whose
     opinions were based, in part, on other experts' reports.  *See Toyota*, 978 F. Supp. 2d

24   at 1082 (finding that, because one expert's testimony on a point was admissible, a
     second expert may rely on that testimony "to the extent his opinions build on [the

25   first expert's] testimony"); *id.* at 1078-79 (same).  The court in *Hynix* reached a

26   similar conclusion.  There, the court held that an expert may properly rely on
     assumptions that are based on other expert reports, and arguments regarding the

27   viability of those assumptions go to the weight of the testimony, not its

28   validity.  2008 U.S. Dist. LEXIS 123822, at *46-47.

1   expert's report.  Since those other experts were not before the court, the court

2   excluded the testimony); *In re TMI Litig.*, 193 F.3d 613, 716 (3d. Cir. 1999)

3   (affirming the district court's exclusion of an expert's testimony that heavily

4   depended on the inadmissible conclusions of other testifying experts); *Paramount*

5   *Media Group, Inc. v. Vill. of Bellwood*, 308 F.R.D. 162, 165 (N.D. Ill. 2015)

6   (excluding the testimony of Plaintiff's expert because he simply collected numbers

7   from various sources, handed them off to a non-testifying expert to conduct various

8   calculations, and then presented the conclusions as his own).  That is simply not the

9   case here, as Dr. Martin does not attempt to parrot the opinions of any non-

10  testifying experts, and does not hold out the opinions of any other experts as her

11  own.

12        In reality, these cases apply to Plaintiffs' expert, Dr. Harris, who is actually

13  doing the exact thing Plaintiffs wrongly accuse NJOY's experts of doing.  For

14  example, Dr. Harris, who admits he is <u>not</u> a survey expert, opines on survey

15  methodology and survey design based on his understanding from other non-

16  testifying experts who are not before the Court.  (Gale Decl., Harris Second Dep.,

17  32:8-22.)  NJOY and the Court are unable to examine those experts' credentials,

18  unable to analyze their purported opinions, and unable to question them.  On the

19  other hand, NJOY has proffered two experts to opine on fields in which each is an

20  expert (survey methodology for Dr. Van Liere, and Bayesian and hedonic

21  regression analyses for Dr. Martin).  Each is only opining in his or her field of

22  expertise.  Moreover, both of NJOY's experts have submitted extensive

23  declarations and both have been deposed.

24  **8.    NEITHER NJOY NOR DR. MARTIN BEAR THE BURDEN TO SET**

25        **FORTH EVIDENCE REBUTTING DR. HARRIS'S OPINIONS**

26        Plaintiffs object to the opinions expressed in the Martin Declaration because

27  they "lack foundation" and "are not based on any supporting data or facts."  (Obj.,

28  12:3-5.)  Plaintiffs then assert that Dr. Martin's conclusions lack "a single piece of

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

supporting evidence" (Obj., 12:6-7).  These arguments demonstrate Plaintiffs'

misapprehension of the burden for rebuttal experts and misstates the record.  Dr.

Harris was offered by Plaintiffs as their expert to attempt to satisfy Plaintiffs'

burden on their amended motion for class certification.  By contrast, NJOY proffers

Dr. Martin solely as a *rebuttal* expert, and "[t]he function of rebuttal testimony is to

explain, repel, counteract or disprove evidence of the adverse party."  *Clear-View*

*Techs., Inc. v. Rasnick*, 2015 U.S. Dist. LEXIS 72601, at *4 (N.D. Cal. June 3,

2015) (citation omitted).  As a rebuttal expert, Dr. Martin is not required to put

forth evidence to affirmatively disprove each of Dr. Harris's opinions.  *Id.* at *5

("Although a defendant need not put forth expert opinions to challenge affirmative

theories on which the plaintiff bears the burden of proof, such as damages, a

defendant's rebuttal expert is limited to offering opinions rebutting and refuting the

theories set forth by plaintiff's expert(s).").  Here, Dr. Martin is not required to

affirmatively disprove <u>Dr. Harris's unsupported conclusions</u>; instead, as a rebuttal

expert, Dr. Martin's sole job is to identify the fundamental flaws in Dr. Harris's

opinions, which she has done.

     Furthermore, NJOY responds to each of the enumerated conclusions in

Section IV of the Objection as follows:

     1.     As set forth in great detail in Section 3 herein, Dr. Martin is eminently

qualified as an expert in Bayesian hedonic regression analysis and hedonic

regression analysis.  Accordingly, her opinion that Bayesian hedonic regression

analysis "is not designed to provide an estimate of how supply or demand would

change in response to changes in the composition of product attributes available in

the market" is supported and appropriate.  Moreover, in support of her opinion, Dr.

Martin referenced: coursework taken at Wellesley and Harvard that included

hedonic regression and Bayesian methods; Dr. Martin's own work at NERA with

regression analysis, including Bayesian regression, wage regressions, and stock

price regressions; the seminal article on hedonic regression, authored by Sherwin

- 18 -

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

Rosen in 1974, which has been cited in thousands of articles since; an accepted textbook on econometric methods that includes a detailed review of hedonic regression; a chapter on Bayesian methods written by Dr. Kenneth Train, adjunct professor at U.C. Berkeley; and the testimony of Plaintiffs' expert, Dr. Harris, who agrees Bayesian hedonic analysis is not a tool that can estimate how demand and supply would have changed absent the alleged misstatements and omissions and that his approach will not yield a "but-for" price.  (Martin Responsive Decl., ¶ 21.)

2.     Again, for the same reasons discussed in the preceding paragraph, Dr. Martin is qualified to state that hedonic regression fails because it cannot account for supply and demand decisions, and provides references to support her opinions.[7] Moreover, pursuant to the standard for rebuttal experts set forth in *Clear View*, Dr. Martin is not required to affirmatively disprove Dr. Harris's opinions; instead, she is identifying material flaws.  Further, as Dr. Martin noted, this point is conceded by Plaintiffs' own expert, Dr. Harris.  Lastly, Plaintiffs' argument that an article relied on by their own expert from 1974, is clearly improper (and illogical).

3.     The credibility of the percipient witnesses on which Dr. Martin relies is purely a question regarding the weight of Dr. Martin's testimony; it has nothing to do with her qualifications and whether she meets the standard set forth in *Daubert*.  Further, Plaintiffs have not put forward any evidence to demonstrate that the witnesses were "interested," or that the only information in the record on these issues is incorrect.  In addition, Dr. Martin only relied on certain facts provided by the witnesses' testimony as an input to her analysis, and not as the sole basis for her conclusions.  (*Id.* at ¶ 22.)  Dr. Harris acknowledges that his conjoint analysis and direct survey will yield, at best, current estimates of the willingness to pay for the alleged "safety claim," and the only testimony in the record is that the market was

---

[7] While Plaintiffs cite to Paragraph 10 from Dr. Martin's declaration, the quoted phrase is not found in that paragraph.

1   changing over the alleged class period as there was entry and exit of manufacturers,

2   changes in product attributes, and changes in the mix of information available in the

3   market regarding e-cigarettes. There is no requirement that Dr. Martin conduct

4   independent research to confirm facts in the record. Lastly, it is common practice

5   for experts to rely on facts or assumptions when providing their expert opinions.

6       4.      Again, pursuant to the standard set forth in *Clear View* for rebuttal

7   experts, Dr. Martin is not required to put forth evidence disproving Dr. Harris's

8   opinions. Instead, she has simply identified – based on her extensive experience – a

9   flaw that will preclude Dr. Harris from constructing his proposed damages model.

10  Even though nothing more is required, Dr. Martin cited to prior litigation where

11  experts were unable to obtain such data, and Dr. Martin testified that NERA

12  reached out to the organizations at issue in an attempt to get the required data, but

13  were rebuffed, because those organizations do not provide data for litigation

14  purposes. Lastly, it is Dr. Martin's opinion that even if Dr. Harris is able to obtain

15  data from an outside agency, such new information will not yield historical data for

16  Dr. Harris's proposed conjoint analysis – thus making his proposed model

17  unreliable. (*Id*. at ¶ 23.)

18      5.      As discussed in Section 3, Dr. Martin is well qualified to provide her

19  opinions that Dr. Harris's proposed Bayesian hedonic model will not yield the

20  proper method of damages, is unreliable, and cannot be performed under generally

21  accepted principles. As an expert in regression analysis, Dr. Martin is qualified to

22  opine that one cannot use outside information from a source dealing with average

23  consumers to a regression that is using a dataset for marginal consumers, and that

24  the results of a conjoint analysis cannot be tethered to market price via inclusion in

25  hedonic regression.

26  **9.    CONCLUSION**

27      For the reasons set forth herein, Plaintiffs Objection/Motion to Strike should

28  be overruled/denied.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- 20 -

1  Dated:  January 8, 2016                    Respectfully submitted,

2                                             TROUTMAN SANDERS LLP

3

4                                             By:  /s/ Paul L. Gale
                                                   Paul L. Gale
5
                                              Attorneys for Defendants
6                                             NJOY, Inc. and SOTERRA, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NJOY'S RESPONSE TO PLAINTIFFS' OBJECTION TO THE DECLARATION OF DENISE MARTIN